**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HEYWOOD HEALTHCARE, INC., | ) | Case No. 23-40817-EDK |
| *et al1* | ) | |
| | ) | (Jointly Administered) |
| Debtors in Possession. | ) | |

**SIXTH INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING AND (VI) GRANTING RELATED RELIEF**

Upon the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Dkt. No. 14] (the "Motion") of Heywood Healthcare, Inc., The Henry Heywood Memorial Hospital, Athol Memorial Hospital, and Heywood Medical Group, Inc., as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases, pursuant to sections 105, 361, 362, 363, 503 and 507 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2 and 9013-

---

[1] The debtors in possession in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each debtor's federal identification number are: Heywood Healthcare, Inc. (0658); The Henry Heywood Memorial Hospital (3581); Athol Memorial Hospital (6583), Heywood Medical Group, Inc. (3589), Athol Memorial Hospital NMTC Holdings, Inc. (2189), Quabbin Healthcare, Inc. (7153) and Heywood Realty Corporation (7447).

1 of the Local Rules (the "Local Rules") for the United States Bankruptcy Court for the District of Massachusetts (this "Court") requesting, among other things:[2]

(1)    authorization for the Debtors to use Cash Collateral (as that term is defined in section 363(a) of the Bankruptcy Code and further defined below) in accordance with the Approved Budget (as defined herein and subject to permitted variances) and the limitations provided herein unless otherwise agreed to in writing by the Prepetition Secured Parties (as defined herein) in which any of the Prepetition Secured Parties have an interest and the granting of adequate protection to the Prepetition Secured Parties solely to the extent of any postpetition diminution in the value of their respective interests in the Prepetition Collateral (as defined herein), including, without limitation, the Cash Collateral, as a result of (i) the Debtors' use of Prepetition Collateral (including Cash Collateral) and/or (ii) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "Diminution in Value");

(2)    the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary and expressly set forth herein to implement and effectuate the terms and conditions of this Sixth Interim Order;

---

[2] This Sixth Interim Order applies solely to the Debtors (as defined in the introductory paragraph of this Sixth Interim Order) and does not apply to the following debtors and debtors in possession in these Chapter 11 Cases (collectively, the "Non-Obligated Debtors"): (i) Athol Memorial Hospital NMTC Holdings, Inc., (ii) Quabbin Healthcare, Inc. and (iii) Heywood Realty Corporation (other than to the extent it receives cash from Athol Memorial Hospital on occasion as reflected in the Approved Budget (as defined herein)). To the extent that the Approved Budget (as defined herein) reflects the revenue or expenses of the Non-Obligated Debtors, it does so solely for informational purposes. The Approved Budget does not contemplate (and the Debtors and the Non-Obligated Debtors have not contemplated prior to the commencement of these Chapter 11 Cases in the ordinary course of their business) the remittance of cash between any of the Debtors, on the one hand, and any of the Non-Obligated Debtors, on the other hand (other than occasional transfers from Athol Memorial Hospital to Heywood Realty Corporation included in the Approved Budget).

2

4890-2874-3098.2

(3)    the scheduling of a final hearing (the "Final Hearing") to consider entry of a final order as to the relief requested in the Motion (the "Final Order") and approving the form of notice with respect to the Final Hearing;

(4)    the waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Sixth Interim Order; and

(5)    granting the Debtors such other and further related relief as is just and proper.

The initial hearing on the Motion having been held by this Court on October 3, 2023 (the "Interim Hearing"), and upon the record made by the Debtors at the Interim Hearing, including the Motion and the *Declaration of Thomas J. Sullivan, Co-Chief Executive Officer of the Debtors, in Support of First Day Motions* [Dkt. No. 13], the Court having entered that certain *Interim Order (I)    Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V)   Scheduling a Second Interim Hearing and (VI) Granting Related Relief* [Dkt. No. 68] (the  "First Interim Order") on October 5, 2023, the Court having held a hearing on October 10, 2023 (the "Continued Hearing") with respect to certain relief requested in the Motion, the Court having held the Second Interim Hearing (as defined in the First Interim Order) on November 2, 2023, the Court having entered that certain *Second Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Dkt. No. 229] on November 8, 2023 (as modified by the Continuance Order and the Second Continuance Order (each as defined below), the "Second Interim Order"), the Court having entered that certain *Order Granting Debtors' Assented-To Motion for Continuance of Interim Hearing on Cash Collateral Motion* [Dkt. No. 283] (the "Continuance

Order") on December 6, 2023, the Court having entered that certain *Order Granting Debtors' Second Assented-to Motion for Continuance of Interim Hearing on Cash Collateral Motion* [Dkt. No. 344] (the "Second Continuance Order") on December 20, 2023, the Court having held a hearing on January 25, 2024 (the "Third Interim Hearing"), the Court having entered that certain *Third Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Dkt. No. 501] (the "Third Interim Order") on January 26, 2024, the Court having held a hearing on February 22, 2024 (the "Fourth Interim Hearing"), the Court having entered that certain *Fourth Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Dkt. No. 576] (the "Fourth Interim Order") on February 23, 2024, the Court having held a hearing on March 28, 2024 (the "Fifth Interim Hearing"), the Court having entered that certain *Fifth Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Dkt. No. 655] (the "Fifth Interim Order") on April 2, 2024, the Court having held a hearing on May 1, 2024 (the "Sixth Interim Hearing" and together with the Interim Hearing, the Second Interim Hearing, the Continued Hearing, the Third Interim Hearing, the Fourth Interim Hearing and the Fifth Interim Hearing, the "Interim Hearings") with respect to the Motion, and upon the record at the Interim Hearings, the Approved Budget (as defined herein) filed and served by the Debtors, the filings and pleadings in these Chapter 11 Cases (including the *Supplemental Statement of Siemens Public, Inc.,*

4

4890-2874-3098.2

*and Siemens Financial Services, Inc., in Support of Motion of Debtors for Entry of Interim and Final Cash Collateral Orders* [Dkt. No. 87], the *Debtors' Statement in Support of the Supplemental Statement of Siemens Public, Inc., and Siemens Financial Services, Inc. in Support of Motion of Debtors for Entry of Interim and Final Cash Collateral Orders* [Dkt. No. 88], the *Notice of Intention as to 506(c)/552 Waivers in Connection with Further Consensual Use of Cash Collateral* [Dkt. No. 93], the *Objection of the Official Committee of Unsecured Creditors to Motion of Debtors for Interim and Final Orders (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Dkt. No. 330], the *Reply of Siemens Public, Inc., and Siemens Financial Services, Inc., to Objection of the Official Committee of Unsecured Creditors to Motion of Debtors for Interim and Final Orders (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Dkt. No. 339] and *The Official Committee of Unsecured Creditors Response and Limited Objection to the Proposed Third Interim Cash Collateral Order* [Dkt. No. 463]), offers of proof, evidence adduced, and the statements of counsel at the Interim Hearings, the Court having found that the interim relief requested in the Motion is fair and reasonable under the facts and circumstances and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation and maintenance of the Debtors' businesses and operations (including, without limitation, the provision of patient and community care); it appearing to the

4890-2874-3098.2

Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and notice of the Motion, the interim relief requested therein and the Interim Hearings (the "Notice") having been given; and the Notice having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (a) the Office of the United States Trustee for the District of Massachusetts (the "U.S. Trustee"); (b) the entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Office of the General Counsel for the Executive Office of Health and Human Services, as counsel to the Commonwealth of Massachusetts; (d) McGuireWoods LLP and Locke Lord LLP, as primary and Massachusetts counsel to the Prepetition Lenders (as defined herein); (e) Sullivan & Worcester LLP, as counsel to the Master Trustee and the Bond Trustee (each as defined herein); (f) the United States Attorney's Office for the District of Massachusetts; (g) the Internal Revenue Service; (h) Bowditch & Dewey, LLP, as counsel to the Issuer (as defined herein); (i) Nolan Sheehan Patten, as counsel to MassDevelopment New Markets CDE #25, LLC; (j) any other notice parties required under any Prepetition Loan Document; (k) Rockland Trust Company; (l) all parties which, to the best of the Debtors' knowledge, information and belief, have asserted or may assert a lien in the Debtors' assets (including by means of an interest in the Prepetition Bond Facility (as defined herein)); and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002, including, without limitation, the Committee (as defined herein) and its counsel (collectively, the "Notice Parties"); and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

I.      **THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND**

4890-2874-3098.2

**CONCLUSIONS OF LAW:**[3]

(A)    Petition Date. On October 1, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate and maintain their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No chapter 11 trustee or examiner has been appointed in any of these Chapter 11 Cases.

(B)    Jurisdiction and Venue. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and other predicates for the relief granted herein are sections 105, 361, 362, 363, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, and 9014 and Local Rules 4001-2 and 9013-1.

(C)    Committee Formation and Ombudsman Appointment. On October 20, 2023, the U.S. Trustee appointed an official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "Committee") [Dkt. No. 127] and a patient care ombudsman appointed pursuant to section 333 of the Bankruptcy Code [Dkt. No. 126] in these Chapter 11 Cases. On October 24, 2023, the Committee selected Dentons US LLP and Dentons Bingham Greenebaum (collectively, "Dentons") to serve as its legal counsel. On November 1, 2023, the Committee retained FTI Consulting, Inc. ("FTI") to serve as its financial advisor and investment banker. Retention applications for Dentons and FTI have been approved by the Court [Dkt. Nos. 287

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4890-2874-3098.2

and 273, respectively].

(D)     <u>Notice</u>. The Notice was given in the manner described in the Motion.

(E)     **<u>Debtors' Stipulations</u>.[4] In requesting the use of Cash Collateral, and in exchange for and as a material inducement to the Prepetition Secured Parties to agree to provide and consent to access to the Cash Collateral and subordination of the Prepetition Liens (as defined herein) to the Carve Out, as provided herein, and as a condition to consenting to the use of Cash Collateral as set forth herein, subject to the rights of the parties in interest (other than the Debtors) to challenge same as set forth in Section 6.1 of this Sixth Interim Order, the Debtors admit, stipulate, acknowledge and agree, as follows:**

(i)     Prepetition Bond and Loan Facility.

(a)     The Debtors, the Massachusetts Development Finance Agency (the "<u>Issuer</u>") and U.S. Bank Trust Company, National Association, as successor in interest to U.S. Bank National Association, as trustee (the "<u>Bond Trustee</u>"), are party to three loan and trust agreements, each dated as of November 1, 2019 (each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, collectively, the "<u>Prepetition LTAs</u>"), providing a bond facility (the "<u>Prepetition Bond Facility</u>"), pursuant to which the Issuer issued the following three series of bonds (collectively, the "<u>Series 2019 Bonds</u>"): (a) the Series 2019A Bonds in an aggregate principal amount of $28,350,000 (the "<u>Series 2019A Bonds</u>"), (b) the Series 2019B-1 Bonds in an aggregate principal amount of $10,525,000 (the "<u>Series 2019B-1 Bonds</u>"), and (c) the Series 2019B-2 Bonds in an aggregate principal amount of $11,005,000 (the "<u>Series 2019B-2 Bonds</u>"). Pursuant to the Prepetition LTAs, the Issuer loaned the proceeds of the Series

---

[4] For the avoidance of doubt, the Court finds in this paragraph E only that the Debtors have stipulated to the provisions contained therein in subparagraphs (i) through (vii) (the "Debtors' Stipulations"). The Debtors' Stipulations do not constitute findings of fact or conclusions of law of or by the Court.

4890-2874-3098.2

2019 Bonds to the Debtors to, among other things, refinance pre-existing bond debt obligations and finance the construction, improvement, renovation, and/or equipping of the Debtors' health facilities. In connection with each of the Series 2019 Bonds, the Debtors entered into a corresponding continuing covenant agreement, each dated as of November 1, 2019 (each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, a "CCA" and collectively, the "CCAs") with Siemens Public, Inc. (the "Bondholder"), pursuant to which the Bondholder purchased the applicable Series 2019 Bond and became the sole registered and beneficial owner of such bond. As of the Petition Date, the outstanding principal balances of the Series 2019A Bonds, the Series 2019B-1 Bonds and the Series 2019B-2 Bonds were $26,040,000, $9,665,000 and $10,105,000, respectively.

(b)    Separate from their bond debt obligations, the Debtors are also party to that certain Loan Agreement, dated as of April 12, 2022 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Siemens Loan Agreement") with Siemens Financial Services, Inc. ("SFS" and together with the Bondholder, the "Prepetition Lenders"), pursuant to which SFS provided the Debtors with a term loan in the aggregate principal amount of $10,000,000 (the "Prepetition Term Loan Facility"). As of the Petition Date, the outstanding principal balance of the Prepetition Term Loan Facility was $8,230,000.

(c)    The Debtors' obligations owing to the Bondholder and SFS are evidenced and secured by the Debtors' obligations under that certain Master Trust Indenture, dated as of November 1, 2019, by and among the Debtors and U.S. Bank Trust Company, National Association, successor in interest to U.S. Bank National Association (the "Master Trustee" and together with the Prepetition Lenders, the "Prepetition Secured Parties") (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Master

9

4890-2874-3098.2

Indenture"), including through the issuance of a note for each such obligation thereunder (each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, collectively, the "Prepetition Notes"). The Prepetition Notes, together with the Prepetition LTAs, the Series 2019 Bonds, the CCAs, the Master Indenture, the Siemens Loan Agreement, and together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Secured Parties, including, without limitation, all security agreements, notes, mortgages, Uniform Commercial Code financing statements, documents and instruments are herein collectively referred to as the "Prepetition Loan Documents," and the obligations arising thereunder, whether for principal, interest, fees, costs, expenses, reimbursement, indemnification or otherwise, are herein collectively referred to as the "Prepetition Obligations."

(d)      As of the Petition Date, the Prepetition Bond Facility and the Prepetition Term Loan Facility are secured by first-priority security interests in and liens (the "Prepetition Liens") in favor of the Master Trustee on certain of the Debtors' real property assets (subject only to certain of the liens permitted under the Prepetition Loan Documents, including certain liens granted in connection with a new market tax credit financing as to Debtors' facility in Athol, Massachusetts (the "NMTC Lien"), and certain interests in connection with the subordination of Prepetition Secured Parties' fee mortgage with respect to Debtors' facility in Gardner, Massachusetts to a ground lease (the "Ground Lease Interest")) and all of the Debtors' Gross Receipts (as defined in the Prepetition Loan Documents), whether in the form of accounts, accounts receivable, health-care-insurance receivables, contract rights, documents, letter-of-credit rights, chattel paper, electronic chattel paper, tangible chattel paper, instruments, investment property, promissory notes, rights under insurance, deposit accounts, general intangibles, or payment intangibles, and all proceeds thereof. In addition, as of the Petition Date, the Prepetition

10

4890-2874-3098.2

Bond Facility is further secured by certain debt service reserves and all proceeds thereof (collectively, with the property described in the foregoing sentence, the "Prepetition Collateral"). Except as expressly set forth in this Sixth Interim Order, all parties reserve all rights and defenses with respect to the Ground Lease Interest.

(ii)     Prepetition Obligations. The Prepetition Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the Debtors, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition Obligations owing to the Prepetition Secured Parties is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases (as defined herein), other than with respect to the NMTC Lien and the Ground Lease Interest.

(iii)    Prepetition Liens. The Prepetition Liens granted to the Prepetition Secured Parties constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected security interests in and liens on the Prepetition Collateral, were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity (other than with respect to the NMTC Lien and the Ground Lease Interest).

(iv)     No Challenges/Claims. No offsets, challenges, objections, defenses,

11

claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense, including, without limitation, avoidance, disallowance, disgorgement, recharacterization or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law (other than with respect to the NMTC Lien and the Ground Lease Interest). The Debtors and their Estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action and/or choses in action against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees with respect to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(v)     Indemnity. The Prepetition Secured Parties have acted in good faith **and without negligence or violation of public policy or law in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting or obtaining the requisite approvals of the use of Cash Collateral, including in respect of the granting of the Adequate Protection Liens (as defined below), any challenges or objections to the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing. Accordingly, the Prepetition Secured Parties shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability**

12

**incurred in respect thereof or in any way related thereto, provided that no such parties will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from (a) such parties' gross negligence, fraud, or willful misconduct or (b) the facts and circumstances directly giving rise to a successful Challenge Proceeding (as defined herein) brought against the Prepetition Secured Parties (as evidenced by a final, non-appealable order or judgment of a court of competent jurisdiction). No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph E(v), in the Prepetition Loan Documents to the Debtors' obligation to indemnify and/or hold harmless the Prepetition Secured Parties.**

(vi)    [Reserved].

(vii)    <u>Cash Collateral</u>.  All of the cash of the Debtors, except for State Funding (as defined herein), wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtors, whether as Prepetition Collateral, except to the extent any of the foregoing constitutes State Funding, as income, proceeds, products, rents or profits of other Prepetition Collateral, or otherwise, constitutes "<u>cash collateral</u>" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").

(F)    <u>Findings Regarding the Use of Cash Collateral</u>.

(i)    <u>Need for Use of Cash Collateral</u>. The Debtors' ability to manage their relationships with their vendors, suppliers, and customers, pay their employees, pay certain fees and expenses as set forth herein, and otherwise fund their efforts and activities is essential to the viability of these Chapter 11 Cases as the Debtors seek to continue to provide essential and necessary services to their communities and to maximize the value of the assets of the Estates for

13

4890-2874-3098.2

the benefit of all creditors of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the use of Cash Collateral as set forth in this Sixth Interim Order is vital to the preservation, maintenance, and maximization of the value of each Debtor, its Estate, and assets. Accordingly, the Debtors have an immediate need to use Cash Collateral as set forth in this Sixth Interim Order to, among other things, permit the orderly conduct of their affairs and initiatives as contemplated in these Chapter 11 Cases, minimize the disruption of their relationships with essential constituents as they undertake efforts and activities to continue to provide essential and necessary services to their communities and to preserve and maximize the value of the assets of the Debtors' Estates and, in turn, to maximize the recovery to all creditors of the Estates.

(ii)    Budget. The Debtors have filed an amended reconciled budget for the period ended November 24, 2023 [Dkt. No. 252], pursuant to the terms of the Proceeding Memorandum and Order entered on November 3, 2023 [Dkt. No. 211]. The Debtors have also prepared and delivered to the Prepetition Secured Parties an Approved Budget that reflects the Debtors' weekly anticipated cash receipts (including State Funding) and weekly anticipated disbursements of Cash Collateral (including, without limitation, debt service expenses) and State Funding for the period set forth therein. The Debtors believe that the applicable Approved Budget (which Approved Budget is the same as the Approved Budget attached to this Sixth Interim Order as **Exhibit 1**) is reasonable under the facts and circumstances.

(iii)    State Funding. The Prepetition Secured Parties' willingness to consent to the use of Cash Collateral (on the terms and subject to the conditions set forth in this Sixth Interim Order) is predicated upon the Debtors' ability to receive supplemental Medicaid payments from the Commonwealth of Massachusetts, as evidenced by that certain Supplemental Payment and

14

4890-2874-3098.2

Support Agreement (the "SPS Agreement") by and between The Henry Heywood Memorial Hospital ("Heywood Hospital") and the Commonwealth of Massachusetts, Executive Office of Health and Human Services, Office of Medicaid ("EOHHS"),[5] pursuant to which EOHHS has agreed to provide Debtor Heywood Hospital up to a total amount of approximately $13,250,000 (the "State Funding"), which funds shall be deposited in a segregated account apart from Cash Collateral (of which $13,250,000 has already been received by the Debtors). The terms "Cash Collateral" and "Prepetition Collateral" shall exclude the funds comprising State Funding that are in the possession of the Debtors. This Sixth Interim Order makes no determination with respect to whether cash receipts generated from the State Funding constitute Prepetition Collateral or otherwise and the rights therein.  Further proceedings may be required for such determination, and all rights as to such determination are reserved as to all parties.

(iv)    Adequate Protection for Prepetition Secured Parties. The Prepetition Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, during the Sixth Interim Period (as defined herein), subject to the terms and conditions set forth herein. The Prepetition Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code for the Debtors' use of the Prepetition Collateral, including the Cash Collateral, and the imposition of the automatic stay. Based upon the Motion and on the record presented to this Court at the Interim Hearings, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair

---

[5] The Debtors filed their motion to assume the SPS Agreement at Dkt. No. 8 and the SPS Agreement at Dkt. No. 60. The Court entered an order authorizing the assumption of the SPS Agreement on a final basis at Dkt. No. 230.

4890-2874-3098.2

consideration for the consent of the Prepetition Secured Parties. The Prepetition Secured Parties have expressly consented to the entry of this Sixth Interim Order and the relief provided herein and pursuant to the terms of the Prepetition Loan Documents. Such consent to the use of Cash Collateral on the terms and conditions of this Sixth Interim Order is predicated in part upon (i) the use of State Funding for the purposes of working capital and general corporate purposes of Heywood Hospital pursuant to the terms of the SPS Agreement and, as to the payment of payroll, as set forth in the Approved Budget; (ii) the Debtors' compliance with the Milestones (subject to any extension by written agreement of the Prepetition Secured Parties (for which written agreement email shall suffice)); and (iii) the provision of adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) as set forth in this Sixth Interim Order.

(v)     Sections 506(c) and 552(b). The Debtors have agreed that, as a condition to the use of Cash Collateral as set forth in this Sixth Interim Order, and as a material inducement to the Prepetition Secured Parties' consent to the use of Cash Collateral as set forth in this Sixth Interim Order, and in exchange for (a) the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve Out, and (b) the consensual use of Cash Collateral, subject to the Approved Budget and the terms of this Sixth Interim Order, and subject to the entry of the Final Order, the Prepetition Secured Parties are entitled to receive (1) a waiver of any "equities of the case" exception or claims under section 552(b) of the Bankruptcy Code, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(vi)     Good Cause. Good cause has been shown for the entry of this Sixth Interim Order. The relief requested in the Motion is necessary, essential and appropriate and is in the best interests of and will benefit the Debtors, their creditors and their Estates, as its implementation

16

will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' provision of essential and necessary services to their communities, to their operations and business affairs and to other applicable activities and efforts, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors and parties in interest, and (3) allow for the continued provision by the Debtors of essential and necessary services to their communities, their businesses, their employees and their assets. The terms of this Sixth Interim Order are fair and reasonable under the facts and circumstances, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration. This Sixth Interim Order and the use of Cash Collateral contemplated herein subject to the terms and conditions set forth herein are the product of reasonable, arm's length, good faith negotiations among the Debtors, the Prepetition Secured Parties, and the Committee.

(vii)    Adequate Protection. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, and 363 of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral), as set forth in this Sixth Interim Order.

(viii)    Immediate Entry. Sufficient cause exists for immediate entry of this Sixth Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and the applicable Local Rules. Any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled on the merits.

(ix)    Sixth Interim Hearing. Notice of the Sixth Interim Hearing and the relief requested in the Motion and provided in this Sixth Interim Order has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier, or hand delivery, to the Notice Parties.

(x)    Additional Conditions to Cash Collateral Use. The Prepetition Secured

17

4890-2874-3098.2

Parties' willingness to consent to the use of Cash Collateral (on the terms and subject to the conditions set forth in this Sixth Interim Order) is predicated upon the Debtors' obtaining Court approval of and compliance with the milestones set forth on **Exhibit 2** attached hereto (the "Milestones").

**NOW, THEREFORE**, based upon the Motion and the record before this Court with respect to the Motion, and with the consent of the Debtors and the Prepetition Secured Parties to the form and entry of this Sixth Interim Order, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

**Section 1.    Authorization and Conditions to Use of Cash Collateral**.

1.1    Motion Granted. The Motion is granted solely to the extent provided in this Sixth Interim Order. Any objections to the entry of this Sixth Interim Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits. Upon the entry of the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order and the Fifth Interim Order, the Debtors were expressly and immediately authorized and empowered to use Cash Collateral in accordance with, and subject to, the terms of such First Interim Order, such Second Interim Order, such Third Interim Order, such Fourth Interim Order and such Fifth Interim Order, as applicable, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order and the Fifth Interim Order, as applicable, and the creation and perfection of, among others, the Adequate Protection Liens (as defined in the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order and the Fifth Interim Order, as applicable) described in and provided for by the First

4890-2874-3098.2

Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order or the Fifth Interim Order, as applicable. The foregoing authorization and empowerment are hereby ratified and confirmed on a further interim basis. In the event of any inconsistency among the terms and conditions of the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order and this Sixth Interim Order, from and after the entry of this Sixth Interim Order, the terms and conditions of this Sixth Interim Order shall govern and control.

 1.2    Authorization of Use of Cash Collateral; Budget.

 a.    Authorization to Use Cash Collateral. To enable the Debtors to continue to operate their businesses and preserve and maximize the value of their Estates, during the period from the entry of this Sixth Interim Order through and including the earliest to occur of (i) the entry of the Final Order, (ii) the occurrence and during the continuance of a Termination Event and following the Default Notice Period (each as defined herein) or (iii) June 7, 2024, in each case unless extended by written agreement of the Prepetition Secured Parties (for which written agreement email shall suffice) (the period from the entry of this Sixth Interim Order through and including such earlier date, the "Sixth Interim Period"), the Debtors are hereby authorized to use Cash Collateral in accordance with the Approved Budget, subject to the Milestones (which are hereby approved in all respects) and pursuant to the terms and conditions of this Sixth Interim Order (including the Budget Covenants (as defined herein)); provided, that the Debtors shall use all available State Funding for the purposes of working capital and general corporate purposes of Heywood Hospital pursuant to the terms of the SPS Agreement and, as to the payment of payroll, as set forth in the Approved Budget. Following the entry of the Final Order, use of Cash Collateral will be governed by the terms and conditions of such Final Order.

b.      Budget. The budget attached hereto as **Exhibit 1** is a 5-week cash flow budget that includes on a line-item basis the Debtors' weekly anticipated cash receipts (including State Funding) and weekly anticipated disbursements (including, without limitation, debt service expenses) from State Funding and/or Cash Collateral. Such budget is hereby approved in all respects and is an Approved Budget.

c.      Budget Timelines.

i.      The Debtors shall, by 7:00 p.m. (prevailing Eastern Time) on or before Thursday of every second week after the Petition Date commencing on Thursday, October 19, 2023, propose to the Prepetition Secured Parties, the U.S. Trustee and the Committee an update to the then-existing Approved Budget (as defined herein) by adding thereto the forecast of cash receipts, cash disbursements and other applicable information for the 4-week period commencing with the calendar week of the date such proposed update is required to be delivered hereunder, which update, once approved in writing (for which writing email shall suffice) by the Prepetition Secured Parties in their reasonable discretion (each, a "Proposed Supplemental Budget" and, once approved in writing by the Prepetition Secured Parties (or deemed approved, as provided below), a "Supplemental Approved Budget"), shall supplement and replace the then-existing Approved Budget then in effect (such Approved Budget, as modified by any and all Supplemental Approved Budgets, shall constitute the "Approved Budget") without further notice, motion, or application to, order of, or hearing before, this Court; provided, that, unless any of the Prepetition Secured Parties, the U.S. Trustee or the Committee has objected to a Proposed Supplemental Budget within three (3) business days after delivery thereof (which objection shall be in e-mail to the Debtors and counsel to the Debtors), such Proposed Supplemental Budget shall be deemed acceptable to and approved for all purposes hereunder.  Unless and until such Proposed Supplemental Budget

20

4890-2874-3098.2

has been approved (or deemed approved as provided above), the Debtors' disbursements shall remain subject to the terms of the Approved Budget in effect prior to the Proposed Supplemental Budget in accordance with this Sixth Interim Order and the Debtors shall have no authority to use Cash Collateral other than in accordance with such Approved Budget and the terms herein. If, following a good faith effort by the Debtors and the Prepetition Secured Parties, in consultation with the Committee, the Debtors are unable to reach an agreement with the Prepetition Secured Parties on a proposed Supplemental Approved Budget, the Debtors may file a motion to approve a supplemental budget to be heard by this Court on an expedited basis (which expedited basis is agreed to by the Prepetition Secured Parties).

      ii.      By no later than 7:00 p.m. (prevailing Eastern Time) on May 2, 2024 and every Thursday thereafter, the Debtors shall deliver to the Prepetition Secured Parties, the U.S. Trustee, the Commonwealth of Massachusetts and the Committee variance reports (in substantially the same format as the then-existing Approved Budget) showing actual cash receipts, disbursements and other applicable information for the immediately preceding calendar week (ending on the immediately preceding Friday) noting therein all variances and including written explanations for only such variances that (w) both exceed 7.5% and $50,000 in amount or (x) do not exceed $50,000 in amount but constitute a 100% variance, on a line-item basis, from values set forth for such period(s) in the then-existing Approved Budget or the most current Supplemental Approved Budget, as applicable (each, a "Variance Report"), provided, that each Variance Report delivered on a Testing Date (as defined herein) shall include a cumulative variance report (in substantially the same format as the then-existing Approved Budget) showing actual cash receipts, disbursements and other applicable information for the immediately preceding week period (ending on the immediately preceding Friday) (the "Budget Period;" provided, that for the first four weeks

21

4890-2874-3098.2

following the Petition Date, the Budget Period shall begin on the Petition Date and end on the Testing Date), noting therein all variances and including explanations for such variances on a line-item (to the extent that such line-item variances (y) both exceed 7.5% and $50,000 in amount or (z) do not exceed $50,000 in amount but constitute a 100% variance) and aggregate basis, from values set forth for such period(s) in the Approved Budget or the most current Supplemental Approved Budget, as applicable to allow the Prepetition Secured Parties, the U.S. Trustee, the Commonwealth of Massachusetts and the Committee to determine whether the Debtors are in compliance with the Budget Covenants.

iii.    By no later than 7:00 p.m. (prevailing Eastern Time) on or before February 15, 2024, the Debtors shall deliver to the Prepetition Secured Parties, the U.S. Trustee and the Committee a budget that reflects the Debtors' weekly anticipated cash receipts (including State Funding) and weekly anticipated disbursements of Cash Collateral (including, without limitation, debt service expenses) and State Funding, as applicable, through the period ending September 30, 2024.

d.    Budget Covenants. The permitted variances listed below (collectively, the "Permitted Variances") shall be tested on a rolling four-week basis, which shall first be reported for purposes of this Sixth Interim Order on May 2, 2024, and on the Thursday of every second week thereafter (with respect to the immediately preceding Budget Period) (each such date, a "Testing Date"). Notwithstanding anything to the contrary herein, the State Funding shall not be included in testing the Permitted Variance. The Debtors shall only expend Cash Collateral, proceeds thereof and proceeds of State Funding in accordance with the purposes, and in the time periods, set forth in the Approved Budget, subject to the following Permitted Variances (x) aggregate actual disbursements may not be more than 110% of the projected aggregate disbursements set

22

forth in the Approved Budget for the relevant Budget Period, provided, that, the cash disbursements considered for determining compliance with this covenant shall exclude the Debtors' cash disbursements after the Petition Date in respect of professional fees of the Prepetition Secured Parties, and provided, further, that the Debtors may carry forward the amount by which actual disbursements were below the budgeted amounts as set forth in the Approved Budget (as updated from time to time in accordance herewith and without duplication of modifications in anticipated expenditures in any updated budget) during an applicable Budget Period to the subsequent Budget Period and (y) aggregate actual cash receipts may not be less than 90% of the projected aggregate cash receipts set forth in the relevant Budget Period, provided that the Debtors may carry forward the amount by which actual receipts exceeded the budgeted amounts set forth in the Approved Budget (as updated from time to time in accordance herewith and without duplication of modifications in anticipated receipts in any updated budget) during an applicable Budget Period to the subsequent Budget Period. The budget-related covenants under this Section 2(d) are collectively referred to herein as the "Budget Covenants."

e.      Limitations on Use of Cash Collateral. The Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors (the "Effective Date"), except (i) with respect to the Prepetition Obligations as set forth in this Sixth Interim Order or as subsequently approved in writing (including by e-mail) by the Prepetition Secured Parties; (ii) as provided in any order in connection with any relief requested by the Debtors at the outset of these Chapter 11 Cases (the "First Day Orders"), each in form and substance reasonably acceptable to the Prepetition Secured Parties; or (iii) any payment made in accordance with the Approved Budget, subject to the Permitted Variances. The use of Cash Collateral pursuant to the terms and

23

4890-2874-3098.2

conditions of this Sixth Interim Order and in accordance with the Approved Budget shall not be deemed to be consent by the Prepetition Secured Parties to any other or further use of Cash Collateral or to the use of any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Approved Budget, subject to the Permitted Variances, for each type of disbursement.

1.3     Continuation of Prepetition Procedures. Except to the extent expressly set forth in the Prepetition Loan Documents or in other First Day Orders, and subject to the entry of the Final Order and to the extent incorporated into the Approved Budget, all prepetition practices and procedures for the payment, collection and application of proceeds of the Prepetition Collateral are hereby approved and shall continue, including the payment, collection and application of proceeds from any Debt Service Fund or Debt Service Reserve Fund (each as defined in the applicable Prepetition Loan Documents) under the Prepetition Bond Facility. Subject to Section 6.1 of this Sixth Interim Order, to the extent that the Debtors have remitted any funds to the Bond Trustee prior to the Petition Date, including any funds held in any Debt Service Fund or Debt Service Reserve Fund, such funds shall not be available for use by, or returned to, the Debtors, and all such funds shall be held for the sole benefit of the Bondholder.

1.4     Non-Conforming Use of Cash Collateral. The Prepetition Secured Parties may, in their reasonable discretion, agree in writing to the use of the Cash Collateral in a manner or amount which does not conform to the manner or amount, as applicable, set forth in the Approved Budget (each such approved non-conforming use of Cash Collateral, a "Non-Conforming Use"). If such written consent is given, the Debtors shall be authorized pursuant to this Sixth Interim Order to use Cash Collateral for any such Non-Conforming Use without further Court approval, and the Prepetition Secured Parties shall be entitled to all of the protections specified in this Sixth Interim

24

Order for any such Non-Conforming Use. The Debtors shall provide substantially contemporaneous

notice of any Non-Conforming Use to (a) counsel to the Committee and (b) the U.S. Trustee.

**Section 2.     Adequate Protection.**

2.1     Adequate Protection. The Prepetition Secured Parties are entitled, pursuant to

sections 361, 362, and 363 of the Bankruptcy Code and effective as of the Petition Date, to

adequate protection of their respective interests in the Prepetition Collateral, including any Cash

Collateral, in an amount equal to the aggregate Diminution in Value of the Prepetition Secured

Parties' respective interests in the Prepetition Collateral from and after the Petition Date. On

account of such adequate protection, the Prepetition Secured Parties are hereby granted the

following, in each case subject to the Carve Out (collectively, the "Adequate Protection"):

a.     Adequate Protection Liens. The Prepetition Secured Parties are hereby

granted (effective and perfected upon the date of this Sixth Interim Order and without the necessity

of any Perfection Act (as defined herein)) valid and perfected postpetition replacement security

interests in and liens upon the Prepetition Collateral (including Cash Collateral), with the same

validity, extent and priority as the Prepetition Secured Parties' existing security interests in and

lien on the Prepetition Collateral (the "Adequate Protection Liens"), which liens shall be subject

to the Carve Out, any Permitted Liens and the Prepetition Liens; provided, that the Adequate

Protection Liens shall not attach to property or proceeds recovered as a result of any claim or cause

of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar

provisions of applicable state, federal, or foreign law (including any other avoidance actions under

the Bankruptcy Code) (collectively, the "Avoidance Actions"); provided, further, that (i) the

Adequate Protection Liens shall not attach to equipment and related property in the possession of

the Debtors to the extent that such equipment and related property is the property of Med One

25

Capital Funding, LLC and its assignee(s), if any (collectively, "Med One") and is leased to the Debtors in a transaction constituting a "true lease," or (ii) to the extent Med One has a properly perfected security interest in and lien on equipment and related property that is the property of and in the possession of the Debtors, and to the extent such security interest(s) and lien(s) of Med One constitute Permitted Liens (as defined in this Sixth Interim Order), the Adequate Protection Liens shall not prime such Permitted Liens.

b.      Adequate Protection Payments. **Subject to the Approved Budget, the Debtors are authorized to pay to the Prepetition Secured Parties cash payments in an amount equal to all accrued or accruing prepetition and postpetition unpaid interest at the applicable contractual, non-default rate and at the time or times and pursuant to the terms and conditions provided for in the Prepetition Loan Documents (unless otherwise specified herein) and all other reasonable and documented unpaid fees, costs and/or other expenses, whether accrued or incurred prior to, on or following the Petition Date owing under the Prepetition Loan Documents, including but not limited to, the reasonable and documented fees and expenses of counsel for the Prepetition Secured Parties provided for thereunder under the Prepetition Loan Documents**. The payment of interest pursuant to this paragraph shall be without prejudice to the rights of the Prepetition Secured Parties to assert claims for the payment of additional interest calculated at any other applicable rates of interest or on any other basis in accordance with the Prepetition Loan Documents. Notwithstanding anything to the contrary in this Section 2.1(b), any payments made under this section may only be made with Cash Collateral and may not be made using State Funding, per the terms of the SPS Agreement.  To the extent the Prepetition Secured Parties are determined to be undersecured by a final order of a court of competent jurisdiction, then any payments pursuant to this paragraph shall be subject to any

26

remedy (which may include reallocation as principal payments and/or clawback) in accordance with applicable law as set forth in such final order.

c.      Adequate Protection Superpriority Claims. Subject only to the Carve Out and the Permitted Liens, the Prepetition Secured Parties are hereby granted allowed administrative expense claims and allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which shall be allowed claims against each of the Debtors (jointly and severally), with priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 365, 503(b), 507(a), 507(b) or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment. The Adequate Protection Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors (other than the funds comprising State Funding that are in the possession of the Debtors provided by the Commonwealth of Massachusetts), subject to the Carve Out and the Permitted Liens.

d.      Reporting. Upon reasonable advance written notice, the Debtors shall provide the Prepetition Secured Parties with reasonable access during business hours to the Debtors' facilities, management, books, and records required under the Prepetition Loan Documents. The Debtors shall also provide the Prepetition Secured Parties and the Committee with such other and further financial and operational reporting as the parties have agreed or may agree in writing (for which writing email shall suffice), including, without limitation, the weekly operational metrics report which shall be delivered on or before Thursday of every week by 7:00

27

4890-2874-3098.2

p.m. (prevailing Eastern Time).

e.      Fees and Expenses. The Debtors are authorized and directed to pay: (i) all reasonable and documented fees and out-of-pocket expenses of the Prepetition Secured Parties that are required to be paid by the Debtors under the Prepetition Loan Documents as set forth on the Approved Budget, including such fees and expenses of counsel and financial advisors to the Prepetition Secured Parties; and (ii) on an ongoing basis, from time to time after the Petition Date, and without duplication, all reasonable and documented fees and out-of-pocket expenses incurred by the Prepetition Secured Parties and required to be paid by the Debtors under the Prepetition Loan Documents and as set forth on the Approved Budget, including without limitation the reasonable and documented fees and out-of-pocket expenses of (A) McGuireWoods LLP, as legal counsel to the Prepetition Lenders, (B) Locke Lord LLP, as Massachusetts counsel to the Prepetition Lenders, (C) Berkeley Research Group, LLC, as financial advisor to the Prepetition Lenders, and (D) Sullivan & Worcester LLP, as legal counsel to the Bond Trustee and the Master Trustee (such professionals referred to in the foregoing clauses (A) through (D), collectively, the "Adequate Protection Professionals" and such other reasonable and documented fees and expenses incurred by counsel to the participant under the Prepetition Bond Facility (i.e., notwithstanding that such participant is not included in the definition of the term "Prepetition Secured Parties")[6] under the bond documents pursuant to a participation agreement, collectively, the "Adequate Protection Professional Fees and Expenses"). Any limitation to the Approved Budget in this Sixth Interim Order of the Debtors' current payment obligations with respect to the Adequate Protection Professional Fees and Expenses shall not limit in any way whatsoever the Debtors' reimbursement

---

[6] For purposes of this Sixth Interim Order and the Approved Budget, the term "Adequate Protection Professionals" as used herein shall include counsel to the participant.

28

obligations as to the Adequate Protection Professional Fees and Expenses (if any) and/or the fees and expenses of the Prepetition Secured Parties; the Prepetition Secured Parties, reserve any and all such rights, liens and claims (including, without limitation, their respective right to receive payment of and reimbursement for the Adequate Protection Professional Fees and Expenses from the Prepetition Collateral). Notwithstanding anything to the contrary in this Section 2.1(e), any payments made under this section may only be made with Cash Collateral and may not be made using State Funding, per the terms of the SPS Agreement.

f.       With respect to Adequate Protection Professional Fees and Expenses incurred on or following the Petition Date, such Adequate Protection Professionals, no more frequently than twice per month, shall deliver an invoice (which invoice shall include time entry detail, a general breakdown of total hours spent among general categories of matters, a summary of billable hours by professional and information as to the average blended hourly rates of such professionals, and which invoice may be redacted for privileged or confidential information) to counsel for the Debtors, the U.S. Trustee and counsel to the Committee, with a copy of such invoices delivered simultaneously to counsel to the other Prepetition Secured Parties. **If no written objection is received by the parties that received such invoice in the first instance by 12:00 p.m. (Noon), prevailing Eastern Time, on the date that is fifteen (15) calendar days after delivery of such invoice, then the Debtors shall immediately (i.e., upon the expiration of such fifteen (15) calendar day period) pay in full in cash in immediately available funds the fees and expenses for which payment is sought therein (as set forth in the Approved Budget) to which there has been no objection. If an objection to a professional's invoice is timely received, the undisputed portion of any such invoice will be deemed allowed, the Debtors shall pay such undisputed amount to the extent that the fees and expenses sought therein are**

29

4890-2874-3098.2

set forth in the Approved Budget, and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. With respect to Adequate Protection Professional Fees and Expenses incurred prior to the Petition Date, the Debtors, to the extent such fees and expenses are set forth in the Approved Budget, shall immediately pay such fees and expenses upon their receipt of an invoice in summary form as described in the first sentence of this provision. The Adequate Protection Professionals shall not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts). Subject to Section 6.1 hereof, payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination, or disgorgement except to the extent such payments are later found by final order of a court of competent jurisdiction to have been made on account of actual fraud or gross negligence; provided, however, that to the extent the Prepetition Secured Parties are determined to be undersecured by a final order of a court of competent jurisdiction, then any payments pursuant to this paragraph shall be subject to any remedy (which may include reallocation as principal payments and/or clawback) in accordance with applicable law as set forth in such final order.

g.      Additional Adequate Protection. As additional adequate protection for the Prepetition Secured Parties: (i) the Debtors shall prepare and deliver to the Prepetition Secured Parties (with a copy to the U.S. Trustee, the Commonwealth of Massachusetts, and the Committee) all documents and reports required to be prepared and delivered to the Prepetition Secured Parties under the Prepetition Loan Documents, in each case at the times and in the manner and form set forth therein, unless otherwise specified herein; (ii) subject to the terms

30

and conditions of the Prepetition Loan Documents, the Prepetition Secured Parties shall retain and are authorized to exercise all visitation, inspection and audit rights; and (iii) the Debtors shall maintain with respect to the Prepetition Collateral insurance of the type and in the amount (1) as the Debtors maintained as of the Petition Date, and (2) as required under the Prepetition Loan Documents.

h.      Disposition of Collateral. Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Prepetition Collateral or Cash Collateral outside the ordinary course of business, other than the use of Cash Collateral pursuant to the terms of the Approved Budget (subject to the Permitted Variances) and the terms of this Sixth Interim Order, without (i) the prior written consent of the Prepetition Secured Parties (and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Secured Parties), or (ii) an order of this Court.

i.      Right to Seek Additional Adequate Protection. This Sixth Interim Order is without prejudice to and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

2.2     Postpetition Lien Perfection. This Sixth Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the Adequate Protection Liens and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Cash Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of Cash

Collateral, or requirement to register liens on any certificates of title (a "Perfection Act"). Notwithstanding the foregoing, if the Bond Trustee shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then the Bond Trustee, as applicable, is authorized to perform such act, and the Debtors are authorized to perform such act to the extent necessary or required by this Sixth Interim Order, which act or acts shall be deemed to have been accomplished as of the date and time of the entry of this Sixth Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The Bond Trustee may choose to file, record, or present a certified copy of this Sixth Interim Order in the same manner as a Perfection Act, which filing, recordation, or presentation shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Sixth Interim Order in accordance with applicable law. Should the Bond Trustee attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Sixth Interim Order.

a.   To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by this Sixth Interim Order (including the Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power and authority of this Court;

4890-2874-3098.2

provided, however, that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens. By virtue of the terms of this Sixth Interim Order, to the extent that the Master Trustee has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors, such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Sixth Interim Order without further action by the Master Trustee.

b.      Except as provided in this Sixth Interim Order, the Adequate Protection Liens and the Adequate Protection Claims (i) shall not be made subject to or pari passu with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of these Chapter 11 Cases or any Successor Cases (except in respect of the Carve Out) and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

**Section 3.     Carve Out**.

3.1     Carve Out. As used in this Sixth Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) or section 1104 of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by final order, interim order,

33

procedural order, or otherwise, subject to the professional fees and disbursements reflected in the Approved Budget on a line item basis for each professional's unpaid fees (excluding any success or transaction fees or other fees and costs awarded by the Court), costs, disbursements and expenses (the "Allowed Professional Fees") incurred or earned by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals"), the Committee pursuant to sections 328 or 1103 of the Bankruptcy Code (the "Committee Professionals") and the patient care ombudsman pursuant to sections 330 and 333 of the Bankruptcy Code (the "Ombudsman Professionals" and together with the Debtor Professionals and the Committee Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Master Trustee of a Carve Out Trigger Notice (as defined herein) (the "Pre-Trigger Carve Out Cap"); (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $150,000 incurred after the first business day following delivery by the Master Trustee of the Carve Out Trigger Notice (such date, the "Trigger Date"), to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise (all such amounts set forth in this clause (iv) being the "Post-Trigger Carve Out Cap") to the extent incurred or accrued prior to the occurrence of a Termination Event and remaining unpaid and provided for under the Approved Budget (all such amounts set forth in clauses (i) and (iv), collectively, the "Carve Out Cap"); and (v) the allowed fees and expenses of the patient care ombudsman (i.e., himself and/or herself and excluding the fees and expenses of the Ombudsman Professionals) appointed pursuant to section 333 of the Bankruptcy Code. For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by e-mail (or other electronic means) by the Master Trustee to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to the Committee, the other Prepetition Secured Parties and their

4890-2874-3098.2

counsel, which notice may be delivered following the occurrence and during the continuation of a Termination Event (as defined herein) and upon termination of the Debtors' right to use Cash Collateral by the Master Trustee, stating that the Post- Trigger Carve Out Cap has been invoked. The amounts included in the Carve Out shall not be affected or reduced by any "Intercompany Transactions," as used in the Court's order granting the *Debtors' Motion for Order (I) Authorizing the Debtors to (A) Maintain Their Cash Management System and Existing Bank Accounts, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Perform Intercompany Transactions, and (II) Granting Related Relief* [Dkt. No. 5]. Such Intercompany Transactions shall be junior to the Carve Out.

3.2    Carve Out Reserves. On the business day following entry of this Sixth Interim Order (or as soon as reasonably practicable thereafter) and then on the first business day of each month thereafter, Debtors will remit to each of the Professional Persons, the amounts set forth in the Budget for each of such Professional Persons, with separate line items for each Professional Person, for such month (the "Carve Out Payments") to be held in a client trust account at each of the respective Professional Persons (each such account, a "Professional Fee Reserve"). If and to the extent that the professional fees and expenses that the Court allows on a final basis (and such period for which the fees and expenses are allowed (the "Professional Fee Period") is less than the Carve Out Payments for such Professional Fee Period, then within five (5) business days after such final allowance, each of the Professional Persons will remit the unused amount of the Carve Out Payment paid on account of the Professional Fee Period to the Debtors. Nothing herein constitutes consent by any party to the allowance of any fees or expenses of Professional Persons. All funds in each Professional Fee Reserve shall be used first to pay the Carve Out (whether such fees are allowed on an interim or final basis). Notwithstanding anything in this Sixth Interim Order to the

35

4890-2874-3098.2

contrary, on the Trigger Date, the Debtors shall remit Cash Collateral, pursuant to the terms and conditions set forth herein, in the amount of the Post-Trigger Carve Out Cap into the Professional Fee Reserve; the remittance by the Debtors of such Cash Collateral into the Professional Fee Reserve shall be deemed to have the consent of the Prepetition Secured Parties and shall be deemed to satisfy and discharge any and all obligations of the Prepetition Secured Parties with respect to the Post-Trigger Carve Out Cap.

3.3     Carve Out Priority. Notwithstanding anything to the contrary in this Sixth Interim Order or any Prepetition Loan Document, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens and the Adequate Protection Claims and any and all other forms of adequate protection provided to the Prepetition Secured Parties hereunder.

3.4     Payment of Allowed Professional Fees and Expenses. The Debtors shall be permitted to pay the Allowed Professional Fees of the Professional Persons subject to this Sixth Interim Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any interim compensation procedures order entered by this Court. The amounts paid, incurred or accrued prior to the Trigger Date (in the event of accrual, only as to services provided prior to the Trigger Date) shall not reduce the Post-Trigger Carve Out Cap.

3.5     No Direct Obligation to Pay Allowed Professional Fees; No Waiver of Right to Object to Fees. None of the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Sixth Interim Order and/or the Final Order or otherwise shall be construed (i) to obligate any Prepetition Secured Party in any way to pay compensation to, or to reimburse expenses of, any of the Professional Persons, or to guarantee that the Debtors or their Estates have

36

4890-2874-3098.2

sufficient funds to pay such compensation or reimbursement, or (ii) to increase the Carve Out if actual allowed fees and expenses of any of the Professional Persons are higher in fact than the Post-Trigger Carve Out Cap. Notwithstanding any provision in this Section 3 to the contrary, no portion of the Carve Out, Cash Collateral or Prepetition Collateral shall be utilized for the payment of professional fees and disbursements to the extent restricted under Section 7.2 of this Sixth Interim Order. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, the Committee, any other official or unofficial committee in these Chapter 11 Cases or any Successor Cases, or any trustee or of any other person or entity, and nothing herein shall affect the right of any Prepetition Secured Party or any other party to object to the allowance and payment of any such fees and expenses.

3.6     Payment of Carve Out On or After the Trigger Date.     Any payment or reimbursement made on or after the occurrence of the Trigger Date in respect of any Allowed Professional Fees shall permanently reduce the Post-Trigger Carve Out Cap on a dollar-for-dollar basis.

**Section 4.     Cash Management.**

4.1     Cash Management. The Debtors shall maintain their existing cash management arrangements in a manner consistent with this Court's order(s) granting the Debtors' cash management motion. The Debtors shall continue to hold the proceeds of State Funding in a segregated account.

**Section 5.     Termination Events; Rights and Remedies; Relief from Stay.**

5.1     Termination Events. The Debtors' right to use Cash Collateral pursuant to this Sixth Interim Order shall terminate without further notice or court proceeding on the earliest to occur of (a) June 7, 2024 (the "Cash Collateral Maturity Date"), if the Final Order has not been

37

4890-2874-3098.2

entered by the Court on or before such Cash Collateral Maturity Date; (b) the Effective Date of a confirmed chapter 11 plan of any of the Debtors; (c) [reserved]; or (d) three (3) business days (such three business-day period, the "Default Notice Period") following delivery of a written notice (a "Default Notice") from any of the Prepetition Secured Parties to the other Prepetition Secured Parties, counsel to the Debtors, the U.S. Trustee and counsel to the Committee of the occurrence of any of the events set forth in clauses (a) through (s) below, unless such Termination Event is cured or waived (which waiver may be documented by e-mail) within the Default Notice Period (or such later date as may be agreed to in writing (which agreement may be documented by e-mail) by the Prepetition Secured Parties); provided that in the event the Cash Collateral Maturity Date is otherwise set to occur on a date that is not a Business Day, the Cash Collateral Maturity Date shall be the next occurring business day. Each of the following shall constitute a termination event under this Sixth Interim Order unless waived in writing by the Prepetition Secured Parties (which waiver may be documented by e-mail) (each, a "Termination Event"):

a.      failure by any Debtor to comply with the Approved Budget (including any variance testing, but subject to the Permitted Variances);

b.      (i) the use of Cash Collateral other than in accordance with the Approved Budget and the terms and conditions of this Sixth Interim Order, or (ii) the termination, withdrawal or modification of State Funding;

c.      failure by any Debtor to comply with Sections 1.2(c), 1.2(e), 2.1(b), 2.1(e), 3.2 or 4.1 (except, as to Section 4.1, as otherwise ordered by this Court after notice of a hearing) of this Sixth Interim Order;

d.      the entry by a court of competent jurisdiction of an order pursuant to which the Prepetition Secured Parties shall cease to have a valid and perfected first priority security

38

interest in and lien on any Prepetition Collateral (subject to the NMTC Lien and Ground Lease Interest), junior only to the Carve Out and any Permitted Liens;[7]

e. failure by any Debtor to comply with any material provision of this Sixth Interim Order, and such failure to comply is not remedied within the Default Notice Period (the Debtors and the Prepetition Secured Parties agree that, to the extent that any failure by any Debtor, occurrence or event is encompassed under this subsection (e) of this Section 5 and under another subsection of this Section 5, such other subsection of this Section 5 shall govern);

f. the entry by a court of competent jurisdiction of an order amending, modifying, staying, revoking, or reversing the Sixth Interim Order in a way that is adverse to the Prepetition Secured Parties, without the express written consent (which consent may be documented by e-mail) of the Prepetition Secured Parties;

g. any sale or other disposition of all or a material portion of the Prepetition Collateral pursuant to section 363 of the Bankruptcy Code that would adversely affect the Debtors' ability to operate their business in the ordinary course other than as permitted by this Sixth Interim Order or as otherwise agreed to by the Prepetition Secured Parties (which agreement may be documented by email);

h. commencement of an adversary proceeding or contested matter by the Debtors objecting to the extent, validity, or priority of any Prepetition Obligations and/or the Prepetition Liens;

i. the filing by the Debtors of a motion to convert any of these Chapter 11

---

[7] For purposes of this Sixth Interim Order, "Permitted Liens" shall mean any liens that are senior by operation of law (including any such liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or that were, as of the Petition Date, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens, including any valid properly perfected mechanics' liens of appropriate scope, extent and amount.

4890-2874-3098.2

Cases to cases under chapter 7 of the Bankruptcy Code or the entry by a court of competent jurisdiction of an order converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code based upon a motion filed by any party;

j.       the filing by the Debtors of a motion to dismiss any of these Chapter 11 Cases, or the entry by a court of competent jurisdiction of an order dismissing any of these Chapter 11 Cases based upon a motion filed by any party (without the written consent of the Prepetition Secured Parties);

k.       the filing by the Debtors of any application, motion, or borrowing request seeking to use Cash Collateral on a non-consensual basis;

l.       the entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code, unless consented to by the Prepetition Secured Parties (which consent may be documented by e-mail);

m.       **except as provided in this Sixth Interim Order, the entry of an order granting relief from the automatic stay under section 362 of the Bankruptcy Code to the holder or holders of any security interest or lien on any part of the Prepetition Collateral that is adverse to the Prepetition Secured Parties;**

n.       failure to meet any Milestone under this Sixth Interim Order (or such later dates as may be approved in writing by the Prepetition Secured Parties (following consultation with the Committee), which approval may be documented by e-mail) and such failure to comply is not remedied within the Default Notice Period;

o.       if any Debtor proposes or supports any chapter 11 plan or seeks entry of an

40

order confirming a chapter 11 plan that is not conditioned upon (i) the payment of the Prepetition Obligations and the Debtors' obligations with respect to the Adequate Protection on terms and conditions reasonably acceptable to the Prepetition Secured Parties; it being understood that the Prepetition Secured Parties reserve any and all rights to object to any such plan in any event) or (ii) the disposition of all of the Debtors' material unexpired leases (including ground leases with Heywood Green Street LLC) and material executory contracts in a manner reasonably acceptable to the Prepetition Secured Parties, without the written consent of each of the Prepetition Secured Parties;

p.      if the Debtors seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would materially restrict or impair (A) the rights and remedies of any of the Prepetition Secured Parties against the Debtors as provided in this Sixth Interim Order or any of the Prepetition Loan Documents, or (B) the exercise of such rights or remedies by any the Prepetition Secured Parties against the Debtors in accordance with this Sixth Interim Order or the Prepetition Loan Documents;

q.      if this Sixth Interim Order is modified at the Final Hearing or thereafter in a manner not acceptable to the Prepetition Secured Parties;

r.      modification, amendment, vacatur or stay of this Sixth Interim Order (unless such modification, amendment, vacatur or stay is agreed to in writing by the Prepetition Secured Parties); and

s.      **the entry of an order granting any party (including the Debtors) any rights under section 506(c) of the Bankruptcy Code or otherwise to charge any costs or expenses of administration of these Chapter 11 Cases or any Successor Cases from or against the Prepetition Secured Parties or their Prepetition Liens on or other interests in any or all**

41

4890-2874-3098.2

**of the Prepetition Collateral or the Cash Collateral.**

5.2     Rights and Remedies Upon Termination Event. Upon expiration of the Default Notice Period, subject to the Carve Out, any automatic stay otherwise applicable to the Prepetition Secured Parties shall be modified to the extent necessary to permit the Prepetition Secured Parties to (i) exercise all rights and remedies under this Sixth Interim Order; and/or (ii) declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral. Notwithstanding anything herein to the contrary, during the Default Notice Period, the Debtors may use Cash Collateral in accordance with the Approved Budget and the other terms and conditions of this Sixth Interim Order and contest whether a Termination Event has occurred and/or is continuing.

5.3     Modification of Automatic Stay. The Debtors are authorized and directed to perform all acts and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Sixth Interim Order and the transactions contemplated hereby. **The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to accomplish the transactions contemplated by this Sixth Interim Order.**

**Section 6.     Representations and Covenants.**

6.1     Reservation of Third-Party Challenge Rights. The stipulations, releases, agreements, and admissions contained in this Sixth Interim Order, including, without limitation, the Debtors' Stipulations shall be binding on the Debtors in all circumstances. The Debtors' Stipulations shall be binding on the estate and each other party in interest, unless, and solely to the extent that each such party in interest takes the following actions (each, a "Challenge Proceeding" and, collectively, the "Challenge Proceedings") by no later than the following applicable deadlines

42

4890-2874-3098.2

(such time period established by the following clauses (a) through (d), as applicable, each a "Challenge Period" and, collectively, the "Challenge Periods"): (a) for a chapter 7 trustee and any other party in interest (other than the Committee) with standing and requisite authority to timely commence an adversary proceeding or other appropriate contested matter concerning the Prepetition Secured Parties' validity, extent and perfection of liens (the "Lien Challenge Complaint Issues"), such party in interest files a complaint with respect to the Lien Challenge Complaint Issues (such complaint, the "Lien Challenge Complaint") by no later than **February 15, 2024**, (b) with respect to the Committee, which is hereby granted standing derivatively on behalf of and with all rights of the estate regarding the Lien Challenge Complaint Issues and Non Lien Challenge Issues pursuant to this Order, the Committee files a Lien Challenge Complaint by no later than **February 15, 2024** (the "Initial Committee Challenge Deadline"), (c) with respect to the Committee, the Committee files a complaint or motion that seeks to assert, preserve, or prosecute any relief pursuant to sections 506(c) and 552(b) of the Bankruptcy Code, or any action for preferences, fraudulent transfers or conveyances, other avoidance power claims, or any other claims, counterclaims, or causes of action, objections, contests, or defenses (other than the Lien Challenge Complaint Issues) or the recharacterization of any Adequate Protection Payment or interest payment made pursuant to a cash collateral order (whether interim or final) (collectively, the "Non-Lien Challenge Matters" and such action referred to as the "Non-Lien Challenge"), by **April 22, 2024** (the "Second Committee Challenge Deadline"), or (d) such later date as set by agreement of the Committee, Debtors and Prepetition Secured Parties memorialized in a stipulation filed on the docket or an order of the Court for cause shown prior to the expiry of the applicable time period established by clauses (a) through (c); provided that any pleadings filed in connection with any Challenge Proceeding shall set forth with specificity the basis, to the extent

43

4890-2874-3098.2

required under the applicable pleading standard, for such Challenge Proceeding, and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred unless the Court for cause shown grants the opportunity to amend; provided, further that nothing herein limits or restricts the Committee from filing a Lien Challenge Complaint that expands or modifies the terms, scope and relief sought in the Draft Lien Challenge Complaint (as defined below). The Challenge Period shall be extended for a chapter 7 trustee for an additional seventy-five (75) calendar days if these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, provided, further, that in the event a chapter 7 trustee is appointed after the consummation of a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code or after the confirmation of a chapter 11 plan, the applicable Challenge Period shall not be extended and the original Challenge Period shall be binding on the chapter 7 trustee. A party in interest's commencement of a timely Challenge Proceeding shall preserve the applicable Challenge Period only with respect to such party in interest commencing such Challenge Proceeding or its successors and assigns and only to the extent of the express content of such Challenge Proceeding, and provided, further, that, if the Committee provides to the Debtors, the Prepetition Secured Parties, and the U.S. Trustee a draft of the Lien Challenge Complaint (the "Draft Lien Challenge Complaint") prior to the expiration of the Initial Committee Challenge Deadline or a draft complaint with respect to the Non-Lien Challenge (the "Draft Non-Lien Challenge Complaint") prior to the Second Committee Challenge Deadline, as applicable, then such applicable Challenge Period shall be tolled until the earliest of (i) the day on which the adversary proceeding or other appropriate contested matter commenced by such applicable complaint is resolved by a final order of the Court or a court of competent jurisdiction, (ii) the entry of an order approving the sale of all or substantially all of the Debtors'

44

4890-2874-3098.2

assets, (iii) the entry of an order approving a disclosure statement, (iv) the entry of an order converting or dismissing these Chapter 11 Cases, or (v) the entry of a final decree closing these Chapter 11 Cases.  Following receipt of a Draft Lien Challenge Complaint or a Draft Non-Lien Challenge Complaint, the Debtors shall promptly file with the Court a notice of receipt of such complaint and tolling of the applicable Challenge Period.

a.      Without limiting the provision stated above, if no such Challenge Proceeding is timely commenced, then: (aa) the Debtors' stipulations, admissions, agreements and releases contained in this Sixth Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding on all parties in interest; (bb) any and all Challenge Proceedings by any party (including, without limitation, the Committee, any chapter 11 trustee, or any examiner and/or other estate representative appointed or elected in these Chapter 11 Cases and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released and barred; (cc) to the extent not theretofore repaid, the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction, defense or avoidance, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case; (dd) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph E hereof, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (ee) the obligations under the Prepetition Loan Documents and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further challenge by the Debtors, the Committee or any other party in interest, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto). In

45

the event of a successful Challenge Proceeding in accordance with this Section 6.1, the Court may fashion any appropriate remedy in accordance with applicable law. This Sixth Interim Order vests and confers solely on the Committee standing and authority to pursue any cause of action belonging to the Debtors or their Estates related to the subject matter set forth in this Section 6.1. Nothing in this Sixth Interim Order vests or confers on any other Person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their Estates, including, without limitation, claims and defenses with respect to the Prepetition Loan Documents or the Prepetition Liens on the Prepetition Collateral and/or the Non-Lien Challenge Matters. The failure of any party to obtain standing prior to the expiration of the applicable Challenge Period shall not serve as a basis for such party to seek any extension of the applicable Challenge Period.

**Section 7.      Other Rights**.

7.1      Power to Waive Rights; Duties to Third Parties. Each of the Prepetition Secured Parties shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Sixth Interim Order that are in favor of such Prepetition Secured Party (the "Prepetition Lender Rights") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Prepetition Lender Rights. Any waiver by the Prepetition Secured Parties of any Prepetition Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein. Any delay in or failure to exercise or enforce any Prepetition Lender Right shall neither constitute a waiver of such Prepetition Lender Right, subject the Prepetition Secured Parties to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to any of the Prepetition Secured Parties.

46

7.2     No Unauthorized Disposition of Collateral; Use of Cash Collateral.  The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the Prepetition Collateral or Cash Collateral other than (x) in the ordinary course of business and (y) pursuant to the terms of this Sixth Interim Order, and the Debtors are authorized to use Cash Collateral solely in a manner consistent with this Sixth Interim Order (including Section 1.2 hereof) and the Approved Budget (including permitted variances). The Prepetition Secured Parties shall provide from Cash Collateral the amount of $50,000 for use by the Committee in connection with the investigation of, but not litigation, or any objection or challenge to (including, without limitation, a Challenge Proceeding or any motion for standing to commence a Challenge Proceeding), the Prepetition Liens or Prepetition Obligations.

7.3     No Waiver. The failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under the Prepetition Loan Documents or this Sixth Interim Order, as applicable, shall not constitute a waiver of any of the Prepetition Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Sixth Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the Prepetition Secured Parties to: (a) request conversion of these Chapter 11 Cases to cases under chapter 7, dismissal of these Chapter 11 Cases, or the appointment of a trustee in these Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties.

7.4     Prepetition Secured Parties' Reservation of Rights. The terms, conditions, and

4890-2874-3098.2

provisions of this Sixth Interim Order are in addition to and without prejudice to the rights of each Prepetition Secured Party to pursue any and all rights and remedies under the Bankruptcy Code, the Prepetition Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the Prepetition Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates, to seek a waiver of the Debtors' rights under section 506(c) of the Bankruptcy Code against any Prepetition Collateral (the "506(c) Waiver"), to object to any attempt by the Committee or any other person or entity to invoke the "equities of the case" exception in (or any other rights or claims under) section 552(b) of the Bankruptcy Code and to condition the Debtors' consensual use of Cash Collateral beyond the Sixth Interim Period upon obtaining a 506(c) Waiver and a waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code.

7.5     Debtors' Reservation of Rights.  Notwithstanding anything to the contrary in this Sixth Interim Order, the Debtors may seek authority to use the Cash Collateral without the consent of the Prepetition Secured Parties, and the Prepetition Secured Parties reserve all rights to contest such request.

7.6     U.S. Trustee's Reservation of Rights. The U.S. Trustee expressly reserves all rights, claims, arguments, defenses, and remedies with respect to the Motion, this Sixth Interim Order or other related documents filed in support of the Motion.  The U.S. Trustee further reserves his right to (a) file, amend or supplement any objection to the Motion and (b) be heard before the Court with respect to the Motion, and to raise additional arguments or objections in connection

4890-2874-3098.2

therewith.

    7.7    <u>Binding Effect</u>.

    a.    All of the provisions of this Sixth Interim Order and any and all rights, remedies, privileges, immunities and benefits in favor of the Prepetition Secured Parties set forth herein, including, without limitation, the parties' acknowledgements, stipulations and agreements in Section E of this Sixth Interim Order, subject to Section 6.1 hereof (without each of which the Prepetition Secured Parties would not have consented to the use of Cash Collateral provided for hereunder) provided or acknowledged in this Sixth Interim Order, and any actions taken pursuant thereto, shall: be effective and enforceable effective as of the Petition Date immediately upon entry of this Sixth Interim Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6006(d), 7062 and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure; continue in full force and effect; and survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan converting one or more of these Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing one or more of these Chapter 11 Cases, approving any sale of any or all of the Prepetition Collateral or vacating, terminating, reconsidering, revoking or otherwise modifying this Sixth Interim Order or any provision hereof.

    b.    Nothing in these Chapter 11 Cases may impair the Adequate Protection Claims or the Prepetition Secured Parties' liens on and security interests in the Prepetition Collateral, respectively, and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Sixth Interim Order, all of which shall continue in full force and effect notwithstanding such dismissal until the Prepetition Obligations are indefeasibly paid and satisfied

49

4890-2874-3098.2

in full in cash. Notwithstanding any such dismissal, this Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this Sixth Interim Order.

c.      Except as set forth in this Sixth Interim Order, in the event this Court modifies, reverses, vacates, or stays any of the provisions of this Sixth Interim Order, such modifications, reversals, vacatur, or stays shall not affect the validity, priority or enforceability of the Adequate Protection Liens and the Adequate Protection Claims. All such liens, security interests, claims, and other benefits shall be governed in all respects by the original provisions of this Sixth Interim Order, and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted hereto, including the liens and priorities granted herein.

d.      This Sixth Interim Order shall be binding upon the Debtors, all parties in interest in these Chapter 11 Cases and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in these Chapter 11 Cases or any subsequently converted bankruptcy case(s) of any Debtor and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law. This Sixth Interim Order shall also inure to the benefit of the Debtors, Prepetition Secured Parties, and each of their respective successors and assigns.

7.8    Discharge. The obligations of the Debtors with respect to adequate protection hereunder, including granting the Adequate Protection Liens and the Adequate Protection Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or the Prepetition Secured Parties have otherwise agreed

50

in writing.

7.9     Section 506(c) Waiver. The Debtors have agreed that as a condition to using Cash Collateral as provided in this Sixth Interim Order, subject to the entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the Prepetition Secured Parties upon the Prepetition Collateral) shall be charged against any of the Prepetition Secured Parties, or any of the Prepetition Obligations or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, in each case without the prior express written consent of the affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or the approval of any budget hereunder).

7.10     Section 552(b) Waiver. The Debtors have agreed that as a condition to using Cash Collateral as provided in this Sixth Interim Order, subject to the entry of the Final Order, the Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and that the "equities of the case" exception under section 552(b) shall not apply to the Prepetition Secured Parties or the Prepetition Obligations.  The Committee and the Prepetition Secured Parties reserve all rights and defenses under section 552(b) of the Bankruptcy Code (including, without limitation, as to the disbursements included in the Approved Budget in the event that there is a final order granting relief under section 552(b) of the Bankruptcy Code).

7.11     Marshaling/Application of Proceeds. The Prepetition Secured Parties shall not be

4890-2874-3098.2

subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral. Notwithstanding the foregoing, all rights of Consigli Construction Co., Inc., with respect to this Section 7.11 of this Sixth Interim Order are reserved, and the *Objection of Consigli Construction Co., Inc. to Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Dkt. No. 144] shall be deemed filed in opposition to entry of any order, whether by contested matter or adversary proceeding, seeking to invoke the first sentence of this Section 7.11, including, but not limited to, with respect to the Final Order or any other order regarding further use of Cash Collateral, any proposed sale of Prepetition Collateral or confirmation of any chapter 11 plan, in each case that does not include a provision for the application of proceeds that is subject to marshaling in a manner consistent with such objection. Any proceeds of Prepetition Collateral actually received by the Prepetition Secured Parties shall be applied in accordance with the Prepetition Loan Documents.

7.12    Relief Subject to Further Order. Nothing in this Sixth Interim Order shall be deemed to grant or approve (a) a waiver of the Debtors' ability to surcharge against any Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code; (b) any right of any party other than the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code with respect to any of the Prepetition Secured Parties; (c) the application of the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral; or (d) a lien on or super priority claim against the proceeds of the Avoidance Actions.

7.13    Limits on Lender Liability.

a.    Solely as a result of authorizing the use of Cash Collateral or in exercising

52

any rights or remedies as and when permitted pursuant to this Sixth Interim Order, subject to the entry of the Final Order, the Prepetition Secured Parties, shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors, so long as the such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors. Furthermore, nothing in this Sixth Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon, subject to the entry of the Final Order, any of the Prepetition Secured Parties, of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

b.      **As to the United States, its agencies, departments, or agents, nothing in this Sixth Interim Order shall discharge, release, or otherwise preclude any valid right of setoff or recoupment that any such entity may have**.

7.14    Reservation of Rights with Respect to Release. The terms, conditions, and provisions of this Sixth Interim Order are in addition to and without prejudice to the rights of each Prepetition Secured Party to seek a release of the type and scope set forth in the First Interim Order (see, e.g., paragraph E(i)(vi) and Section 7.14 thereof) and the Second Interim Order (see, e.g., paragraph E(i)(vi) and Section 7.14 thereof).

4890-2874-3098.2

7.15    Survival. The provisions of this Sixth Interim Order, the validity, priority, and enforceability of the Adequate Protection Liens and the Adequate Protection Claims, and any actions taken pursuant hereto shall survive and shall not be modified, impaired, or discharged by entry of any order that may be entered (a) confirming any plan of reorganization in any of these Chapter 11 Cases, (b) converting any or all of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Chapter 11 Cases, (d) terminating the joint administration of these Chapter 11 Cases or any other act or omission, (e) approving the sale of any Prepetition Collateral pursuant to section 363(b) of the Bankruptcy Code, or (f) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases. The terms and provisions of this Sixth Interim Order, including the claims, liens, security interests, and other protections granted to the Prepetition Secured Parties pursuant to this Sixth Interim Order, notwithstanding the entry of any such order, shall continue in any of these Chapter 11 Cases, following the dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Sixth Interim Order until all of the adequate protection obligations owed to the Prepetition Secured Parties provided for in this Sixth Interim Order and under the Prepetition Loan Documents have been indefeasibly paid in full in cash.

7.16    Sale and Credit Bidding. In connection with any sale process or sale authorized by the Court, subject to the rights preserved in Section 6.1 hereof with respect to the Prepetition Obligations, each of the Prepetition Secured Parties, or any assignee or designee of the foregoing, shall have the right to credit bid any or all of the obligations outstanding under their respective facility in connection with any disposition of property of the Estates subject to the provisions of section 363(k) of the Bankruptcy Code, and neither the Debtors nor any Prepetition Secured Party shall oppose such right.

7.17    Proofs of Claim. None of the Prepetition Secured Parties shall be required to file proofs of claim in any of these Chapter 11 Cases or subsequent cases of any of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' Stipulations in this Sixth Interim Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s). Notwithstanding the foregoing, the Master Trustee is hereby authorized and entitled, in its discretion, but not required, to file (and amend and/or supplement, as applicable) a master proof of claim in the Debtors' lead case (and such master proof of claim shall also be deemed filed in each of the Debtors' individual Cases) for any claims of the applicable Prepetition Secured Parties arising from the Prepetition Loan Documents or in respect of the Prepetition Obligations; provided, however, that nothing in this Sixth Interim Order shall waive the right of any Prepetition Secured Party to file its own proof of claim against any of the Debtors.

7.18    No Third Party Rights. Except as specifically provided for herein, this Sixth Interim Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

7.19    Payments Free and Clear. Subject to Section 6.1, any and all payments or proceeds remitted to the Prepetition Secured Parties, pursuant to the provisions of this Sixth Interim Order or any subsequent order of this Court, shall, subject to the terms of this Section 7.19, be irrevocable, received free and clear of any claims, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly, or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve Out in all respects.

7.20    Headings. Section headings used herein are for convenience only and are not to

affect the construction of or to be taken into consideration in interpreting this Sixth Interim Order.

7.21    Bankruptcy Rules. The requirements of Bankruptcy Rules 4001 and 6003, in each case to the extent applicable, are satisfied by the contents of the Motion.

7.22    General Authorization. The Debtors and the Prepetition Secured Parties are authorized to take any and all actions necessary to effectuate the relief granted in this Sixth Interim Order.

7.23    Retention of Exclusive Jurisdiction. This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Sixth Interim Order.

7.24    Final Hearing and Response Dates. The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(b)(2) will be held on June 5, 2024, at 2:00 p.m., prevailing Eastern Time. The hearing will be conducted via Zoom Video Conference. Counsel, parties, and members of the public who wish to participate through Zoom/telephone should email the Courtroom Clerk at stephen_reynolds@mab.uscourts.gov requesting remote participation, providing their name, the party they represent, and whether or not they will be an active participant in the hearings or only observing. Participation by video is permitted by parties in interest (parties in interest include the Debtor, the U.S. Trustee, creditors, equity security holders, members of official committees (and each of their counsel and other advisors)), court personnel, and witnesses (collectively, "Permitted Parties") with respect to the matter in which they have an interest and other matters that may be on the docket on the same hearing day at a time near the time scheduled for their matter. Members of the general public who are not Permitted Parties, including the press, may access the hearing exclusively by audio.

56

4890-2874-3098.2

The Debtors shall promptly mail copies of the Sixth Interim Order to the Notice Parties, and to any other party that has filed a request for notices with this Court and to the Committee and its counsel.  The Debtors may serve the Motion and this Sixth Interim Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at the Debtors' claims and noticing agent's website: https://cases.stretto.com/heywood, and such notice is deemed good and sufficient, and no further notice need be given. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon the Notice Parties and shall be filed with the Clerk of the Court, in each case, to allow actual receipt of the foregoing no later than 4:00 p.m. (prevailing Eastern Time), on May 29, 2024.

Dated: May 1, 2024

_____

The Honorable Elizabeth D. Katz
United States Bankruptcy Judge

4890-2874-3098.2

**EXHIBIT 1**

4890-2874-3098.2

**Heywood Healthcare** (All Debtors)
Sixth Interim Budget
For the Period Covering 4/29/24 through 6/7/24
Delivered 4/29/24

**iiii Heywood Healthcare**
ATHOL HOSPITAL | HEYWOOD HOSPITAL | HEYWOOD MEDICAL GROUP | QUABBIN RETREAT

| ($ in 000's, Weeks Ended) | Forecast 5/3/24 | Forecast 5/10/24 | Forecast 5/17/24 | Forecast 5/24/24 | Forecast 5/31/24 | Forecast 6/7/24 | Total |
|---|---|---|---|---|---|---|---|
| **All Debtors Combined** | | | | | | | |
| _Operating Receipts_ | | | | | | | |
| A/R Receipts | $ 3,477 | $ 4,025 | $ 3,526 | $ 4,027 | $ 2,616 | $ 3,780 | $ 21,452 |
| Intercompany | 175 | 175 | 175 | 175 | 175 | 175 | 1,050 |
| Other Revenue | 460 | 479 | 471 | 479 | 460 | 479 | 2,827 |
| _Non-Operating Receipts_ | 41 | 13 | 13 | 13 | 13 | 41 | 132 |
| _State Grant_ | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Receipts** | **4,152** | **4,692** | **4,185** | **4,694** | **3,264** | **4,475** | **25,462** |
| | | | | | | | |
| _Operating Disbursements_ | | | | | | | |
| Payroll | $ (2,386) | $ (2,406) | $ (2,406) | $ (2,406) | $ (3,253) | $ (2,406) | $ (15,262) |
| Physician Incentives | 0 | 0 | 0 | 0 | (850) | 0 | (850) |
| Accounts Payable | (1,650) | (1,650) | (1,650) | (1,650) | (1,650) | (1,650) | (9,900) |
| Ordinary Course Professionals | 0 | 0 | (75) | 0 | 0 | 0 | (75) |
| Lease Payments | 0 | (165) | (9) | (2) | 0 | 0 | (176) |
| Intercompany | (181) | (181) | (181) | (181) | (181) | (181) | (1,086) |
| Insurance | (550) | (205) | (405) | (205) | (405) | (350) | (2,120) |
| Health Safety Net | (244) | 0 | 0 | 0 | (244) | 0 | (489) |
| Other Expenses | (17) | (61) | (153) | (61) | 0 | (78) | (369) |
| _Non-Operating Disbursements_ | | | | | | | |
| _Non-Operating Entities_ | (13) | (66) | (13) | (13) | (13) | (66) | (183) |
| _Bankruptcy Costs_ | | | | | | | |
| Estate Professional Fees | (765) | 0 | (120) | 0 | 0 | (715) | (1,600) |
| Claims Agent (Stretto) | (15) | 0 | 0 | 0 | 0 | (15) | (30) |
| Restructuring Counsel (Foley & Lardner LLP) | (400) | 0 | 0 | 0 | 0 | (400) | (800) |
| Local and Conflicts Counsel (Flick Law Group) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Litigation Counsel (TBD) | 0 | 0 | (100) | 0 | 0 | 0 | (100) |
| Patient Care Ombudsman | 0 | 0 | (20) | 0 | 0 | 0 | (20) |
| UCC Financial Advisor (FTI Consulting) | (100) | 0 | 0 | 0 | 0 | (100) | (200) |
| UCC Counsel (Dentons US LLP) | (200) | 0 | 0 | 0 | 0 | (150) | (350) |
| Investment Banker (Houlihan Lokey) | (50) | 0 | 0 | 0 | 0 | (50) | (100) |
| US Trustee Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Bankruptcy Support Services (Huron Consulting Group) | 0 | 0 | (300) | 0 | 0 | 0 | (300) |
| Adequate Protection Interest and Fees | (113) | 0 | 0 | 0 | (113) | 0 | (226) |
| Adequate Protection Professionals | 0 | 0 | (350) | 0 | 0 | 0 | (350) |
| Utility Deposit | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DIP Due Diligence Deposit | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Disbursements** | **(5,919)** | **(4,733)** | **(5,662)** | **(4,518)** | **(5,860)** | **(5,446)** | **(32,138)** |
| | | | | | | | |
| **Net Activity** | $ (1,767) | $ (42) | $ (1,477) | $ 176 | $ (2,596) | $ (970) | $ (6,676) |
| | | | | | | | |
| **Beginning Balance** | $ 17,178 | $ 15,411 | $ 15,369 | $ 13,892 | $ 14,069 | $ 11,473 | $ 17,178 |
| Beginning Balance (State Grant) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Beginning Balance (Cash Collateral) | 17,178 | 15,411 | 15,369 | 13,892 | 14,069 | 11,473 | 17,178 |
| **Ending Balance** | $ 15,411 | $ 15,369 | $ 13,892 | $ 14,069 | $ 11,473 | $ 10,502 | $ 10,502 |
| Ending Balance (State Grant) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ending Balance (Cash Collateral) | 15,411 | 15,369 | 13,892 | 14,069 | 11,473 | 10,502 | 10,502 |