**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

In re:

HEYWOOD HEALTHCARE, INC.
*et al.*,[1]

　　　　　Debtors

Chapter 11
Case No. 23-40817-EDK
(Jointly Administered)

**THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS' LIMITED OBJECTION TO THE PROPOSED ORDER MODIFYING**
**THE SIXTH INTERIM CASH COLLATERAL ORDER**

The Official Committee of Unsecured Creditors of Heywood Healthcare, Inc., *et al*., (the "Committee"), by and through its undersigned counsel, hereby submits this limited objection ("Objection") to the proposed interim cash collateral order [Dkt. No. 775] (the "Proposed Order"), which would modify the pending sixth interim cash collateral order [Dkt. No. 717] (the "Sixth Interim Order"), and which was filed the Debtors[2] on June 4, 2024, one day prior to a hearing scheduled on the matter.

The Committee incorporates herein by reference its previous objection [Dkt. No. 330] to the *Motion of Debtors for Interim and Final Orders (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Docket No. 14] (the "Cash Collateral Motion"), and, in further support

---

[1]　　The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal identification number are: Heywood Healthcare, Inc. (0658); the Henry Heywood Memorial Hospital (3581); Athol Memorial Hospital (6583); Heywood Medical Group, Inc. (3589); Athol Memorial Hospital NMTC Holdings, Inc., (2189); Quabbin Healthcare, Inc. (7153); and Heywood Realty Corporation (7447).

[2]　　Capitalized terms not defined herein shall have the meaning ascribed to them in the Proposed Order.

1

of this Objection, states as follows:

## PRELIMINARY STATEMENT

1.      Fundamentally, the Committee does not object to the Debtors' continued use of cash collateral on appropriate terms.  In fact, throughout these cases, the Committee has sought to resolve all concerns without the need for Court adjudication.  Here, however, there are two provisions contained in the Proposed Order that are objectionable and which should be removed.

2.      First, the Debtors' request to continue to pay interest and professional fees to the Prepetition Secured Parties is improper in view of recent filings demonstrating that the Prepetition Secured Parties are undersecured.  Undersecured creditors are not entitled to post-petition interest or attorneys' fees under section 506(b) of the Bankruptcy Code and other applicable law. Moreover, there is no basis under the circumstances for any further adequate protection being provided to the Prepetition Secured Parties because there is no risk their collateral has diminished or will diminish in value; to the contrary, the Debtors' cash position has improved significantly.[3] Thus, the Prepetition Secured Parties are more than adequately protected based upon the build-up in cash throughout the cases.

3.      Second, the Committee objects to the last-minute inclusion of language that seeks to lock-up the plan process in favor of the Prepetition Secured Parties by conditioning consensual cash collateral usage on the Prepetition Secured Parties' consent to a plan that must include acceptable treatment not only of Prepetition Obligations but also Adequate Protection Payments. At bottom, the Proposed Order in its current form, especially when read together with the recently filed Proposed Plan (defined below), improperly provides the Prepetition Secured Parties with

---

[3]      Indeed, the projections filed with the Proposed Order reflect a starting cash balance of $16.351 million for the week ending June 14, 2024, whereas the Debtors' cash balance on the Petition Date was $5.1 million.  *See* Initial Approved Budget filed by the Debtors [Dkt. No. 14-1].

23862464.v6

control over the Debtors, their estates, and the plan process.  The Proposed Plan, as drafted, renders moot all of the Committee's efforts to obtain derivative standing and then file the Committee Complaint (as defined below)—and the Proposed Order effectively binds the Debtors to the Prepetition Secured Parties' desired outcome.

4.      Therefore, while the Committee supports the Debtors' ability to continue to use cash collateral, the Committee requests that the Court decline to approve objectional provisions and to protect the Debtors and their estates from the Prepetition Secured Parties' efforts to repay themselves at the expense of all other parties—even at the risk of placing the Debtors in the position of being unable to fulfill their duties in this case.

## RELEVANT BACKGROUND

5.      On May 1, 2024, the Court entered the Sixth Interim Order, which authorized the use of cash collateral through and including June 7, 2024, and, as with similar prior orders, contained case-related milestones (collectively, the "Milestones").  The Milestones set deadlines for the Debtors to sell substantially all their assets or confirm of one or more chapter 11 plans.

6.      On May 2, 2024, the Debtors filed a notice that certain Milestones had been extended by agreement with the Prepetition Secured Parties.

7.      On May 10, 2024, the Debtors filed a further notice that certain Milestones had been extended by agreement with the Prepetition Secured Parties.

8.      On April 22, 2024, the Debtors' provided the Committee with an initial draft of a chapter 11 plan.

9.      On May 10, 2024, the Committee provided the Debtor with detailed comments to that draft.  Among other things, the Committee's comments expressly preserved the Committee's right to pursue both the Lien Challenge Complaint and the Non-Lien Challenge Complaint

3

(together, the "Committee Complaint"), each of which raised issues over which the Committee has been granted derivative standing to pursue, and each of which had been served on the Prepetition Secured Parties and the Debtors in conformity with prior cash collateral orders.

10. On May 20, 2024, the Committee provided the Debtors and the Prepetition Secured Parties a detailed settlement demand incorporating comments provided (as noted above) and outlining a framework for distribution of assets that would have been acceptable to the Committee. Neither the Debtors nor the Prepetition Secured Parties responded.

11. On May 28, 2024, the Debtors filed their chapter 11 plan [Dkt. No. 752] (the "Proposed Plan"). The next day, on May 29, 2024, the Debtors filed a disclosure statement (as amended) [Dkt. No. 756] (the "Disclosure Statement").

12. The Proposed Plan ignores many of the Committee's requests and notably releases *all* claims raised in the Committee Complaint, including claims to recharacterize and recover Adequate Protection Payments and Adequate Protection Professional Fees and Expenses. *See* Proposed Plan, Article IX.C ("For the avoidance of doubt, in no event shall the releases described in this Article IX.C be limited in any way whatsoever with respect to Causes of Action (including, without limitation, the Avoidance Actions and Committee Avoidance Actions) against the Prepetition Secured Parties or their Related Parties."). Upon information and belief, Adequate Protection Payments disbursed as of May 3, 2024, total approximately $977,000.00 and payments to Adequate Protection Professionals total $1.432 million.

13. Subsequently, on Friday May 31, 2024 (after the close of normal business hours), the Debtors provided the Committee with a draft version of the Proposed Order. A budget was not provided until the afternoon of Sunday June 2, 2024. The parties had discussions regarding the contents of the Proposed Order on Monday June 3, 2024, but the Proposed Order was not filed

4

23862464.v6

until June 4, 2024.

14.     With a few minor exceptions, the Proposed Order as filed is consistent with the document provided to the Committee on May 31, 2024.  In addition to requiring continued Adequate Protection Payments, including to Adequate Protection Professionals, the Proposed Order, through its amended and restated Section 5.1(o), provides for automatic termination of the Prepetition Secured Parties' consent to use cash collateral if the Debtors propose, support, or seek confirmation of a plan that is not conditioned upon "the payment of the Prepetition Obligations and the Debtors' obligations with respect to the Adequate Protection on terms and conditions reasonably acceptable to the Prepetition Secured Parties[.]"

15.     By its terms, the Proposed Order would (i) provide the Prepetition Secured Parties with the ability to moot the Committee Complaint (when the Committee Complaint raises legitimate grounds that could result in a significant recover to general unsecured creditors), (ii) lock up plan terms, and (iii) otherwise box-out the Committee through overreaching and unnecessary provisions.  These provisions should not be approved.

## LIMITED OBJECTION

### I.     Procedural Unfairness

16.     As a preliminary matter, the manner and timing by which the Proposed Order was presented to the Court has created procedural unfairness to the Committee and other parties in interest.  As noted above, the Debtors first provided the Committee with a copy of the Proposed Order on Friday May 31, 2024, after the close of business, and a budget was not provided until the afternoon of Sunday, June 2, 2024.  The parties had discussions regarding the contents of the Proposed Order on Monday June 3, 2024—but no document was filed on the docket, making the Debtors' actual request unclear.  The Debtors should have disclosed the relief they requested

5

substantially earlier than they did, which would have avoided the need for the Committee to file this Objection so close to the hearing and also provided the Court more time to consider the parties' positions.   Going forward, the Committee requests that the Proposed Order and future cash collateral orders deadlines for filing further requests for use of cash collateral, with any applicable budget, not less than seven days before a further hearing and provide parties with a reasonable time to object.[4]

## II.   Adequate Protection Payments and Adequate Protection Professional Fees and Expenses

17.     The Committee objects to continued Adequate Protection Payments to the Prepetition Secured Parties, including any further payments to Adequate Protection Professionals for two reasons.

18.     First, under binding law, only "oversecured" creditors are entitled to postpetition interest and loan-related fees and costs.  11 U.S.C. § 506(b); *United States Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 372-73 (1988) (post-petition interest can only be paid from an equity cushion without which there can be no postpetition interest paid); *Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1202 (1st Cir. 1995).  Here, the Prepetition Secured Parties are, by the Debtors' own admission, vastly undersecured.  Not only did the Debtors' marketing efforts fail to result in a binding offer on a going concern basis,[5] demonstrating *de minimis* going concern value of the Prepetition Secured Parties' alleged collateral, but the Debtors have now filed the Proposed Plan and the Disclosure Statement making clear that the Prepetition Secured Parties are, at best, undersecured.

---

[4]     It would also be easier to address requested amendments to pending orders with a redline against a prior order instead of interlineation or amendment, as in the Proposed Order.

[5]     The indications of interest that were received were indisputably below the value necessary for the Prepetition Secured Parties to have a fully secured claim.

23862464.v6

19. Second, regardless of the undersecured status of the Prepetition Secured Parties, there has not been a decline in property that might be cash collateral since the Petition Date that would justify further adequate protection. Pursuant to the most recent budget-to-actual report provided by the Debtors, the value of cash collateral as of the Petition Date was approximately $5.1 million,[6] whereas it was just under $18 million May 24, 2024 (and has increased at a rate higher than projected by the Debtors). Where there is no decline in the value of cycling collateral—such as accounts receivable—a lender is adequately protected by continued business operations and no additional adequate protection is needed. *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993).

20. The Committee readily concedes that paragraph 2.1(b) of the Sixth Interim Order (and prior cash collateral orders) includes a reservation of rights in the event that the Prepetition Secured Parties are under- or unsecured and provides for "any remedy (which may include reallocation as principal payments and/or clawbacks) in accordance with applicable law[.]" Sixth Interim Order, § 2.1(b) (parenthetical in original). However, remedies another day will never fully compensate the Debtors' estates due to the costs of enforcement, as well as the opportunity cost to the Debtors' that arises from their inability to use the cash in their operations now. Moreover, the Proposed Order functionally eviscerates this recovery remedy by making it a Termination Event for the Debtors' to propose, support, or seek to confirm a chapter 11 plan that does not include treatment of Adequate Protection Payments in a manner satisfactory to the Prepetition Secured Parties (as discussed more fully in the following section).

21. The fact that the Committee previously consented to Adequate Protection Payments under prior cash collateral orders (subject to the reservation to recharacterize and recovery of such

---

[6] *See* Initial Approved Budget filed by the Debtors [Dkt. No. 14-1].

23862464.v6

funds) further demonstrates that the Committee does not make the current objections lightly.  The

Committee's prior consent was given at a time when the undersecured position of the Prepetition

Secured Parties was not yet established.  The results of the Debtors' own failed sale process and

the terms of the Debtors' Proposed Plan now make it unavoidably clear that further Adequate

Protection Payments and Adequate Protection Professional Fees and Expenses are not appropriate

under applicable law.[7]

### III.    Plan Lock-Up Provision

22.     The Committee further objects to the Proposed Order because it provides the

Prepetition Secured Parties with improper control over the plan process.  Specifically, the Proposed

Order amends and restates section 5.1(o) of the Second Interim Order to add a plan "lock-up"

provision that would, if approved, lead to termination of consent to use cash collateral usage if the

Debtors propose, support, or seek confirmation of a plan that is not conditioned upon "the payment

of the Prepetition Obligations and the Debtors' obligations with respect to the Adequate Protection

on terms and conditions reasonably acceptable to the Prepetition Secured Parties[.]"  So, as noted

above, while binding law prohibits payment of postpetition interest and fees to under- and

unsecured creditors, the Proposed Order makes it a Termination Event for the Debtors to propose,

support, or seek confirmation of a chapter 11 plan that complies with this mandatory law.

23.     This structure constitutes both an improper overreach by the Prepetition Secured

Parties—with serious consequences—and an improper concession by the Debtors, as it strips the

Committee, other creditors, and the Debtors themselves of necessary negotiating leverage with the

Prepetition Secured Parties in the context of plan confirmation proceedings.  In effect, it puts the

Debtors in the position of trying to negotiate with the Sword of Damocles (in the form of a

---

[7]     Indeed, the Court may wish to consider ordering the Prepetition Secured Parties or Adequate Protection
Professionals to return all such funds to the estate to be held subject to further order.

23862464.v6

Termination Event) hanging above their heads.  A Termination Event could lead to disruptive emergency proceedings where the Debtors may need to seek authorization to use cash collateral on a nonconsensual basis at a delicate time in these chapter 11 cases, *i.e.* as the Debtors move to exit chapter 11 to avoid further depletion of cash from restructuring costs and Adequate Protection Payments.[8]  This, in turn, creates a circumstance where the Debtors may no longer be able to fulfill their fiduciary duties to all creditors in these chapter 11 cases by virtue of their inability to withstand what is obviously significant pressure from the Prepetition Secured Parties, which has resulted in the filing of a plan that obviously does not comply with the Bankruptcy Code (as noted below) and is contrary to this Court's prior orders conferring derivative standing on the Committee to bring claims alleged in the Committee Complaint.

## IV.    The Milestones Remain Unworkable

24.    The Committee has shared with the Debtors that the amended Milestones are unworkable and present significant scheduling difficulties.[9]  There are a number of very significant issues with the Proposed Plan and Disclosure Statement that make approval in their present form highly unlikely—and which destine this case for costly contested plan confirmation proceedings unless the grip of the Prepetition Secured Parties can be loosened through the Court's assistance.

25.    For example:

- The Disclosure Statement fails to disclose in any meaningful way that the Plan would effectuate a consolidation of estates for distributive purposes without explaining to creditors of the Debtors' various estates what alternative recoveries could be under separate plans and why consolidating claims and assets from different estates for distributive purposes is better than the alternative.

---

[8]    Certainly this is a risk resulting from this Objection – but it is better to know now what the future holds now rather than after the passage of more time.

[9]    In addition to issues with the milestones, July 12, 2024, as a termination date for use of cash collateral is problematic.  Many of the professionals in this case will be presenting at the American Bankruptcy Institute's Northeast Conference, scheduled for July 8 through July 10, 2024, and it is likely many other professionals involved in this case will be attending that same conference.  This would make scheduling a contested hearing that week difficult.  This has been communicated to the Debtors.

9

- The Disclosure Statement fails to describe or adequately disclose the nature of the Committee Avoidance Action and potential benefits from such litigation.

- The Plan is patently unconfirmable for a number of reasons, including: (1) it releases the Committee Avoidance Action (an asset of significant value) without consent from the Committee and without demonstrating that such release is in the best interest of creditors and the estate; and (2) it provides a treatment to the Prepetition Secured Parties that is not permitted under binding law.

- The Debtors face significant hurdles demonstrating feasibility of their Proposed Plan or that the Debtors are viable businesses that will not need further rehabilitation or liquidation proceedings.  Plan feasibility and the Debtors' very viability are dependent on future infusions of cash from the Commonwealth of Massachusetts, which, upon information and belief, have not been approved by the General Assembly and are subject to political largesse.

- There are a number of different assets that are unequivocally unencumbered but which are not properly disclosed or treated in the Proposed Plan and Disclosure Statement.

26. This Objection is not intended to serve as or substitute for objections to the Disclosure Statement or Proposed Plan.  Rather, the Committee seeks to preview the foregoing issues for the Court so that there can be a realistic appraisal of issues likely to be presented when considering the appropriateness of the proposed milestones—which are, clearly, unworkable given the substantial issues that will be raised during the plan confirmation process.

## CONCLUSION

Based on the foregoing, the Committee respectfully requests that the Court (A) authorize the use of cash collateral on terms that address the Committee's objections and (B) provide such further and additional relief as the Court deems proper under law and equity.

Dated: June 4, 2024

*/s/ Andrew C. Helman*
Andrew Helman
Kyle D. Smith (admitted *pro hac vice*)
Dentons Bingham Greenebaum LLP
One City Center, Suite 11100
Portland, ME  04101

23862464.v6

Phone: (207) 553-8368
Email: andrew.helman@dentons.com
Email: kyle.d.smith@dentons.com

      and

Sam J. Alberts (federal admission
forthcoming, admitted *pro hac vice*)
Dentons US LLP
One Beacon Street, Suite 25300
Boston, Massachusetts  02108
Phone: (207) 619-0919
Email: sam.alberts@dentons.com

      and

Lauren M. Macksoud (admitted *pro hac vice*)
Dentons US LLP
1221 Avenue of the Americas
Ste. 25th Floor
New York, NY 10020
Phone: (212) 768-5347
Email: lauren.macksoud@dentons.com

*Counsel to the Official Committee of Unsecured Creditors of Heywood Healthcare, Inc., et al.*

11

23862464.v6

## CERTIFICATE OF SERVICE

I, Andrew C. Helman, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Dated: June 4, 2024                  /s/ Andrew C. Helman
                                     Andrew C. Helman

12

23862464.v6