**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>HEYWOOD HEALTHCARE, INC.<br>*et al.*[1]<br>        Debtors | Chapter 11<br>Case No. 23-40817-EDK<br>(Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO THE DEBTORS' MOTION FOR ORDER
APPROVING THE FIRST AMENDMENT TO THE RECOUPMENT
AND FORBEARANCE AGREEMENT WITH THE COMMONWEALTH**

The Official Committee of Unsecured Creditors of Heywood Healthcare, Inc., *et al.*, (the "Committee"), hereby submits this objection (this "Objection") to entry of an order regarding the *Debtors' Motion for Order Approving the First Amendment to the Recoupment and Forbearance Agreement with the Commonwealth* [Dkt. No. 810] (the "Motion"). In support of this objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.     The convoluted path of the Motion and the Forbearance Agreement[2] is a perfect representation of the lack of progress in these chapter 11 cases. The Debtors filed their original *Motion for Order Approving the Recoupment and Forbearance Agreement with the Commonwealth* [Dkt. No. 353] (the "Original Motion") several months ago and sought final resolution on an emergency basis. In response to the Debtors' professed emergency, the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal identification number are: Heywood Healthcare, Inc. (0658); the Henry Heywood Memorial Hospital (3581); Athol Memorial Hospital (6583); Heywood Medical Group, Inc. (3589); Athol Memorial Hospital NMTC Holdings, Inc., (2189); Quabbin Healthcare, Inc. (7153); and Heywood Realty Corporation (7447).

[2]     Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

1

23937061.v3

Committee quickly raised questions regarding basic foundation of the Original Motion and the necessity for relief. Rather than engage with the Committee's inquiries, the Debtors limped forward on an interim-to-interim basis[3] and permitted the Commonwealth to retain payments due to the Debtors for months. Now, after several months have passed, more than $2.1 million of funds that might have otherwise been paid to the Debtors has been retained by the Commonwealth, to whom the Debtors are beholden for ongoing financial support. The Debtors meanwhile profess to be facing a financial ledge in early August that, supposedly, necessitates the confirmation of a woefully deficient plan of reorganization.

2.     Both the Original Motion (which has not been granted on a final basis) and the present Motion remain pending. The Committee's basic factual questions regarding the Original Motion and the present Motion, which the Committee previewed in responses filed in December and again earlier this month [Dkt Nos. 363 & 784], remain unanswered by the Debtors and the Commonwealth. The Committee thus believes that the Debtors have failed to establish the relief sought by the Motion is warranted, and hereby objects.[4] The Debtors should be required to carry their burden of proof, including demonstrating that the Commonwealth's retention of funds are in the nature of recoupment rather than any other form of offsetting mutual obligations. Further, to the extent that the Debtors cannot meet this burden, then the funds that have been retained by the Commonwealth in connection with the prior interim orders should be turned over to the Debtors' estates to support ongoing operations and for the benefit of creditors.

---

[3]     Indeed, the Debtors continue to seek to do so, having late last night filed emergency motions to further continue final hearings on the Motion and Original Motion, without informing the Committee of their intention, and less than a full business day prior to the Court's deadline to respond to the Motion. [Dkt. Nos. 843 & 845]. The Debtors' tact has led parties to wastefully expend their attention and estate resources throughout these cases.

[4]     To be clear, the Committee believes that no further relief – interim or final – should be granted on either the Original Motion or the Motion, and that both motions should be denied.

23937061.v3

**BACKGROUND**

3.     The Debtors' filed the Original Motion, seeking an emergency approval of the Forbearance Agreement, on December 26, 2023.

4.     On December 28, 2023, in response to inquiries and informal objections raised by the Committee, the Debtors filed the *Notice of Filing of Revised Assented-To Order Approving the Forbearance and Recoupment Agreement* [Dkt. No. 362].

5.     The same day, the Committee filed its *Response and Reservation of Rights of the Official Committee of Unsecured Creditors to the Debtors' Motion for Order Approving Recoupment and Forbearance Agreement with the Commonwealth* [Dkt. No. 363], which noted that Committee lacked sufficient information to determine whether the relief sought by the Original Motion was warranted (particularly on emergency basis), but that the Committee did not object to interim relief to the extent necessary to prevent harm to the estates and to permit the Debtors and the Commonwealth to provide additional information to the Committee.

6.     The Court entered an order [Dkt. No. 364] granting the Original Motion on an interim basis only on December 28, 2023.

7.     To date, the Debtors have sought extensions of interim relief on the Original Motion on five separate occasions.  This has included: January 19 [Dkt. 462]; February 14 [Dkt. No. 539]; March 14 [Dkt. No. 591]; April 16 [Dkt. No. 663]; and June 10 [Dkt. No. 789].

8.     The Committee assented to these extensions and during this time continued, on an informal basis, to request information from the Debtors that would establish the basis for the relief and permit the Committee to determine whether to oppose or support relief on the Original Motion on a final basis.

9.     Further, several months ago counsel to the Committee met with the Debtors and a representative of the Commonwealth regarding the Original Motion.  The Committee raised its

3

23937061.v3

concerns regarding the Original Motion and requested that the Debtors and the Commonwealth provide additional information to validate the assertion that the basis for the Commonwealth's alleged recoupment is recovery of fee-for-service advances rather than, for example, supplemental payments that may not be related to fee-for-service revenues. To date, the Committee has not received any material information from either the Debtors or the Commonwealth, except for a copy of the so-called "Advance Agreement."[5]

10.     On June 7, 2024, the Committee filed a Limited Objection to the Original Motion, which noted that – given the Debtors' representations that it had reached a final resolution with the Commonwealth to prevent further recoupment – that further relief on the Original Motion was unnecessary. Additionally, the Committee again reiterated that it lacked sufficient information to determine whether to support or oppose the Original Motion.

11.     On June 10, 2024, the Debtors filed a fifth motion seeking to extend interim relief on the Original Motion.

12.     On June 13, 2024, the Debtors filed the present Motion.

### **OBJECTION**

13.     The Debtors seek approval of the Forbearance Agreement Amendment[6] pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Rules"). It is not clear to the Committee that the Motion satisfies the requirements for approval under Rule 9019, or even that approval under Rule 9019 is required. Further, despite representations that the Commonwealth's

---

[5]     After filing the Original Motion, the Debtors shared with the Committee the so-called "Advance Agreement." Suffice to say, this correspondence similarly does not clarify the source of the Advance. The "agreement" appears to merely be an email from MassHealth memorializing payment of the Advance.

[6]     Presumably, the Debtors also seek approval of the original Forbearance Agreement on a final basis, but the Motion to not expressly request so. It is unclear to the Committee whether the Debtors continue to rely on the Original Motion for final approval of the Forbearance Agreement, or whether the present Motion supplants the Original Motion. The Committee did file an objection to the Original Motion [Dkt. No. 784] and intends for this Objection to supplement that limited objection and provide additional bases justifying denial of the Original Motion.

4

23937061.v3

only condition to forbear from further recoupment is entry of an order approving the Forbearance

Agreement Amendment (*Motion*, ¶ 12), the Forbearance Agreement grants the Commonwealth

an administrative claim pursuant to section 503(b) of the Bankruptcy Code in the full amount of

the Advance less amounts retained by the Commonwealth already.  The Motion does not

adequately justify (or even address) the need to grant the Commonwealth an administrative claim,

and the Committee objects to this relief.

## I.  The Motion Does Not Adequately Explain the Commonwealth's Supposed Recoupment Rights.

14.  At bottom, the Committee lacks information that demonstrates that the relief

sought is necessary, justified by the facts and circumstances these cases, or beneficial the Debtors'

estates.  The Committee first learned of an agreement that would permit the Commonwealth to

withhold funds to recover the Advance on or about December 14, 2023.  Committee counsel

requested additional information from the Debtors regarding the Advance on December 15, 2023,

including (but not limited to): (i) the source of the Advance, including identification of the

Commonwealth fund or program the Advance was paid from; (ii) identification of the statutory

basis for payment of the Advance; (iii) identification of the funds from which the Commonwealth

sought to withhold payments to recover the Advance, including the statutory basis for

withholding; (iv) production of any written agreement evidencing the Advance; (v) production

of any request for recoupment made by the Commonwealth; and (vi) production any written

communication from the Commonwealth requesting recoupment.  The Committee made several

separate requests for information prior to the Debtors' filing of the Original Motion and have

continued to request additional information from the Debtors for several months since then.  The

Debtors have provided no meaningful or substantive response to the Committee's requests.[7]

---

[7]  Given that the Debtors had not been pressing for relief on a final basis with respect to the Original Motion, the Committee deferred formal discovery to conserve estate resources.

23937061.v3

15.     The Debtors assert that the Commonwealth would have begun withholding 100% payment of Heywood Hospital's claims for qualifying services on January 1, 2024 absent approval of the Forbearance Agreement.[8]  Now, despite the fact that Commonwealth has already ceased its 50% recoupment under Forbearance Agreement (which has never been finally approved by the Court), the unstated implication is that the Commonwealth will resume recouping 100% of payments due to the Debtors absent this Court's approval of the Forbearance Agreement Amendment.   That notion strains credulity.

16.     Crucially, it has not been demonstrated, either through the Motion or information otherwise shared with the Committee, that the Commonwealth actually possesses the legal right to recoup payments as asserted by the Debtors.   "Recoupment" is a technical term of art in bankruptcy.   Broadly speaking, when debtors and creditors owe mutual obligations they may be permitted, under certain circumstances, to offset those mutual obligations through either: (i) setoff or (ii) recoupment.   *See In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 3 (1st Cir. 2004) (describing distinction between setoff and recoupment); *see also Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (offsetting "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)).   Setoff and recoupment are respectively distinct forms of offsetting mutual obligations, with different rules regarding when and where they may apply.   *In re Holyoke Nursing Home, Inc.* 372 F.3d at 3 (1st Cir. 2004); *see also*, *In re Holyoke Nursing Home, Inc.*, 273 B.R. 305, 308 n. 4 (Bankr. D. Mass. 2002)

---

[8]     The Original Motion also represented that recoupment by the Commonwealth is permitted, but is not necessarily mandatory. *See Original Motion*, ¶ 3 "[U]nder the Advance Agreement, beginning on January 1, 2024, the Commonwealth is *entitled* to recoup 100% of the payable amount . . . ." (emphasis added).  Further, the so-called "Advance Agreement," which the Debtors have provided to the Committee, contains no indication that the Commonwealth *must* recoup funds owed to the Debtors.

6

(noting that Medicare regulations draw distinction between "offset" and "recoupment").

17.     As a relevant example, setoff is permitted in bankruptcy only when the mutual debts both arise prior to the commencement of a bankruptcy case. *In re Women's Tech. Inst., Inc.*, 200 B.R. 77, 81 (Bankr. D. Mass. 1996); *see also* 11 U.S.C. § 553. On the other hand, parties may recoup mutual debts even when debts are both prepetition and postpetition in nature. *In re Mohawk Indus., Inc.*, 82 B.R. 174, 177 (Bankr. D. Mass. 1987). Furthermore, setoff is barred by the automatic stay imposed by section 362(a)(7) of the Bankruptcy Code, meaning that creditors seeking to setoff mutual debts must seek relief from the automatic stay and demonstrate sufficient cause. *In re Women's Tech. Inst., Inc.*, 200 B.R. at 82 ("[B]y necessitating a motion for relief from the stay to effect a setoff," the Bankruptcy Code "creates a mechanism by which setoff . . . can be subject to an orderly examination."). On the other hand, the automatic stay does not apply to recoupment. *In re Holyoke Nursing Home, Inc.* 372 F.3d at 3 (1st Cir. 2004).

18.     "The pertinent distinction between a setoff and a recoupment is whether the debt owed the creditor . . . arose out of the '*same transaction*' as the debt the creditor owes the debtor." *Id*. (emphasis added). While the Debtors correctly state this in the Motion, they fail to note the import of the "same transaction" dividing line, nor attempt to demonstrate that the offsetting debts between Heywood Hospital and the Commonwealth indeed arose out of the same transaction.

19.      Due to the practical differences highlighted above, among many others, whether mutual debts are owed on account of the same transaction can be a highly contentious and litigated point in bankruptcy cases involving offsetting claims. Courts in some circuits apply a restrictive interpretation of the "same transaction" test, while others apply a more forgiving test. *Compare In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992) (describing application of the "so-called 'logical relationship' test" in the Ninth Circuit) *and  Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 147 (2d Cir. 2002) (Recoupment applies only where obligations arise out of

7

"'single integrated transaction' so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations."). Courts within the First Circuit, including bankruptcy courts in this district, appear to apply the more restrictive "single integrated transaction" test. *See, e.g.*, *In re In re Women's Tech. Inst., Inc.*, 200 B.R. at 81 (Bankr. D. Mass. 1996) ("both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations."); *In re Holyoke Nursing Home, Inc.*, 273 B.R. 305, 311 (Bankr. D. Mass. 2002) (quoting *In re Women's Tech. Inst., Inc.*); *In re Latini*, 334 B.R. 338, 344 (Bankr. D. Mass. 2005) (quoting *In re Holyoke Nursing Home, Inc.*); *In re DeLotto*, 2015 WL 6876775, at *5 (Bankr. D.R.I. Nov. 9, 2015) (same).

20.    Recoupment issues are frequent source of dispute in cases involving payments for Medicaid or Medicare. For example, the Third Circuit has held, in applying the single integrated transaction test, that recoupment in the Medicare context is even more restrictive than typical and may only be effectuated where offsetting claims arise in the same fiscal year. *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1080 (3d Cir. 1992); *but see In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 4 (1st Cir. 2004) (appearing to reject the Third Circuit's view). Further, the Ninth Circuit has held that states administering Medicaid programs may not recoup debts in the form of unpaid HQAF fees by withholding fee-for-service payments (of the type subject to the Forbearance Agreement in this case) because they are drawn from separate funding sources of the state. *In re Garden Reg'l Hosp. & Med. Ctr., Inc.*, 975 F.3d 926, 939 (9th Cir. 2020).

21.    The Motion does not provide enough information to permit the parties in interest or the Court to properly evaluate the relief sought by the Debtors. The Debtors assert, in conclusory fashion, that the Commonwealth is entitled to recoup 100% of the payable amounts to Heywood Hospital without demonstrating that the Commonwealth meets the legal

8

requirements for recoupment.  Most crucially, the Debtors do not disclose the source Advance funds, and whether the funds are of the same type as the funds the Commonwealth now seeks to withhold.[9]  Although this is not the only information the Committee requires in order to develop its position on the Motion, it is central to the Committee understanding whether the relief sought is necessary and appropriate.

22.     To be clear, the Committee does not highlight the distinctions between recoupment and setoff based on a desire to see these issues fought and litigated – far from it.  Indeed, the Committee shares in the Debtors' (and presumably the Commonwealth's) desires for the partnership between the Debtors and the Commonwealth to continue, and to minimize adverse impact on the Debtors and their estates as a result of the Commonwealth's exercise of offset rights, to the extent appropriate.  Indeed, this includes the Committee's desire to see the $2.1 million already retained by the Commonwealth released to the Debtors to improve their cash position for the duration of these cases and support the Debtors' exit from chapter 11 through a confirmed plan of reorganization.

## II.     The Debtors Do Not Justify the Need for Rule 9019 Approval, Nor the Necessity of Providing the Commonwealth with an Administrative Claim.

23.     Further, the Committee questions whether a controversy or claim exists that requires approval from the Court pursuant to Rule 9019.  As noted herein, equitable recoupment is not subject to the automatic stay, meaning that parties possessing recoupment rights may proceed without the need for relief from a bankruptcy court.  Presumably, if the Commonwealth

---

[9]     The Debtors merely disclose that the Advance was an upfront payment of funds "per various agreements" between the Debtors and the Commonwealth.  *Motion*, ¶ 2.  In the Original Motion, the Debtors disclosed that the Advance was paid pursuant to (i) Rate Year 2023 Acute Hospital Request for Applications and Contract; (ii) the Provider Contract; and/or (iii) "other agreements." *Original Motion*, ¶ 2.  This does not provide sufficient clarity of the source of funds or the statutory basis for the Advance.

23937061.v3

has a concrete right to recoup payments to the Debtors and a desire to do so then it would –

whether at 100% or 50%, or some other level – without a determination from the Court.  On the

other hand, if the Commonwealth does *not* have the right to recoup payments and instead only

possesses setoff rights then such rights are subject to the automatic stay and all effects that come

with it, regardless of whether the Motion is granted or not.[10]  The Motion thus appears to be an

effort to cloak a determination of the Commonwealth's purported recoupment rights in the

deferential business judgement standards of Rule 9019, and grant the Commonwealth with an

unnecessary section 503(b) claim in the process.  Without additional information, the Committee

urges the Court to tread cautiously an deny the relief sought by the Debtors.

24.    Finally, the primary benefit offered to the Commonwealth through the

Forbearance Agreement is an administrative expense under section 503(b) of the Bankruptcy

Code.  Without better understanding the applicable legal framework the Committee is unable to

understand why the Commonwealth requires administrative treatment (and originally required so

on an *emergency* basis) in exchange for forbearing to exercise its full offset rights.  There is no

indication in the Motion that, absent section 503(b) protection, the Commonwealth *must* recoup

100% of payments to the Debtors or that the Commonwealth otherwise lacks discretion.  The

Committee is left frankly puzzled by the dual assertions that the Commonwealth, on one hand,

steadfastly supports the Debtors' continued provision of healthcare services and, on the other

hand, is insistent that it will recoup all payments due and cripple the Debtors' reorganization

efforts and continued operations absent relief from this Court.

---

[10]    And, further, amounts recouped by the Commonwealth may be subject to avoidance and recovery, including, possibly, by a litigation trustee appointed pursuant to a confirmed plan, if it is proven that the Commonwealth lacks the legal basis for recoupment.

23937061.v3

## **CONCLUSION**

Based on the foregoing, the Committee respectfully requests that the Court's deny the

Motion, and grant such further and additional relief as the Court deems proper.

Dated: June 27, 2024

/s/ Andrew C. Helman
Andrew Helman (BBO# 679155)
Kyle D. Smith (admitted *pro hac vice*)
Dentons Bingham Greenebaum LLP
One City Center, Suite 11100
Portland, ME  04101
Phone: (207) 553-8368
Email: andrew.helman@dentons.com
Email: kyle.d.smith@dentons.com

and

Sam J. Alberts (admitted *pro hac vice*)
Dentons US LLP
One Beacon Street, Suite 25300
Boston, Massachusetts  02108
Phone: (202) 408-7004
Email: sam.alberts@dentons.com

and

Lauren M. Macksoud (admitted *pro hac vice*)
Dentons US LLP
1221 Avenue of the Americas
Ste. 25th Floor
New York, NY 10020
Phone: (212) 768-5347
Email: lauren.macksoud@dentons.com

*Counsel to the Official Committee of Unsecured
Creditors of Heywood Healthcare, Inc., et al.*

11

23937061.v3

## CERTIFICATE OF SERVICE

I, Andrew C. Helman, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document (with exhibits) to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Dated: June 27, 2024

*/s/ Andrew C. Helman*
Andrew C. Helman (BBO# 679155)
Dentons Bingham Greenebaum LLP
One City Center, Suite 11100
Portland, ME  04101
Phone: (207) 553-8368
Email: andrew.helman@dentons.com

23937061.v3