**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HEYWOOD HEALTHCARE, INC., *et al.*[1] | ) | Case No. 23-40817 (EDK) |
| | ) | |
| Debtors-in-Possession. | ) | (Jointly Administered) |
| | ) | |

**FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE MODIFIED
SECOND AMENDED PLAN OF REORGANIZATION OF HEYWOOD HEALTHCARE,
INC., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtors (the "Debtors") having:

a. commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on October 1, 2023 (the "Petition Date");[2]

b. continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on May 28, 2024, the *Notice of Filing of the Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 752], which plan, and related documents were subsequently amended;

d. filed, on May 29, 2024, the (i) *Notice of Filing of the Disclosure Statement Relating to the Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 753], which disclosure statement and related documents were subsequently amended; the (ii*) Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement, (II) Scheduling a Plan Confirmation Hearing, (III) Approving the Solicitation and Voting Procedures and Dates, Deadlines, and Notices Related Thereto, and (IV) Granting Related Relief* [Docket No. 754]; and the (iii) *Notice of Filing of First Amended Disclosure Statement Relating to the Plan of Reorganization of Heywood Healthcare, Inc., et*

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal identification number are: Heywood Healthcare, Inc. (0658); The Henry Heywood Memorial Hospital (3581); Athol Memorial Hospital (6583), Heywood Medical Group, Inc. (3589), Athol Memorial Hospital NMTC Holdings, Inc. (2189), Quabbin Healthcare, Inc. (7153) and Heywood Realty Corporation (7447).

[2] Capitalized terms used but not otherwise defined in this order (the "Confirmation Order") shall have the meanings ascribed to them in the *Modified Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1040-1] (the "Plan").

*al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 756], which disclosure statement and related documents were subsequently amended;

e. filed, on August 20, 2024, the (i) *Notice of Filing of the First Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 961], which plan and related documents were subsequently amended; the (ii) *Second Amended Disclosure Statement Relating to the First Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 962], which disclosure statement and related documents were subsequently amended; and the (iii) *Notice of Filing of Revised Proposed Order (I) Approving the Disclosure Statement, (II) Scheduling a Plan Confirmation Hearing, (III) Approving the Solicitation and Voting Procedures and Dates, Deadlines, and Notices Related Thereto, and (IV) Granting Related Relief* [Docket No. 964];

f. filed, on August 21, 2024, the (i) *Notice of Filing of the Modified First Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 965], which plan and related documents were subsequently amended; and the (ii) *Modified Second Amended Disclosure Statement Relating to the Modified First Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 966], which disclosure statement and related documents were subsequently amended;

g. filed, on August 23, 2024, the (i) *Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 977-1], which plan and related documents were subsequently amended; the (ii) *Third Amended Disclosure Statement Relating to the Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 980-1] (the "Disclosure Statement"); and the (iii) *Notice of Filing of Second Revised Proposed Order (I) Approving the Disclosure Statement, (II) Scheduling a Plan Confirmation Hearing, (III) Approving the Solicitation and Voting Procedures and Dates, Deadlines, and Notices Related Thereto, and (IV) Granting Related Relief* [Docket No. 981];

h. caused solicitation materials and notice of the deadline for objecting to confirmation of the Plan to be distributed by August 26, 2024, and continuing thereafter, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement Order (as defined herein), which order also approved, among other things, solicitation procedures (the "Solicitation Procedures") and related notices, forms, ballots, and master ballots, as evidenced by, among other things, the Certificate of Service, filed on August 30, 2024 [Docket No. 995];

i. filed, on September 26, 2024, the *Modified Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket #1040] (the "Plan");

j. filed, on September 10, 2024, the *Notice of (A) Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, (B) Cure Amounts, if Any, and (C) Related Procedures Contained Therewith* [Docket No. 997], which schedule and related documents were subsequently amended;

k. filed, on September 24, 2024, the *Notice of Amended Schedule of Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, and Cure Amounts, if Any* [Docket No. 1033];

l. filed, on September 27, 2024, the *Second Amended Schedule of Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, and Cure Amounts, If Any* [Docket #1052];

m. filed, on September 16, 2024, the *Notice of Filing of Plan Supplement for the Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1008], which included the following documents: (a) the New Organizational Documents; (b) the Form of Liquidating Trust Agreement; (c) the Identity of Liquidating Trustee; (d) the Schedule of Assumed Executory Contracts and Unexpired Leases; (e) the Form of New Continuing Covenant Agreement; (f) the Form of Superpriority Exit Facility Credit Agreement; (g) Schedule of Insurance Policies; (h) Avoidance Action Schedule; (i) Form of General Unsecured Creditor Note; (j) Form of Intercreditor Agreement; and (k) the Identity of New Board;

n. filed, on September 27, 2024, the *Notice of Filing of First Amended Plan Supplement for the Modified Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket #1051];

o. filed, on September 29, 2024, the *Notice of Filing of Second Amended Plan Supplement for the Modified Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket #1057];

p. filed, on September 26, 2024, the (i) *Debtors' (I) Memorandum of Law In Support of Confirmation of the Modified Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code and (II) Omnibus Reply to Objections Thereto* (the "Confirmation Brief"); the (ii) *Declaration of John Bujak, Chief Financial Officer of Heywood Healthcare, Inc., in Support of Confirmation of the Modified Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1042] (the "Bujak Declaration"); and the (iii) *Declaration of Brian Karpuk of Stretto, Inc., Regarding the Solicitation and*

*Tabulation of Ballots Cast in Connection with the Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1043] (the "Voting Declaration" and, together with the Bujak Declaration, the "Confirmation Declarations");

q. filed, on September 26, 2024, the *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Second Amended Plan of Reorganization of Heywood Healthcare, Inc., Et Al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1045]; and

r. filed, on September 29, 2024, the *Modified Proposed Findings of Fact, Conclusions of Law, and Order Confirming the Modified Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket #1054]; and

s. submitted, on September 30, 2024 further modified proposed *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Second Amended Plan of Reorganization of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code*.

and this Bankruptcy Court having:

a. entered an order authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b) [Docket No. 18];

b. entered the *Order (I) Approving the Third Amended Disclosure Statement, (II) Scheduling a Plan Confirmation Hearing, (III) Approving the Solicitation and Voting Procedures and Dates, Deadlines, and Notices Related Thereto, and (IV) Granting Related Relief* [Docket No. 984] (the "Disclosure Statement Order");

c. set September 24, 2024, at 4:00 p.m., prevailing Eastern Time, as the deadline for voting on the Plan;

d. set September 24, 2024, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Plan;

e. set September 30, 2024 at 9:00 a.m., prevailing Eastern time, as the date and time for a confirmation hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

f. reviewed the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Confirmation Declarations, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

g. held a confirmation hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, on September 30, 2024 at 9:00 a.m., prevailing Eastern time (the "Confirmation Hearing");

h. heard the statements, arguments, and objections made by counsel in respect of Confirmation;

i. considered all testimony, documents, filings, and other evidence admitted at Confirmation; and

j. overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein;

NOW, THEREFORE, the Bankruptcy Court, having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and having further found that the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor; hereby makes and issues the following Findings of Fact and Conclusions of Law and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

### A. Findings and Conclusions.

1. The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B. Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b) and 1334).**

2. The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Bankruptcy Court has jurisdiction to enter a Final Order determining that the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**C. Eligibility for Relief.**

3. The Debtors are entities eligible for relief under section 109 of the Bankruptcy Code.

**D. No Appointment of a Trustee or Examiner.**

4. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

**E. Appointment of the Committee.**

5. On October 20, 2023, the U.S. Trustee appointed the Committee to represent the interests of the unsecured creditors of the Debtors in the Chapter 11 Cases [Docket No. 127].

**F. Judicial Notice.**

6. The Court takes judicial notice of (and deems admitted into evidence for the Confirmation Hearing) the docket of the Chapter 11 Cases maintained by the Clerk of the Court for the Bankruptcy Court, including, without limitation, all pleadings and other documents filed (but not for the truth of the statements in such pleadings and documents), all orders entered, the Claims Register, all hearing transcripts, and all evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, including, but not limited to, the Confirmation Hearing.

**G. Confirmation of the Plan is in the Public Interest.**

7. The Debtors have stood independently for 118 years as a community-focused healthcare network in North Central Massachusetts, where they operate safety net hospitals and provide a wide range of essential medical and other healthcare services to the communities they serve. The Plan serves a vital public interest by ensuring continuity of care, especially for vulnerable populations treated by the Debtors' hospitals. Given the nature of the Debtors' business, confirmation of the Plan will allow the Debtors to continue to provide stable patient care to an underserved portion of the population most in need of health care services. Therefore, while Debtors' business judgment and their satisfaction of section 1129 of the Bankruptcy Code as set forth herein in themselves are sufficient to support confirmation of the Plan, the case for confirmation is overwhelming when the public interest is considered, including the Debtors' continued provision of stable patient care and stability for the Debtors' employees. Moreover, the alternative of disapproving confirmation of the Plan is contrary to the public interest.

**H. Notice and Transmittal of Solicitation Materials; Adequacy of Solicitation Notices.**

8. The Plan, the Disclosure Statement, the Disclosure Statement Order, the ballots for voting on the Plan (the "Ballots"), the Confirmation Hearing Notice (the form of which is identified in the Disclosure Statement Order), the Plan Supplement, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "Confirmation Materials") were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, with the Local Bankruptcy Rules for the United States Bankruptcy Court District of Massachusetts (the "Local Bankruptcy Rules"), with the procedures set forth in the Disclosure Statement Order, and with all other applicable rules, laws, and regulations. Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the

Debtors' Chapter 11 Cases. The transmittal and service of the Confirmation Materials complied with the approved Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable rules, laws, and regulations. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**I. <u>Voting.</u>**

9. On September 26, 2024, the Debtors filed the Voting Declaration with the Bankruptcy Court. As evidenced by the Voting Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Solicitation Procedures.

**J. <u>Good Faith Solicitation (11 U.S.C. § 1125(e)).</u>**

10. Based on the record before the Bankruptcy Court in the Chapter 11 Cases, (a) the Debtors, (b) the Committee, (c) the Prepetition Secured Parties, (d) with respect to each of the foregoing Entities in clauses (a) through (c), the manager, management company, or investment advisor of any of the foregoing, and each of such Entities' respective current and former Affiliates, predecessors, successors, assigns, subsidiaries, managed accounts or funds, and (e) with respect to each of the foregoing Entities (a) through (d), such Entities' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, independent contractors, management companies, fund advisors, advisory board members, partners, representatives, attorneys, accountants, financial advisors, investment bankers, consultants, agents, restructuring advisors, and other professionals, each in their capacity as such, have acted in "good faith" within the meaning of section 1125(e) of

the Bankruptcy Code and in compliance with the applicable provisions of the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan, their participation in the Chapter 11 Cases, and the activities described in section 1125 of the Bankruptcy Code and therefore are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**K. <u>Plan Supplement.</u>**

11. The filing and notice of the Plan Supplement were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required.

**L. <u>Modifications to the Plan.</u>**

12. Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement or continuation of solicitation described or set forth herein, including with respect to the Plan Documents (as defined herein), constitute technical changes or changes with respect to particular Claims made pursuant to the agreement of the Holders of such Claims and do not materially affect the treatment of any other Claims. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

13. This Confirmation Order contains modifications to the Plan that were made to reflect the definitive documentation of the Restructuring Transactions and certain stipulations made with respect to certain Holders of Claims and to address objections and informal comments

received from various parties in interest. Modifications to the Plan since the entry of the Disclosure Statement Order are consistent with the provisions of the Bankruptcy Code. The disclosure of any Plan modifications prior to or on the record at the Confirmation Hearing constitutes due and sufficient notice of any and all Plan modifications. The Plan as modified shall constitute the Plan submitted for Confirmation.

**M. Objections.**

14. To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved herein or as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits based on the record before this Bankruptcy Court.

**N. Burden of Proof.**

15. The Debtors, as the proponents of the Plan, have satisfied their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan. In addition, the Debtors have proven the elements of section 1129(a) and (b) by clear and convincing evidence.

**O. Bankruptcy Rule 3016.**

16. The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Plan and Disclosure Statement describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the Entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**P. Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

17. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

a. Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). As required by section 1123(a)(1), in addition to Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which need not be classified, Article II of the Plan designates 9 Classes of Claims: (i) Class 1 (Other Secured Claims), (ii) Class 2 (Other Priority Claims), (iii) Class 3 (NMTC Claims), (iv) Class 4 (Patient Refund Claims), (v) Class 5 (Secured Bondholder Claims), (vi) Class 6 (Secured M&M Lien Claims), (vii) Class 7 (General Unsecured Claims), (viii) Class 9 (Insured Claims) and (ix) Class 10 (Intercompany Claims).[3] As required by section 1122(a) of the Bankruptcy Code, the Claims placed in each Class are substantially similar to other Claims, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, the classifications were not implemented for any improper purpose, and such Classes do not unfairly discriminate between Holders of Claims. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b. Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article II of the Plan specifies that Classes 1, 2, 3, and 4 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c. Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article II of the Plan sets forth the treatment of Classes 5, 6, 7, 9 and 10, which are the Impaired Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

d. No Discrimination (11 U.S.C. § 1123(a)(4)). Article II of the Plan provides for the same treatment by the Debtors for each Claim in each respective Class except to the extent that a Holder of a particular Claim has agreed to a less favorable treatment of such Claim, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e. Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents included in the Plan Supplement provide adequate and proper means for implementation of the Plan, including, without limitation: (i) the consummation of the Restructuring Transactions; (ii) the New Organizational Documents; (iii) the New Continuing Covenant Agreement; (iv) the Superpriority Exit Facility Credit Agreement Documents; (v) the continued vesting of the assets of the Debtors' Estates in the Reorganized Debtors; and (vi) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents

[3] There is no Class 8 under the Plan.

in furtherance of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

f. Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The New Organizational Documents prohibit the issuance of non-voting securities to the extent required to comply with section 1123(a)(6) of the Bankruptcy Code. As such, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

g. Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The Plan provides for the selection of the Reorganized Debtors' officers and directors, as applicable, and the selected parties, including those identified in the Plan Supplement, shall remain in office following Confirmation. Such provisions are consistent with the interests of creditors and with public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

h. Additional Plan Provisions (11 U.S.C. § 1123(b)). The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, are consistent with section 1123(b) of the Bankruptcy Code.

(i) Impairment/Unimpairment of Any Class of Claims (11 U.S.C. § 1123(b)(1)). Pursuant to the Plan, Classes 1, 2, 3, and 4 are Unimpaired, and Classes 5, 6, 7, 9 and 10 are Impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(ii) Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). Unless otherwise expressly stated in the Plan, Article VI of the Plan provides for the rejection of the Debtors' Executory Contracts and Unexpired Leases unless such Executory Contract or Unexpired Lease: (1) previously was assumed or rejected by the Debtors; (2) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (3) is the subject of a motion to assume that is pending on the Confirmation Date; (4) is subject to a motion to reject pursuant to which the requested effective date of such rejection is after the Effective Date; or (5) will otherwise terminate by its terms prior to the Effective Date.

(iii) Retention of Claims (11 U.S.C. § 1123(b)(3)). In accordance with section 1123(b)(3) of the Bankruptcy Code, Article IV.F and O provide that, except as otherwise provided in the Plan, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including Pavilion Claims), whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and

exculpations contained in the Plan. The Plan is sufficiently specific with respect to the Causes of Action to be retained by the Debtors, and the Plan and Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Debtors may retain, and all parties in interest received adequate notice with respect to such retained Causes of Action. The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims.

(iv) Compromise and Settlement (11 U.S.C. § 1123(b)(3)). In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under or in connection with the Plan, the provisions of the Plan and the release, exculpation, and indemnity provisions, constitute a good faith compromise of all Claims and controversies relating to the contractual, legal, and subordination rights that all Holders of Claims may have with respect to any Allowed Claim and any distribution to be made on account of such Allowed Claim. Such compromises and settlements are fair, equitable, and reasonable and in the best interests of the Debtors and their Estates.

(v) Other Appropriate Provisions (11 U.S.C. § 1123(b)(6)). The Plan's other provisions are also appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (1) Distributions to Holders of Claims, (2) resolution of Disputed Claims, (3) allowance of certain Claims, (4) assumption of the indemnification provisions, (5) releases by the Debtors of certain parties, (6) consensual releases by certain third parties, (7) exculpation of certain parties, and (8) retention of Bankruptcy Court jurisdiction, thereby satisfying the requirements of section 1123(b)(6).

i. Cure of Defaults (11 U.S.C. § 1123(d)). Article V.D of the Plan provides for the satisfaction of monetary defaults under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) pursuant to the Plan unless otherwise agreed upon by the counterparties to such Executory Contracts and Unexpired Leases. The Debtors have provided notice of such assumption (or assumption and assignment) and proposed cure amounts to the applicable third parties. As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**Q. <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).</u>**

18. The Debtors have complied with the applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code. Specifically:

a. the Debtors are eligible debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

b. the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c. the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules in transmitting the Confirmation Materials and related notices and in soliciting and tabulating the votes on the Plan.

**R. <u>Good Faith Proposal of the Plan (11 U.S.C. § 1129(a)(3)).</u>**

19. The Debtors have proposed the Plan (including the Plan Supplement and all other documents necessary or appropriate to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, the formulation of the Plan, the process leading to Confirmation, the support of Holders of Claims in the voting Classes for the Plan, and the transactions to be implemented pursuant thereto. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the hearing on the Disclosure Statement, and the record of the Confirmation Hearing, and other proceedings held in the Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors. The Plan and all documents necessary to effectuate the Plan were the product of extensive negotiations conducted at arm's length among the Debtors and their key stakeholders, including the Committee, the Prepetition Secured Parties, and their respective

professionals. Further, the Plan's classification, indemnification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary to the Debtors' successful reorganization. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

20. The Plan gives effect to many of the Debtors' restructuring initiatives, including implementing value maximizing restructuring transactions. Accordingly, the Debtors (and all of their respective officers, directors, agents, financial advisers, attorneys, employees, partners, Affiliates, and representatives) have been, are, and will continue to act in good faith if they proceed to: (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have acted in good faith within the meaning of sections 1125(e) and 1126(e) the Bankruptcy Code.

**S. <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).</u>**

21. Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses of Professionals in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**T. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

22. The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. The identities and affiliations of the Reorganized Debtors' directors and officers were disclosed in the Plan Supplement. To the extent that such directors and officers are insiders, the nature of their compensation has been disclosed to the extent known and reasonably practicable. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**U. No Rate Changes (11 U.S.C. § 1129(a)(6)).**

23. Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction.

**V. Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

24. Each Holder of an Impaired Claim either has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

25. The liquidation analysis attached as **Exhibit C** to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence were prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims in every Class will recover as much under the Plan on account of such Claim, as of the Effective Date, as the amount such Holder would receive

if the Debtors were liquidated under chapter 7 of the Bankruptcy Code, or more. Accordingly, the Plan satisfies the "best interest of creditors" test under section 1129(a)(7) of the Bankruptcy Code.

**W. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

26. Classes 1, 2, 3, and 4 are Unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code and, accordingly, Holders of Claims in such Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 5, 6, 7, 9, and 10 are Impaired by the Plan. There is no Class 8 under the Plan. Class 10 is deemed eliminated from the Plan for purposes of Bankruptcy Code section 1129(a)(8), pursuant to Article III.D of the Plan.

27. Class 5 voted to accept the Plan. Classes 6 and 9 are both deemed to accept the Plan, pursuant to Article III.E of the Plan, because both contain Claims that were eligible to vote and no Holders of Claims eligible to vote in those Classes voted either to accept or reject the Plan. Class 7 is Impaired and has voted to reject the Plan, meaning that the requirements of Bankruptcy Code section 1129(a)(8) have not been met, but the Court will approve the Plan over the rejection of Class 7, subject to further protections specified in Bankruptcy Code section 1129(b), as discussed below.

**X. Treatment of Administrative Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).**

28. The treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims pursuant to Articles II and III of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(9) of the Bankruptcy Code.

**Y. Acceptance By at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

29. Claims in Classes 5, 6, 7 and 9 are entitled to vote under the Plan. Class 5, as established by the Voting Declaration, voted to accept the Plan, as determined without including any vote to accept the Plan by any Insider, as established by the Voting Declaration. Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**Z. Feasibility (11 U.S.C. § 1129(a)(11)).**

30. The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, and/or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or the Reorganized Debtors; and (e) establishes that the Debtors or Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**AA. Payment of Fees (11 U.S.C. § 1129(a)(12)).**

31. As set forth in Article XIII.C of the Plan, all fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**BB. Retiree Benefits (11 U.S.C. § 1129(a)(13)).**

32. The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code. Article IV.N of the Plan provides that from and after the Effective Date, the payment of all retiree benefits, as defined in section 1114 of the Bankruptcy Code, will continue in accordance with applicable law.

**CC. No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).**

33. The Debtors are not required by a judicial or administrative order or by statute to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**DD. None of the Debtors is an Individual (11 U.S.C. § 1129(a)(15)).**

34. None of the Debtors is an individual. Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**EE. No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).**

35. All transfers of property to be made under the Plan will be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business or commercial corporation of trust. Accordingly, the Plan satisfies the requirements of section 1129(a)(16) of the Bankruptcy Code.

**FF. Confirmation of Plan Over Non-Acceptance of Impaired Classes (11 U.S.C. § 1129(b))**

36. The Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the requirements of section 1129(a)(8) have not been met, because the Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to the Rejecting Class (defined below).

37. Based upon the evidence proffered, adduced, and presented by the Debtors prior to or at the Confirmation Hearing, the Plan does not "discriminate unfairly" against any Holders of Claims in Class 7 (General Unsecured Claims) (the "Rejecting Class"), as required by section 1129(b)(1) of the Bankruptcy Code, because all similarly situated Holders of Claims will receive substantially similar treatment, and to the extent the Plan treats any Classes differently, there are valid business, legal, and factual reasons to do so.

38. The Plan is also "fair and equitable" with respect to the Rejecting Class. No Holder of Claims junior to Claims in Class 7 will receive or retain any property under the Plan on account of such junior Claims, thereby satisfying section 1129(b)(2)(B) of the Bankruptcy Code.

39. The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**GG. Only One Plan (11 U.S.C. § 1129(c)).**

40. The Plan is the only plan filed in the Chapter 11 Cases, and, accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**HH. Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

41. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, thereby satisfying section 1129(d) of the Bankruptcy Code.

**II. Not Small Business Cases (11 U.S.C. § 1129(e)).**

42. None of the Chapter 11 Cases are small business cases, as that term is defined in the Bankruptcy Code, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**JJ. Satisfaction of Confirmation Requirements.**

43. Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**KK. Plan Implementation.**

44. The terms of the Plan, including, without limitation, the Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan, including without limitation, the Superpriority Exit Facility Credit Agreement, the New CCAs, the other New Bond Documents, any supplements to the Master Indenture, any modifications to the 2019 Mortgages (as defined herein), the Intercreditor Agreement, the GUC Note and the Liquidating Trust Agreement, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, and as each may be amended, supplemented, or modified, the "Plan Documents") are incorporated by reference, are approved in all respects, and constitute an integral part of this Confirmation Order. For the avoidance of doubt, the New Bond Documents, including the New Bond Agreements and New CCAs, are or may be deemed to be, amended, supplemented, modified or amended and restated versions of the Bond Documents necessary to reflect the Restructuring Transactions.

**LL. Binding and Enforceable.**

45. The Plan and the Plan Documents have been negotiated in good faith and at arms'-length and, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim and such Holder's respective successors and assigns, whether or not the Claim is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled

to a Distribution under the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**MM. Vesting of Assets.**

46. Except as otherwise provided in the Plan, the Plan Documents, this Confirmation Order, or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property (including all interests, rights, and privileges related thereto) in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances (including the liens and security interests allegedly securing the M&M Lien Claims (including the Consigli Claim)). On and after the Effective Date, except as otherwise provided in the Plan, the Plan Documents, or this Confirmation Order, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules. Any state or local business or operating license transferred, sold, vested, or otherwise conveyed from a Debtor to a Reorganized Debtor shall be deemed valid and enforceable by the applicable Reorganized Debtor without the need for any corporate action, governmental authority, or further court approval.

**NN. <u>Executory Contracts and Unexpired Leases.</u>**

47. The Debtors have exercised sound business judgment in determining whether to reject, assume, or assume and assign each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan, and as set forth in the Plan Supplement. Except as set forth herein and/or in separate orders entered by the Bankruptcy Court relating to the assumption of Executory Contracts or Unexpired Leases, the Debtors have cured or provided adequate assurance that the Debtors will cure defaults (if any) under or relating to each Executory Contract or Unexpired Lease assumed under the Plan and, for each Executory Contract or Unexpired Lease being assigned under the Plan (if any), such assignee has provided adequate assurance of future performance as required under section 365(f)(2)(B) of the Bankruptcy Code.

48. Nothing in the Plan or this Confirmation Order shall prevent a party to an Executory Contract or Unexpired Lease rejected pursuant to the Plan from filing a Proof of Claim based on such rejection within thirty days of the later of (a) the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection, (b) the effective date of such rejection, or (3) the Effective Date. Nothing in the Plan or this Confirmation Order shall prevent a party to an Executory Contract or Unexpired Lease assumed pursuant to the Plan, or otherwise, from continuing to prosecute an objection to the cure cost related to such assumed Executory Contract or Unexpired Lease if such objection was timely filed on or before at least six days prior to the Confirmation Hearing, but not resolved before the Effective Date.

**OO. <u>Approval of the Superpriority Exit Facility and the Superpriority Exit Facility Documents.</u>**

49. The Superpriority Exit Facility Documents are an essential element of the Plan, are necessary for Confirmation and Consummation of the Plan, and are critical to the overall success

and feasibility of the Plan. The incurrence of indebtedness, provision of guarantees, and granting of collateral under the Superpriority Exit Facility Documents are in the best interests of the Reorganized Debtors, the Debtors, their Estates, and all Holders of Claims, and are necessary and appropriate for Consummation of the Plan and the operations of the Reorganized Debtors. The incurrence of the obligations under the Superpriority Exit Facility Documents is necessary for the Consummation of the Plan and the operation of the Reorganized Debtors and constitutes reasonably equivalent value and fair consideration. The Superpriority Exit Facility Documents were negotiated and shall be deemed to be negotiated at arms'-length and in good faith, without the intent to hinder, delay or defraud any creditor of the Debtors. The financial accommodations to be extended pursuant to the Superpriority Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, and on reasonable terms. The Debtors have exercised reasonable business judgment in determining to enter into the Superpriority Exit Facility Credit Agreement and the other Superpriority Exit Facility Documents and have provided sufficient and adequate notice of the material terms of the Superpriority Exit Facility Documents to all parties in interest in the Chapter 11 Cases, including, but not limited to, through their filing of the form of Superpriority Exit Facility Credit Agreement as part of the Plan Supplement. The terms and conditions of the Superpriority Exit Facility Documents are fair and reasonable and reflect the Debtors' exercise of sound business judgment consistent with their fiduciary duties and are approved. The execution, delivery, or performance by the Debtors or the Reorganized Debtors, as applicable, of any of the Superpriority Exit Facility Documents and the compliance by the Debtors or the Reorganized Debtors, as applicable, with the terms thereof are authorized by, and will not conflict with, the terms of the Plan or this Confirmation Order. The Superpriority Exit Facility shall be deemed to have been entered into in

good faith and for legitimate business purposes, is reasonable, shall not be subject to recharacterization or equitable subordination or avoidance for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law.

**PP. <u>Approval of the New Bonds and New Bond Documents.</u>**

50. The New Bond Documents are an essential element of the Plan, necessary for Confirmation and Consummation of the Plan, and critical to the overall success and feasibility of the Plan. Entry into the New CCAs and the other New Bond Documents and the other related documents (including any supplements to the Master Indenture and modifications to the 2019 Mortgages (as defined herein)) is in the best interests of the Reorganized Debtors, the Debtors, their Estates, and all Holders of Claims. The Debtors have exercised reasonable business judgment in determining to enter into the New CCAs, the other New Bond Documents and the other related documents (including any supplements to the Master Indenture and modifications to the 2019 Mortgages (as defined herein)) and have provided sufficient and adequate notice of the material terms therein, which material terms were filed as part of the Plan Supplement. The terms and conditions of the New CCAs are fair and reasonable, and the New Bond Agreements were negotiated in good faith and at arms'-length. The execution, delivery, or performance by the Debtors or the Reorganized Debtors, as applicable, of any of the New Bond Documents and other related documents and the compliance by the Debtors or the Reorganized Debtors, as applicable, with the terms thereof are authorized by, and will not conflict with, the terms of the Plan or this Confirmation Order.

**QQ. Approval of Granting of Liens.**

51. The incurrence of indebtedness and granting of (or reaffirmation of grants of) security interests in collateral to secure all or a portion of the obligations under the Superpriority Exit Facility Documents, the New Bond Documents and the Master Indenture, including the 2019 Mortgages (as defined herein) granted on the Mortgaged Property (as defined in the Superpriority Exit Facility Credit Agreement, the New CCAs and the Intercreditor Agreement, as applicable) and the Debtors' and Reorganized Debtors' deposit accounts (and the funds therein) are in the best interests of the Reorganized Debtors, the Debtors, their Estates, and all Holders of Claims, and are necessary and appropriate for Consummation of the Plan and the operations of the Reorganized Debtors. The obligations under the Superpriority Exit Facility Documents, the New Bond Documents and the Master Indenture shall be secured by a Lien and security interest against substantially all assets of the applicable Reorganized Debtors with same first priority established under the Master Indenture and the 2019 Mortgages (as defined herein).

**RR. Approval of GUC Note and Liquidating Trust Agreement.**

52. Each of the GUC Note and the Liquidating Trust Agreement is an essential element of the Plan, necessary for implementation, Confirmation and Consummation of the Plan, and critical to the overall success and feasibility of the Plan. Entry into the GUC Note and the Liquidating Trust Agreement is in the best interests of the Reorganized Debtors, the Debtors, their Estates, and all Holders of Claims. The Debtors have exercised reasonable business judgment in determining to enter into the GUC Note and the Liquidating Trust Agreement and have provided sufficient and adequate notice of the material terms therein, which material terms were filed as part of the Plan Supplement. The terms and conditions of the GUC Note and the Liquidating Trust Agreement are fair and reasonable, and the GUC Note, and the Liquidating Trust Agreement were

negotiated in good faith and at arms'-length. The execution, delivery, or performance by the Debtors or the Reorganized Debtors, as applicable, of the GUC Note and the Liquidating Trust Agreement and the compliance by the Debtors or the Reorganized Debtors, as applicable, with the terms thereof are authorized by, and will not conflict with, the terms of the Plan or this Confirmation Order. Notwithstanding any other provision of the Plan, the Plan Documents, or this Confirmation Order, the Court shall retain jurisdiction for enforcement of and rights under the GUC Note and Liquidating Trust.

**SS. Approval of the Intercreditor Agreement.**

53. The Intercreditor Agreement is an essential element of the Plan, necessary for implementation, Confirmation and Consummation of the Plan, and critical to the overall success and feasibility of the Plan. Entry into the Intercreditor Agreement is in the best interests of the Reorganized Debtors, the Debtors, their Estates, and all Holders of Claims. The Debtors have exercised reasonable business judgment in determining to enter into the Intercreditor Agreement and have provided sufficient and adequate notice of the material terms therein, which material terms were filed as part of the Plan Supplement. The terms and conditions of the Intercreditor Agreement are fair and reasonable, and the Intercreditor Agreement was negotiated in good faith and at arms'-length. The execution, delivery, or performance by the Debtors or the Reorganized Debtors, as applicable, of the Intercreditor Agreement and the compliance by the Debtors or the Reorganized Debtors, as applicable, with the terms thereof are authorized by, and will not conflict with, the terms of the Plan or this Confirmation Order. In the event of any conflict between the provisions of the Intercreditor Agreement and the provisions of any Superpriority Exit Facility Document, any New Bond Document or the GUC Note, the provisions of the Intercreditor

Agreement shall govern. Notwithstanding any other provision of the Plan, the Court shall retain jurisdiction for enforcement of and rights under the Intercreditor Agreement.

**TT. Approval of Committee Settlement.**

54. The Committee Settlement is an essential element of the Plan, necessary for implementation, Confirmation and Consummation of the Plan, and critical to the overall success and feasibility of the Plan. The Committee Settlement is (1) a reasonable exercise of the Debtors' business judgment; (2) in exchange for good and valuable consideration provided by the Prepetition Secured Parties, including the Superpriority Exit Facility, and the payment of the $2.5 million to the Debtors or the Reorganized Debtors in accordance with the Global Settlement Term Sheet; (3) a good faith settlement and compromise of any and all claims raised or that could have been raised in the Committee Adversary Proceeding; (4) in the best interests of the Debtors and all Holders of Claims; (5) fair, equitable, and reasonable; and (6) given and made after due notice and opportunity to be heard. The Court finds that without the settlement and compromise of any and all claims raised or that could have been raised in the Committee Adversary Proceeding, the Prepetition Secured Parties would not be willing to provide the Superpriority Exit Facility, enter into the New Bond Documents or fund the payment of the $2.5 million to the Debtors in accordance with the Global Settlement Term Sheet, which is essential to the Debtors' reorganization.

**UU. Issuance of Securities.**

55. To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance, and Distribution of securities on or substantially contemporaneous with the Effective Date, the Funding Date or any other date of a Distribution thereafter, pursuant to the terms of the Plan or in accordance with this Confirmation

Order, comply with section 1145 of the Bankruptcy Code and shall be exempt from the registration requirements of section 5 of the Securities Act and any other applicable United States, state, or local law requiring registration prior to the offering, issuance, Distribution, or sale of securities.

56. In addition, under section 1145 of the Bankruptcy Code, any security contemplated by the Plan and any and all agreements incorporated therein, including the New Bonds (to the extent, if any, applicable), will be freely tradable and transferable in the United States by the recipients thereof that (a) are not "affiliates" of the Debtors as defined in Rule 144(a)(1) under the Securities Act; (b) have not been "affiliates" within 90 days of such transfer; and (c) are not entities that are "underwriters" as defined in section 1145(b)(1) of the Bankruptcy Code, and subject to compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities and subject to any restrictions in the New Organizational Documents.

57. Any security issued and distributed pursuant to the Plan and this Confirmation Order shall be duly authorized, validly issued, fully paid, and non-assessable.

58. Any security issued under the Plan is an essential element of the Plan, is necessary for implementation, Confirmation and Consummation of the Plan, and is critical to the overall success and feasibility of the Plan. Entry into the instruments evidencing or relating to such securities, is in the best interests of the Reorganized Debtors, the Debtors, their Estates, and all Holders of Claims. The Debtors have exercised reasonable business judgment in determining to enter into the instruments evidencing or relating to such securities and have provided sufficient and adequate notice of the material terms of such instruments, which material terms were filed as part of the Plan Supplement. The terms and conditions of the instruments evidencing or relating to such securities are fair and reasonable and were negotiated in good faith and at arms'-length.

**VV. Discharge, Compromise, Settlement, Release, Exculpation, and Injunction Provisions.**

59. The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article XII of the Plan. Sections 105(a) and 1123(b) of the Bankruptcy Code permit issuance of the injunctions and approval of the releases, exculpations, and injunctions set forth in Article IX of the Plan. Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, the Bankruptcy Court finds that the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article IX of the Plan are consistent with the Bankruptcy Code and applicable law. Further, based on the representations and arguments of counsel for the Debtors and parties in interest at the Confirmation Hearing, the testimony provided by witnesses, both live and proffered, other evidence admitted at the Confirmation Hearing, and the record of the Chapter 11 Cases, the discharge, compromises, settlements, releases, exculpations, and injunctions contained in Article IX of the Plan are integral components of the Plan, the product of arms'-length negotiations, supported by good and valuable consideration, and fair, equitable, and in the best interests of the Debtors, their Estates, and their creditors. The discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article IX of the Plan are hereby approved and authorized in their entirety.

**WW. Debtor Release.**

60. The releases of Claims and Causes of Action by the Debtors described in Article IX.C of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor Release") represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019. The Debtor Release is fair and equitable.

61. The Debtor Release is an integral part of the Plan and is in the best interests of the Debtors' Estates as a component of the comprehensive settlement implemented under the Plan. The probability of success in litigation with respect to the released claims and Causes of Action, when weighed against the costs, supports the Debtor Release.

62. The transactions contemplated in the Plan, including the Restructuring Transactions and the Debtor Release, were negotiated before and after the Petition Date by sophisticated parties represented by able counsel and financial advisors. The Debtor Release is therefore the result of an arms'-length negotiation process.

63. The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process. Specifically, the Released Parties under the Plan made significant concessions and contributions to the Debtors' Chapter 11 Cases, including, as applicable, actively supporting the Plan and these Chapter 11 Cases and waiving substantial rights and Claims against the Debtors under the Plan. The Debtor Release for the Debtors' directors and officers is appropriate because the Debtors' directors and officers share an identity of interest with the Debtors, supported the Plan and these Chapter 11 Cases, actively participated in meetings, negotiations, and implementation during these Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization.

64. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. The Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates, the critical nature of the Debtor Release to the Plan, and the investigation of Claims and Causes of Action conducted by the Debtors.

**XX. Third-Party Release.**

65. The release consensually given by the Releasing Parties (the "Third-Party Release"), set forth in Article IX.D of the Plan, is an essential provision of the Plan. The Third-Party Release is: (a) in exchange for good and valuable consideration; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (c) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders; (d) important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in these Chapter 11 Cases; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the Third-Party Release against any of the Released Parties; and (h) consistent with sections 105, 524, 1123, 1129, and 1141, and other applicable provisions of the Bankruptcy Code.

66. The Third-Party Release is an integral part of the Plan. Like the Debtor Release, the Third-Party Release facilitated participation in both the Debtors' Plan and the chapter 11 process generally. The Third-Party Release was critical in incentivizing the parties to support the Plan and preventing potentially significant and time-consuming litigation regarding the parties' respective rights and interests. The Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process by, among other things, supporting the Plan.

67. The Third-Party Release is consensual as to all parties in interest, including all Releasing Parties, and such parties in interest were provided notice of the Chapter 11 Cases, the Plan, the deadline to object to confirmation of the Plan, and the Confirmation Hearing and were properly informed that all Holders of Claims against the Debtors that opted in to the inclusion of

such Holder as a Releasing Party under the provisions contained in Article IX of the Plan would be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the applicable notices.

68. The scope of the Third-Party Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases, and parties in interest received due and adequate notice of the Third-Party Release. Among other things, the Plan and the Disclosure Statement provide appropriate and specific disclosures with respect to the Entities, Claims, and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary. The Debtors provided sufficient notice of the Third-Party Release, and no further or other notice is necessary. The Third-Party Release is specific in language, integral to the Plan, and given for adequate consideration. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Third-Party Release to the Plan, the Third-Party Release is appropriate.

69. The Objection filed by the United States Trustee regarding the Releases in the Plan is OVERRULED. First, the Court determines that the Releases contained in the plan are consensual releases. Parties who have voted to accept the Plan have affirmatively accepted the terms of the Plan, including the Releases. A party who affirmatively votes to accept the Plan is necessarily opting-in to the Releases contained in the Plan and no further opt-in procedure is necessary for those parties to be bound by the Releases in the Plan, especially in light of the conspicuous and prominent language contained on the ballot. See, e.g., *In re Coram Healthcare Corp.*, 315 B.R. 321, 336 (Bankr. D. Del. 2004) (creditors or shareholders that voted in favor of

Chapter 11 plan were bound by third party releases in the plan); *In re Quincy Med. Ctr., Inc.*, No. 11-16394-MSH, 2011 WL 5592907, *4 (Bankr. D. Mass. 2011) (creditors that voted in favor of plan by signing and returning a ballot were bound by third party releases in plan where ballot contained language in bold text informing parties that a vote to accept the plan constituted an acceptance and assent to the releases). The cases cited by the United States Trustee are distinguishable for the reasons set forth in the Debtor's Memorandum of Law in Support of Confirmation [Docket #1045]. Second, the Releases are not overly broad. The inclusion of "Related Parties" is necessary to provide protection to the individuals and entities that comprise the Released Parties. Third, the Releases are supported by valid consideration from the Debtors.

**YY. Exculpation.**

70. The exculpation provisions set forth in Article IX.E of the Plan were proposed in good faith and are essential to the Plan. The record in the Chapter 11 Cases fully supports the exculpation provisions, and the exculpation provisions set forth in Article IX.E of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation and to exclude actions determined by Final Order to have constituted actual fraud or gross negligence.

71. The Objection filed by the United States Trustee regarding the Exculpation in the Plan is OVERRULED. The Exculpated Parties include only estate fiduciaries and those individuals and entities that comprise the Exculpated Parties and is appropriately limited to exclude exculpation for gross negligence or actual fraud. *See, e.g., In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000). Furthermore, the Exculpation provision is limited to actions taken from the Petition Date through the Effective Date.

**ZZ. Injunction.**

72. The injunction provisions set forth in Article IX.F of the Plan are essential to the Plan; are necessary to preserve and enforce the releases set forth in Articles IX.C and IX.D of the Plan, the exculpation provisions set forth in Article IX.E of the Plan, and the compromises and settlements implemented under the Plan; and are narrowly tailored to achieve that purpose.

73. The injunction provisions set forth in Article IX.F of the Plan: (a) are within the jurisdiction of this Bankruptcy Court under 28 U.S.C. §§ 1334(a) and 1334(b); (b) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) are an integral element of the transactions incorporated into the Plan; (d) confer material benefits on, and are in the best interests of, the Debtors, the Estates, and their creditors; (e) are important to the overall objectives of the Plan to finally resolve all Claims or Causes of Action among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (f) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the injunction provisions set forth in Article IX.F of the Plan.

74. The Objection filed by the United States Trustee regarding the Injunction in the Plan is OVERRULED. The Injunction applies only to "Claims that have been released, discharged, or are subject to exculpation" and, therefore, would not apply to claims that have not otherwise been released. The Injunction is necessary to enforce and carry out other provisions of the Plan and is thus permissible pursuant to 11 U.S.C. §§ 105(a) and 1123(b)(6). *See, e.g.*, *In re Quincy Med. Ctr., Inc.*, No. 11-16394-MSH, 2011 WL 5592907, *4 (Bankr. D. Mass. 2011) ("To the extent a proposed injunction is limited to enforcement of claims to be released under acceptable

plan release provisions, the injunction is really nothing more than an enforcement device analogous to Bankruptcy Code § 524(a)(2).”).

**AAA. Retention of Jurisdiction.**

75. Except as otherwise provided in the Plan, any of the Plan Documents, or this Confirmation Order, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including the matters set forth in Article XII of the Plan as well as the Intercreditor Agreement, the GUC Note, and Liquidating Trust Agreement.

**BBB. Disclosure of Facts**

76. The Debtors have disclosed all material facts regarding the Plan, the Plan Documents, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

**A. Confirmation.**

77. The Plan and the other Plan Documents shall be, and hereby are, confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan Documents are incorporated by reference into, and are an integral part of, the Plan and this Confirmation Order and are authorized and approved, and the Debtors and Reorganized Debtors are authorized to implement their provisions and consummate the Plan without any further authorization except as expressly required by the Plan or this Confirmation Order.

**B. Objections.**

78. All objections, responses, reservations, statements, and comments in opposition to the Plan, other than those resolved or withdrawn with prejudice prior to, or on the record at, the

Confirmation Hearing are overruled on the merits in all respects. All withdrawn objections, if any, are deemed withdrawn with prejudice.

79. Notwithstanding the foregoing, the objection filed at docket number 1035 (filed by BankFinancial, NA), other than any portion directly related to confirmation of the Plan contained therein, are hereby adjourned to a later date to be determined, pending resolution of such objections.

**C. <u>Omission of Reference to Particular Plan Provisions.</u>**

80. The failure to specifically describe or include any particular provision of the Plan or the Plan Documents in this Confirmation Order shall not diminish or impair the effectiveness of such provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan and the Plan Documents.

**D. <u>Deemed Acceptance of the Plan as Modified.</u>**

81. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to accept the Plan, subject to modifications, if any. No Holder of a Claim shall be permitted to change its vote as a consequence of the Plan modifications. All modifications to the Plan made after the Solicitation Date are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**E. <u>Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors.</u>**

82. Except as otherwise provided in the Plan, the Plan Documents, or this Confirmation Order, on the Effective Date, each Debtor, except for Quabbin, shall continue to exist after the Effective Date as a Reorganized Debtor and as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with the powers of a corporation, limited

liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation or governing documents) in effect before the Effective Date, except to the extent such certificate of incorporation and by-laws (or other analogous formation or governing documents) are amended by the Plan or Plan Documents, or otherwise amended in accordance with applicable law. To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state or federal law).

83. On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

**F. Plan Implementation.**

84. General Authorization. The transactions described in the Plan, the other Plan Documents, and this Confirmation Order are hereby approved.

85. On or before the Effective Date, and after the Effective Date, as necessary, and without any further order of the Bankruptcy Court or other authority, the Debtors or the Reorganized Debtors, as applicable, and their respective directors, officers, agents, attorneys, financial advisors, and investment bankers (each, a "Designated Person") are authorized and empowered pursuant to section 1142(b) of the Bankruptcy Code and other applicable laws to and shall (a) grant, issue, execute, deliver, file, or record any agreement, document, or security, and

the documents contained in the Plan or the Plan Documents (as modified, amended, and supplemented pursuant to the provisions of the Plan governing such modifications, amendments, and supplements), in substantially the form included therein, or any other documents related thereto; and (b) take any action necessary or appropriate to implement, effectuate, and consummate the Plan, the Plan Documents, or this Confirmation Order in accordance with their terms. Any of the Debtors or the Reorganized Debtors or their respective Designated Persons, as applicable, shall have the authority to take any of the actions described in clauses (a) and (b) above on behalf of any Debtor or Reorganized Debtor, as applicable. All such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation, including, among other things, (x) all transfers of assets that are to occur pursuant to the Plan, the Plan Documents, or this Confirmation Order; (y) the incurrence of all obligations contemplated by the Plan, the Plan Documents, or this Confirmation Order and the making of all Distributions under the Plan, the Plan Documents, or this Confirmation Order; and (z) entering into any and all transactions, contracts, leases, instruments, releases, and other documents and arrangements permitted by applicable law, order, rule, or regulation. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors, the Reorganized Debtors, or any Designated Person thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan, the Plan Documents, or this Confirmation Order pursuant to section 1142(b) of the Bankruptcy Code. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable non-bankruptcy law, any of the foregoing actions that would otherwise require approval of the directors (or any equivalent body) of the Debtors or the Reorganized

Debtors, such approval shall be deemed to have occurred and shall be in effect from and after the Effective Date without any further action by the directors (or any equivalent body) of the Debtors or the Reorganized Debtors. On the Effective Date, or as soon thereafter as is practicable, the Debtors or the Reorganized Debtors, as applicable, shall, if required, file any documents required to be filed in such jurisdictions so as to effectuate the provisions of the Plan. Any or all documents contemplated herein shall be accepted by each of the respective filing offices and recorded, if required, in accordance with applicable law. All counterparties to any documents described in this paragraph are hereby directed to execute such documents as may be required or provided by such documents, without any further order of the Bankruptcy Court.

86. The Debtors have stated in the Disclosure Statement that, based on the results of the appraisal conducted by Dono & Associates, Inc., the value of the property allegedly securing the Secured M&M Lien Claims is no greater than $0.00. (*See* [Docket No. 980-1, at 26 of 195]). In turn, the Debtors set forth in the Disclosure Statement that "[b]ased on the valuation and other assessments provided in the [Dono] appraisal, the Debtors were able to determine proposed Plan treatment with respect to M&M Lien Claims, *e.g.*, such claims are not secured." (*Id.*). Pursuant to their rights in this regard under Article III(B)(6)(b) of the Plan and in accordance with their statements in the Disclosure Statement, the Debtors have exercised their option to treat under the Plan all M&M Lien Claims in a manner "necessary to satisfy section 1129(b)(2)(A) of the Bankruptcy Code" by providing to each holder of an M&M Lien Claim (other than the Consigli Claim) an M&M Lien Deficiency Claim in the full amount of its respective M&M Lien Claim; <u>provided</u>, <u>however</u>, that (i) all such M&M Lien Deficiency Claims remain Disputed Claims; (ii) no such M&M Lien Deficiency Claim is deemed hereby to be an Allowed Claim; and (iii) the Debtors, the Reorganized Debtors and the Liquidating Trustee reserve their respective rights set

forth in the Plan to object to all and any such M&M Lien Deficiency Claims.[4] The Debtors' exercise of their option under Article III(B)(6)(b) of the Plan as set forth in the preceding sentence, subject to the proviso to such proceeding sentence, shall be, and hereby is, approved.

87. No Action. Pursuant to section 1142(b) of the Bankruptcy Code and any applicable state law, this Confirmation Order shall constitute authorization for the Debtors or the Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Plan Documents, this Confirmation Order, and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan. The respective directors of the Debtors or the Reorganized Debtors shall not be required to take any actions in connection with the implementation of the Plan, the Plan Documents, or this Confirmation Order. The Plan Documents are hereby approved, adopted, and effective upon the Effective Date.

**G. Binding Effect.**

88. On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, except as otherwise provided in Paragraph 88 hereof, the Plan, the Plan Documents, and this Confirmation Order shall bind any Holder of a Claim and such Holder's respective successors and assigns, whether or not: (a) the Claim is Impaired under the Plan; (b) such Holder has accepted the Plan; (c) such Holder has failed to vote to accept or reject the Plan or voted to reject the Plan; (d) such Holder is entitled to a Distribution under the Plan; (e) such Holder will receive or retain any property or interests in property under the Plan; and (f) such

[4] Pursuant to that the *Stipulation and Order Resolving (I) the Motion of Consigli Construction Co., Inc. for Temporary Allowance of Claim for Voting Purposes, and (II) the Claim of Consigli Construction Co., Inc.* [Docket No. 1049], the Consigli Claim in the amount of $4,932,997.53 shall be Allowed as a General Unsecured Claim in Class 7 under the Plan instead of a Secured M&M Lien Claim in Class 6.

Holder has filed a Proof of Claim in the Chapter 11 Cases. The Plan, the Plan Documents, and this Confirmation Order constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Documents, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**H. Plan Classification Controlling.**

89. The terms of the Plan shall solely govern the classification of Claims for purposes of the Distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes. All rights of the Debtors and the Reorganized Debtors to challenge, object to, or seek to reclassify Claims are expressly reserved.

**I. Operation as of the Effective Date.**

90. Upon the occurrence of the Effective Date, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims against the Debtors (irrespective of whether their Claims are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements (including the Committee Settlement), compromises, releases, discharges, and injunctions described in the Plan, each Entity

acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**J. Restructuring Transactions.**

91. The Debtors and the Reorganized Debtors are authorized to implement and consummate the Restructuring Transactions and the Committee Settlement pursuant to the Plan, any other Plan Documents (as may be amended), and this Confirmation Order and are authorized to execute and deliver all necessary documents or agreements required to perform their obligations thereunder. The Restructuring Transactions and the Committee Settlement set forth in the Plan are approved and authorized in all respects. The Debtors and the Reorganized Debtors are authorized and directed to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, agreements, or other documents created or executed in connection with the Plan, including the Superpriority Exit Facility Documents, the New Bond Documents, any supplements to the Master Indenture, any modifications to the 2019 Mortgages (as defined herein), the GUC Note, the Liquidating Trust Agreement and the Intercreditor Agreement; provided however that no such contracts, instruments, agreements, or other documents created in connection with the Plan shall be binding upon any party thereto until such contract, instrument, agreement, or other document created in connection with the Plan has been fully executed and delivered by the parties thereto and become effective by its terms. In connection with the Restructuring Transactions and the Committee Settlement, (i) the Bondholder is hereby directed to remit $2,058,102.78 to the Debtors or the Reorganized Debtors on or before October 4, 2024 (the "Bondholder Payment"), for contemporaneous payment by the Debtors or Reorganized Debtors, as applicable, at the direction of the Liquidating Trustee, to an account held on behalf of, or established by, the Liquidating Trust or the Liquidating Trustee (the "Trust

Account") to fund Bondholder's portion of the GUC Cash Amount, (ii) The Huntington National Bank is hereby directed to remit $441,897.22 to the Debtors or the Reorganized Debtors on or before October 4, 2024 (the "Huntington Payment" and together with the Bondholder Payment, the "Prepetition Secured Parties' Payments"), for contemporaneous payment by the Debtors or Reorganized Debtors, as applicable, to the Trust Account to fund The Huntington National Bank's portion of the GUC Cash Amount, (iii) the Debtors or the Reorganized Debtors are hereby directed to remit no later than October 7, 2024 an additional $1,500,000 to the Trust Account, (iii) the Reorganized Debtors are hereby directed to remit $750,000 to a bank account held by the Liquidating Trustee on October 7, 2025, (iv) upon payment of their respective portions of the GUC Cash Amount to the Debtors or Reorganized Debtors, as applicable, the Committee shall release any and all claims against the Prepetition Secured Parties, including those reflected in the Committee Adversary Proceeding and any associated or related claims against the Debtors and (v) to the extent the Estates or the Reorganized Debtors collect any Pavilion Claim Direct Cash Proceeds, the Liquidating Trustee shall be authorized to accept, and entitled to receive, the Liquidating Trust Pavilion Claim Cash Proceeds on behalf of the Liquidating Trust Beneficiaries and apply such proceeds to the outstanding principal amounts under the GUC Note in accordance with the terms of the Plan and the Intercreditor Agreement. All such actions are approved in accordance with section 1142 of the Bankruptcy Code and applicable non-bankruptcy law, and such actions may be taken without further action by the directors of the Debtors or Reorganized Debtors. The Court shall retain jurisdiction over enforcement of and rights under the Intercreditor Agreement, the GUC Note, the Liquidating Trust Agreement, and matters affecting such documents. The first business day on which all of the Prepetition Secured Parties' Payments shall

have been made and the Effective Date shall have occurred shall be referred to herein as the "Funding Date."

**K. Superpriority Exit Facility Documents.**

92. The entry into the Superpriority Exit Facility Documents and all transactions contemplated thereby and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, costs, and expenses provided for therein, are hereby approved.

93. Subject to, and upon the occurrence of, the Effective Date, the Debtors and the Reorganized Debtors, as applicable, are authorized in all respects, without further notice to any party, or further order or other approval of the Bankruptcy Court, or further act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization or approval of any Person except as otherwise required by the Superpriority Exit Facility Documents, to (a) execute and deliver, or cause to be executed and delivered the Superpriority Exit Facility Documents, and to perform their obligations thereunder, including, but not limited to, any documents related to the loans and other extensions of credit contemplated by the Superpriority Exit Facility Documents and any other documents executed in connection therewith, except as otherwise required by the Superpriority Exit Facility Documents; (b) grant Liens to secure such loans; (c) incur the indebtedness under the Superpriority Exit Facility Documents; and (d) perform all obligations under the Superpriority Exit Facility Documents and pay all fees, expenses, losses, damages, indemnities, and other amounts provided under the Superpriority Exit Facility Documents.

94. The obligations of the Reorganized Debtors under the Superpriority Exit Facility Documents shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtors and the Superpriority Exit Facility Documents shall be enforceable in accordance with

their terms. The Debtors' or the Reorganized Debtors', as applicable, entry into the Superpriority Exit Facility Documents and the Superpriority Exit Facility Credit Agreement is approved in all respects by virtue of this Confirmation Order, in accordance with the Bankruptcy Code and applicable state law and without the need for further corporate action or any further action by Holders of Claims against the Debtors or the Reorganized Debtors or directors of the Debtors or the Reorganized Debtors, and with like effect as if such actions had been taken by unanimous actions thereof. The financial accommodations to be extended under the Superpriority Exit Facility Documents shall be deemed to have been extended in good faith for legitimate business purposes; and they are reasonable and shall not be subject to avoidance, re-characterization, or subordination (including equitable subordination) for any purpose whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

95. Each of the Reorganized Debtors, without any further action by the Bankruptcy Court or each respective Reorganized Debtors' officers or directors, is hereby authorized and directed to enter into, and take such actions as necessary to perform under, or otherwise effectuate, the Superpriority Exit Facility Documents, as well as any notes, documents or agreements in connection therewith, including, without limitation, any documents required in connection with the creation, continuation or perfection of Liens or other security interests in connection therewith.

96. On the Effective Date, all of the Liens and security interests to be granted pursuant to the Plan or the Superpriority Exit Facility Documents shall be (a) deemed approved, (b) legal, valid, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Superpriority Exit Facility Documents and with the priorities

established in respect thereof under applicable non-bankruptcy law, and (c) deemed perfected on the Effective Date.

97. The Reorganized Debtors and the Prepetition Secured Parties (and their designees and agents) under the Superpriority Exit Facility Documents are hereby authorized to make all filings and recordings, and to obtain all governmental approvals and consents to evidence, establish, continue, and perfect such Liens, including the Continuing Liens, and other security interests under the provisions of the applicable state, provincial, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that the perfection of the Liens and security interests granted under the Superpriority Exit Facility Documents shall occur automatically by virtue of the entry of this Confirmation Order and the consummation of the Superpriority Exit Facility Credit Agreement, and any such filings, recordings, approvals, and consents shall not be necessary or required as a matter of law to perfect or continue the perfection of such Liens and other security interests), and shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and other security interests to third parties.

98. Neither the execution and delivery by the Reorganized Debtors of any of the Superpriority Exit Facility Documents nor the performance by the Reorganized Debtors of their respective obligations thereunder constitutes a violation of or a default under any contract or agreement to which any of the Reorganized Debtors is a party, including those contracts or agreements assigned to the Reorganized Debtors or reinstated under the Plan.

99. Notwithstanding anything to the contrary contained in the Plan, the Plan Documents, or this Confirmation Order, the Superpriority Exit Facility Documents shall not be binding on the parties thereto until the Superpriority Exit Facility Documents have been fully

executed and delivered by the parties thereto, have become effective by their terms and the Funding Date shall have occurred.

100. Notwithstanding anything to the contrary in the Plan, the Plan Documents, or this Confirmation Order, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the Superpriority Exit Facility Documents, or any rights or remedies related thereto, other than the effectiveness of the Debtors' entry into the Superpriority Exit Facility, subject to Section AAA of this Confirmation Order.

101. Notwithstanding anything to the contrary in the Plan, the Plan Documents, or this Confirmation Order, the Prepetition Secured Parties agree that, as it relates to an October 1, 2024 interest payment on the Series 2019 Bonds, the Prepetition Secured Parties will forbear through the Funding Date with respect to such interest amount, with such amount to be treated in accordance with the New Bond Documents.

**L. <u>New CCAs and New Bond Documents.</u>**

102. On the Effective Date, the New Bond Documents and the other related documents (including any supplements to the Master Indenture and modifications to the 2019 Mortgages (as defined herein)) shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended under the New Bond Documents and the other related documents (including any supplements to the Master Indenture and modifications to the 2019 Mortgages (as defined herein)) shall be deemed to have been extended in good faith for legitimate business purposes; and they are reasonable and shall not be subject to avoidance, re-characterization, or subordination (including equitable subordination) for any purpose whatsoever (unless specified herein) and shall not

constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

103. Subject to, and upon the occurrence of, the Effective Date, and without further notice to any party, or further order or other approval of the Bankruptcy Court, or further act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization or approval of any Person, the Debtors or Reorganized Debtors, as applicable, shall be and hereby are authorized to enter into and perform under the New CCAs and execute and deliver the New CCAs, the other New Bond Documents and other related documents (including any supplements to the Master Indenture and modifications to the 2019 Mortgages (as defined herein)). All Holders of Allowed Secured Bondholder Claims entitled to Distributions under the Plan shall automatically be deemed to be a party to, and bound by, the New Bond Documents and the other related documents, in accordance with their terms. This Confirmation Order shall constitute (a) approval of the New CCAs, the New Bond Agreements, the other New Bond Documents and the other related documents (including any supplements to the Master Indenture and modifications to the 2019 Mortgages (as defined herein)), all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith; and (b) authorization for the Reorganized Debtors to enter into and execute the New CCAs, the New Bond Agreements, the other New Bond Documents and the other related documents (including any supplements to the Master Indenture and modifications to the 2019 Mortgages (as defined herein)) and take all actions required thereunder.

104. Each of the Reorganized Debtors, without any further action by the Bankruptcy Court or each respective Reorganized Debtors' officers or directors, is hereby authorized and directed to enter into, and take such actions as necessary to perform under, or otherwise effectuate,

the New Bond Documents, as well as any notes, documents or agreements in connection therewith, including, without limitation, any documents required in connection with the creation, continuation or perfection of Liens or other security interests in connection therewith.

105. Neither the execution and delivery by the Reorganized Debtors of any of the New Bond Documents nor the performance by the Reorganized Debtors of their respective obligations thereunder constitutes a violation of or a default under any contract or agreement to which any of the Reorganized Debtors is a party, including those contracts or agreements assigned to the Reorganized Debtors or reinstated under the Plan.

106. Notwithstanding anything to the contrary contained in the Plan, the Plan Documents, or this Confirmation Order, the New CCAs, the New Bond Agreements, and the other New Bond Documents shall not be binding on the parties thereto until such documents have been fully executed and delivered by all of the parties thereto, have become effective by their terms and the Funding Date shall have occurred.

107. Notwithstanding anything to the contrary in the Plan, the Plan Documents, or this Confirmation Order, the obligations outstanding under the Term Loan Agreement shall remain outstanding until the Funding Date; provided however that upon the occurrence of the Funding Date, the obligations outstanding under the Term Loan Agreement shall be deemed to have been written-off in accordance with Article IV.B of the Plan as of the Effective Date.

108. Notwithstanding anything to the contrary in the Plan, the Plan Documents, or this Confirmation Order, the Series 2019 Bonds shall not be exchanged for the reissued New Bonds until the occurrence of the Funding Date; provided however that upon the occurrence of the Funding Date, such exchange shall be deemed to have occurred on the Effective Date.

109. Notwithstanding anything to the contrary in the Plan, the Plan Documents, or this Confirmation Order, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the New CCAs, the New Bond Agreements, the other New Bond Documents or the other related documents (including any supplements to the Master Indenture and modifications to the 2019 Mortgages (as defined herein)), or any rights or remedies related thereto, other than the effectiveness of the Debtors' entry into the such documents subject to Section AAA of this Confirmation Order.

**M. <u>Perfection of Liens.</u>**

110. On the Effective Date, all of the Liens and security interests to be granted or reinstated pursuant to the Plan, the Superpriority Exit Facility Documents, the New Bond Documents and/or the Master Indenture (including as to the Debtors' and Reorganized Debtors' deposit accounts and the funds therein and the modifications to the 2019 Mortgages (as defined herein)) (a) are hereby approved, (b) shall be legal, valid, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the applicable documents and with the same first priority established under the Master Indenture and the 2019 Mortgages, (c) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law and (d) shall be enforceable in accordance with their respective terms.

111. The Reorganized Debtors and the Prepetition Secured Parties (and their designees and agents) under the Superpriority Exit Facility Documents, the New Bond Documents and the Master Indenture are hereby authorized to make all filings and recordings, and to obtain all governmental approvals and consents to evidence, establish, continue, and perfect any and all

Liens, and other security interests under the provisions of the applicable state, provincial, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that the perfection of the Liens and security interests granted under the applicable Plan Documents, including, without limitation, as to deposit accounts (and the funds therein) and modifications to the 2019 Mortgages (as defined herein), shall occur automatically (or be deemed perfected) by virtue of the entry of this Confirmation Order and the consummation of the applicable Plan Documents, and any such filings, recordings, approvals, and consents shall not be necessary or required as a matter of law to perfect or continue the perfection of such Liens and other security interests), and shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and other security interests to third parties.

**N. <u>Issuance of Securities.</u>**

112. Pursuant to section 1145 of the Bankruptcy Code, the issuance or reissuance of any security contemplated by the Plan, and any and all agreements incorporated therein, including the New Bonds (to the extent, if any, applicable), will be freely tradable and transferable in the United States by the recipients thereof that (i) are not "affiliates" of the Debtors as defined in Rule 144(a)(1) under the Securities Act; (ii) have not been "affiliates" within 90 days of such transfer; and (iii) are not entities that are "underwriters" as defined in section 1145(b)(1) of the Bankruptcy Code, and subject to compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities and subject to any restrictions in the New Organizational Documents.

113. The issuance of the securities, as contemplated by the Plan, shall be exempt from registration under the Securities Act in reliance on the exemption from the registration

requirements of the Securities Act provided by section 4(a)(2) of the Securities Act (and/or Regulation D promulgated thereunder) or any similar registration exemption applicable outside of the United States and will be "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned, or otherwise transferred only pursuant to registration, or an applicable exemption from, or in a transaction not subject to, registration under the Securities Act and other applicable law and subject to any restrictions in the New Organizational Documents.

114. Each Security issued and distributed pursuant to the Plan and this Confirmation Order shall be duly authorized, validly issued, fully paid, and non-assessable, as applicable. Each Distribution and issuance of the Securities referred to in Article IV of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such Distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such Distribution or issuance, which terms and conditions shall bind each Entity receiving such Distribution or issuance. The Debtors are authorized, without further approval of the Bankruptcy Court or any other party, to execute and deliver all agreements, documents, instruments, and certificates related thereto and perform their obligations thereunder.

**O. Distributions.**

115. All Distributions pursuant to the Plan shall be made in accordance with Article VII of the Plan, and such methods of distribution are approved. The Reorganized Debtors shall have no duty or obligation to make Distributions to any Holder of an Allowed Claim unless and until such Holder executes and delivers, in a form acceptable to the Reorganized Debtors, all Plan Documents applicable to such Distributions.

**P. <u>Retained Assets.</u>**

116. To the extent that the retention by the Debtors of assets held immediately prior to emergence in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Debtors (a) is or shall be a legal, valid, and effective transfer of property; (b) vests or shall vest the Debtors with good title to such property, free and clear of all Liens, charges, Claims, encumbrances, or interests (including the liens and security interests allegedly securing the M&M Lien Claims (including the Consigli Claim)), except as expressly provided in the Plan or this Confirmation Order; (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable non-bankruptcy law; and (d) does not and shall not subject the Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including by laws affecting successor or transferee liability.

**Q. <u>Treatment of Executory Contracts and Unexpired Leases.</u>**

117. Rejection of Executory Contracts and Unexpired Leases as set forth in Article VI.A is hereby authorized. Assumption (or assumption and assignment) of the Executory Contracts and Unexpired Leases listed in the Schedule of Assumed Executory Contracts and Unexpired Leases is hereby authorized. Any provisions in any Executory Contract or Unexpired Lease that prohibit or condition the assumption and assignment of any such Executory Contract or Unexpired Lease (including any "change of control" provision) or allow the party to any such Executory Contract or Unexpired Lease to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assumption and assignment of any such Executory Contract or Unexpired Lease (including any "change of control" provision), constitute unenforceable anti-assignment provisions that are void and of no force and effect, and all other

requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment of any such Executory Contract or Unexpired Lease have been satisfied.

118. Unless a party to an Executory Contract or Unexpired Lease being assumed (or assumed and assigned) under the Plan has timely objected to the cure costs identified in the Schedule of Assumed Executory Contracts and Unexpired Leases and any amendments thereto, as applicable, the Debtors shall pay such cure costs in accordance with the terms of the Plan or as otherwise agreed upon by the parties to such Executory Contract or Unexpired Lease. The assumption and assignment of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption and/or assignment. Any disputed cure costs shall be determined in accordance with the procedures set forth in Article VI.D of the Plan, and applicable bankruptcy and non-bankruptcy law.

119. Any Executory Contract or Unexpired Lease that is subject to an unresolved objection to the assumption (or assumption and assignment) of such Executory Contract or Unexpired Lease that is pending as of the Effective Date will not be assumed (or assumed and assigned) until entry of a Final Order resolving the dispute and approving the assumption (or assumption and assignment) of such Executory Contract or Unexpired Lease or as may be agreed upon by the Debtors or the Reorganized Debtors and the counterparty; *provided that* after the Effective Date, the Reorganized Debtors may settle any dispute regarding the amount of any cure cost without any further notice to any party or any action, order, or approval of the Bankruptcy

Court; *provided, further*, that notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, shall have the right to either reject or nullify the assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease within forty-five days after the entry of a Final Order resolving an objection to assumption, determining the cure cost under an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease; *provided* that to the extent set forth in the Plan, the Reorganized Debtors shall provide notice to and consult with the Liquidating Trustee to the extent such acts or omissions may impact the Holders of Allowed Claims in Class 7.

120. Pursuant to Article VI.C of the Plan, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within thirty (30) days of the later of (i) the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection, (ii) the effective date of such rejection, or (3) the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of this Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

121. The treatment of certain Executory Contracts and Unexpired Leases as set forth in Article VI.K of the Plan is hereby approved, and the Reorganized Debtors shall be authorized to seek by motion and/or adversary proceeding the Bankruptcy Court's approval of the assumption, rejection or other disposition of the applicable Executory Contracts and Unexpired Leases in accordance with the terms set forth in Article VI.K. of the Plan.

**R. <u>Indemnification Provisions.</u>**

122. On and as of the Effective Date, the indemnification provisions specified as being reinstated in Article VI.B of the Plan will be assumed by the Debtors, in accordance with the terms thereof, and shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date, and the New Organizational Documents shall provide for indemnification, defense, reimbursement, and limitation of liability of, and advancement of fees and expenses to, the Debtors' and the Reorganized Debtors' current and former directors, officers, employees, attorneys, accountants, investment bankers, and other Professionals to the fullest extent permitted by law and at least to the same extent as provided under the indemnification provisions in place prior to the Effective Date, against any Cause of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted; *provided that* the Reorganized Debtors shall not indemnify any Person for any Cause of Action arising out of or related to any act or omission that is a criminal act or constitutes actual fraud, gross negligence, bad faith, or willful misconduct; *provided further* that the indemnification provisions shall not apply to Former D&Os. The Reorganized Debtors shall not amend or restate their respective governance documents before, on, or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations to provide such rights to indemnification, defense, reimbursement, limitation

of liability, or advancement of fees and expenses. Entry of this Confirmation Order constitutes the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Indemnification Provisions.

**S. Exemption from Transfer Taxes.**

123. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with the Plan shall not be subject to any stamp tax, document recording tax, conveyance fee, intangibles, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and this Confirmation Order hereby directs the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies, without limitation, to: (a) the creation, modification, consolidation, or recording of any mortgage, deed of trust, Lien, or other security interest, or the securing of additional indebtedness by such or other means, including (1) that certain Mortgage and Security Agreement dated as November 20, 2019 from Athol Memorial Hospital, as mortgagor, to the Master Trustee, as mortgagee, and (2) that certain Mortgage and Security Agreement dated as of November 20, 2019 from The Henry Heywood Memorial Hospital, as mortgagor, to the Master Trustee, as mortgagee (such mortgages set forth in clauses (1) and (2), including any modifications thereto, collectively, the "2019 Mortgages"); (b) the making, assignment, or recording of any lease or sublease; (c) any Restructuring Transaction authorized by the Plan; (d) and the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with

the Plan, including (w) any merger agreements; (x) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (y) bills of sale; or (z) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

**T. Governmental Approvals Not Required.**

124. Except as otherwise set forth in the Plan, including the Debtors' obligation to obtain all necessary authorizations, consents, regulatory approvals, rulings or documents, including governmental approval from the Issuer, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or Consummation of the Plan and the Plan Documents.

**U. Filing and Recording.**

125. This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

**V. Tax Withholding.**

126. In accordance with the provisions of the Plan and subject to Article VII.F of the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. All Persons holding Claims against any Debtor shall be required to provide any additional information necessary for the Reorganized Debtors to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit. The Reorganized Debtors reserve the right to allocate any Distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, Liens, and encumbrances.

127. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit on account of such Distribution.

**W. Discharge of Claims; Compromise and Settlement of Claims, and Controversies.**

128. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, this Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, including the Plan Documents, the

Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors) Liens, and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim is listed on the Debtors' Schedules; (c) a Claim based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (d) the Holder of such a Claim has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. This Confirmation Order shall be a judicial determination of the discharge of all Claims, subject to the Effective Date occurring.

129. Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code and in consideration for the classification, Distributions, releases, and other benefits provided pursuant to the Plan, including without limitation those provided through the Committee Settlement, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Causes of Action, controversies, or issues relating to the

contractual, equitable, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim, including (i) any challenges to the amount, validity, perfection, enforceability, priority or extent of the Other Secured Claims once Allowed or the Allowed Secured Bondholder Claims (including those in the Committee Adversary Proceeding) and (ii) any claim to avoid, subordinate, or disallow any Other Secured Claim once Allowed or the Allowed Secured Bondholder Claim, whether under any provision of chapter 5 of the Bankruptcy Code, on any equitable theory (including equitable subordination, equitable disallowance, or unjust enrichment) or otherwise.

130. In addition, the transactions contemplated in the Plan, as applicable, sufficiently satisfy the specific factors set forth in *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995) ("The specific factors which a bankruptcy court considers when making this determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.").

131. The Plan's provisions for the allowance, classification, and treatment of all Allowed Claims against the Debtors and the respective Distribution and treatments under the Plan shall be deemed to take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

132. Upon the Effective Date, the *Debtors' Motion for Order Approving the First Amendment to the Recoupment and Forbearance Agreement with the Commonwealth* [Docket No.

810] shall be deemed withdrawn and/or dismissed, as applicable, with respect to all parties thereto, with prejudice and in their entirety.

## X. The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.

133. The following releases, injunctions, exculpations, and related provisions, as set forth in Article IX of the Plan and excerpted below and (in the second paragraph below as hereby modified by this Order), are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Bankruptcy Court or any other party:

*A. Releases by the Debtors.*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively (including the Committee through the derivative standing granted to it through any Final Order), by or through the foregoing entities, from any and all Causes of Action (including, without limitation, Avoidance Actions and the Committee Adversary Proceeding), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of- court restructuring efforts, intercompany transactions, commencement and prosecution of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), entry into the New Bond Documents, entry into the Superpriority Exit Facility Documents, entry into the GUC Note, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan, or any document, instrument, or agreement executed to implement the Plan. Further, notwithstanding anything contained herein to the contrary, the foregoing release does not release any claims that the Reorganized**

**Debtors may have (i) against Excluded Parties, (ii) with respect to any Pavilion Claims or Pavilion-Related Claims, (iii) with respect to any Liquidating Trust Assets (other than those Liquidating Trust Assets relating to any Cause of Action against the Prepetition Secured Parties or their Related Parties) or (iv) for any claims or Causes of Action related to any act or omission that is determined by Final Order to have constituted actual fraud, willful misconduct, or gross negligence. For the avoidance of doubt, in no event shall the releases described in this Article IX.C be limited in any way whatsoever with respect to Causes of Action (including, without limitation, the Avoidance Actions and the Committee Adversary Proceeding) against the Prepetition Secured Parties or their Related Parties.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article IX.C by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article IX.C is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (2) in the best interests of the Debtors and all holders of Claims; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Debtors, Reorganized Debtors, or Liquidating Trustee, as applicable, asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.**

*B. Releases by Holders of Claims.*

**As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, commencement and prosecution of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the New Bond Documents, the Superpriority Exit Facility Documents, the GUC Note, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any Lien or security interest granted to the Prepetition Secured Parties pursuant to, or in connection with, the Bond Documents or any Final Order; (ii) any obligations of any party under the Plan, or any document, instrument, or agreement executed to implement the Plan; or (iii) any rights under the Plan that the Holder of any Allowed Claim may have. Further, notwithstanding anything**

**contained herein to the contrary, the foregoing release does not release any claims against persons other than each Debtor, the Reorganized Debtors or the Prepetition Secured Parties (and their Related Parties) for conduct occurring prior to the commencement of, or during, the Chapter 11 Cases or claims related to any act or omission that is determined by Final Order to have constituted actual fraud, willful misconduct, or gross negligence.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article IX.D, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article IX.D is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (2) in the best interests of the Debtors and all holders of Claims; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Debtors or Reorganized Debtors asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.**

*C. Exculpation.*

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, entry into the New Bond Documents, entry into the Superpriority Exit Facility Documents, entry into the GUC Note, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon the Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not liable for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, an Exculpated Party shall be entitled to exculpation solely for actions taken from the Petition Date through the Effective Date.**

*D. Injunction.*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have**

**held, hold, or may hold Claims that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims released or settled pursuant to the Plan; provided, however, that nothing in this injunction shall limit the Holder of an Insured Claim from receiving the treatment set forth in Class 9.**

**Upon entry of the Confirmation Order, all holders of Claims and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each holder of an Allowed Claim, by accepting, or being eligible to accept, Distributions under or Reinstatement of such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article IX.F of the Plan.**

134. Notwithstanding anything to the contrary in this Confirmation Order, no releases granted to the Bondholder or The Huntington National Bank pursuant to Article IX of the Plan that are referenced in Paragraph 125 A. and B of this Confirmation Order shall be effective as to (i) the Bondholder until it has timely made the Bondholder Payment, or (ii) The Huntington National Bank until it has timely made the Huntington Payment; provided that upon the making of the Bondholder Payment or the Huntington Payment, as applicable, the Bondholder or The Huntington National Bank, as applicable, shall be deemed to have received such release effective as of the Effective Date.

135. If any Releasing Party believes that it did not receive due process notice of the Plan's release provisions, such Releasing Party must return to the Bankruptcy Court for a determination regarding the adequacy of notice provided before initiating any Claim or Cause of Action in another court (and any such Releasing Party is hereby enjoined from bringing any Claim or Cause of Action in another court) based on a Claim or Cause of Action that would otherwise be subject to the Plan's release provisions.

**Y. <u>Release of Liens.</u>**

136. Pursuant to Article IX.B of the Plan, except as otherwise provided in the Plan (including Article IV thereof), the Liquidating Trust Agreement, the Superpriority Exit Facility Documents, and the New Bond Documents, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. If, following written request from the Reorganized Debtor, such holder of a Secured Claim (and the applicable agents for such holder) does not take reasonable action within 20 calendar days of such

request by the Reorganized Debtors to evidence the release of such Lien, the Reorganized Debtor may take such actions to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

**Z. Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

137. In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven days after the Effective Date, the Reorganized Debtors must cause notice of Confirmation and occurrence of the Effective Date (the "Notice of Confirmation and Effective Date") to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice. To supplement the notice procedures described in the preceding sentence, no later than fourteen days after the Effective Date, the Reorganized Debtors must cause the Notice of Confirmation and Effective Date, modified for publication, to be published on one occasion in each of the *Gardner News* and *Athol Daily News* newspapers. Mailing and publication of the Notice of Confirmation and Effective Date in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary.

138. The Notice of Confirmation and Effective Date will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

139. Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Confirmation Date must file an application for final allowance of such Professional Fee Claim no later than forty-five (45) days after the Effective Date or the next business day if the forty-fifth (45th) day after the Effective Date falls on a weekend or federal holiday. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount this Bankruptcy Court allows, including from the Professional Fee Escrow Account, which the Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Escrow Amount on the Effective Date and otherwise in accordance with the Plan.

140. Except as otherwise provided in the Plan, requests for payment of Administrative Claims, other than Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code, which were required to be filed by the Bar Date, must be filed no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any action by the Bankruptcy Court.

**AA. Reports.**

141. After the Effective Date, the Reorganized Debtors shall have no obligation to file with the Bankruptcy Court or serve on any parties reports that the Debtors were obligated to file under the Bankruptcy Code or a Bankruptcy Court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed prior to the Effective Date); *provided*, *however*, that the Reorganized Debtors will comply with the U.S. Trustee's

quarterly reporting requirements. Through the Effective Date, the Debtors will file such reports as are required under the Local Bankruptcy Rules.

**BB. Cancellation of Notes, Instruments, Certificates, and Other Documents.**

142. Except to the extent provided in this Confirmation Order, the Plan Documents, or the Plan (including Article IV.G thereof and the reinstatement, amendment, supplement or reissuance of the outstanding Series 2019 Bonds and the related Bond Documents through the delivery of New Bonds (in exchange for the Series 2019 Bonds), and all documents related thereto, including the New Bond Documents and any supplements to the Master Indenture and any related notes or obligations issued thereunder), all notes, bonds, indentures, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors giving rise to any rights or obligations relating to Claims against the Debtors (except with respect to any Claim that is Reinstated pursuant to the Plan) shall be deemed cancelled, discharged, surrendered, and of no force and effect, without any need for a Holder to take further action with respect thereto, on the Effective Date without further act or action under any applicable agreement, law, regulation, order, or rule and any and all obligations or liabilities of the Debtors under such documents, agreements, or instruments evidencing such shall be discharged.

**CC. Return of Deposits.**

143. All utilities, including any Person who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "Deposits"), whether pursuant to the *Final Order Granting Debtors' Motion for Order (A) Prohibiting Utilities from Altering, Refusing or Discontinuing*

*Services, (B) Determining Adequate Assurance of Payment for Future Utility Services and (C) Establishing Procedures for Determining Requests for Adequate Assurance of Payment* [Docket No. 232] or otherwise, including, electricity, natural gas, water and sewage, telecommunications, internet, cable, and other similar services, are directed to return such Deposits to the Reorganized Debtors, either by setoff against postpetition indebtedness or by Cash refund, within thirty days following the Effective Date, and as of the Effective Date, such Persons are not entitled to make requests for or receive additional Deposits.

**DD. Effect of Confirmation Order on Other Orders.**

144. Unless expressly provided for herein, nothing in the Plan or this Confirmation Order shall affect any orders entered in the Chapter 11 Cases pursuant to section 365 of the Bankruptcy Code or Bankruptcy Rule 9019.

**EE. Inconsistency.**

145. In the event of any inconsistency between the Plan (including any Plan Document) and this Confirmation Order, this Confirmation Order shall govern. To the extent any provision of any final, executed Plan Document conflicts or is inconsistent with any provision in the Plan, the terms of such final, executed Plan Document shall govern and be binding and exclusive.

**FF. Injunctions and Automatic Stay.**

146. Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on this Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect through and including the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**GG. Authorization to Consummate.**

147. The Debtors are authorized to consummate the Plan and the Restructuring Transactions at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article X of the Plan.

**HH. Substantial Consummation.**

148. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**II. No Waiver.**

149. The failure to specifically include any particular Plan Document or provision of the Plan or Plan Document in this Confirmation Order will not diminish the effectiveness of such document or provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

**JJ. Severability.**

150. Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the parties thereto in accordance with the terms set forth in the Plan, after adequate notice and a hearing thereon, if necessary; and (c) non-severable and mutually dependent.

**KK. Effect of Non-Occurrence of Conditions to Consummation.**

151. If the Effective Date does not occur, then the Plan will be null and void in all respects and nothing contained in the Plan, this Confirmation Order, the Disclosure Statement, or

the Disclosure Statement Supplement shall: (a) constitute a waiver or release of any Claims or Causes of Action held by any Debtor or any other Entity; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity in any respect.

**LL. <u>Debtors' Actions Post-Confirmation Through the Effective Date.</u>**

152. During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Bankruptcy Court that is in full force and effect.

**MM. <u>Dissolution of the Committee.</u>**

153. On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve, and members thereof shall be released from all rights and duties from or related to the Chapter 11 Cases, *provided*, *however*, that the Committee will stay in existence solely for the limited purpose of (a) filing and prosecuting final fee applications, and (b) participating in any adversary proceeding commenced after the date of this Plan in which the Committee is named as a defendant, including any appeals thereof. The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date, except for the fees and expenses incurred by the Committee's Professionals in connection with the matters identified in clauses (a) and (b) of the foregoing sentence or as otherwise ordered.

**NN. Provision related to Cigna Payor Contracts.**

154. Notwithstanding anything to the contrary in this Confirmation Order, the Plan, or any notice related thereto, the Cigna Payor Contracts (as defined in the Objection to Cigna to the First Amended Disclosure Statement of Heywood Healthcare, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 823] (the "Cigna Objection")) shall be assumed under the Plan, and, in lieu of cure, all obligations due and unpaid under the Cigna Payor Contracts accruing prior to the Effective Date shall pass through to the Reorganized Debtor and survive assumption, and nothing in this Order or section 365 shall impact any rights of recovery and/or recoupment under the Cigna Payor Contracts for any overpayments; provided that, in connection with such assumption and the related obligations, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under the Cigna Payor Contracts and applicable law in favor of the Debtors, Reorganized Debtors, or Cigna (as defined in the Cigna Objection), as applicable, are preserved and unimpaired.

**OO. Provisions related to the IRS.**

155. The Debtor will pay any priority claim of the Internal Revenue Service (an "IRS Claim") in the Allowed amount in accordance with the Bankruptcy Code. The first such installment shall be due on the first day of the month following the date such IRS Claim becomes an Allowed Claim, and the remaining installments shall be due on the first day of each month thereafter until such IRS Claim is paid in full with interest.

156. The Internal Revenue Service has filed an administrative claim. This claim is an estimate because the Debtor has allegedly not made the required federal tax deposits for the unfiled form 941 for the quarter ending June 30, 2024). The Debtor shall pay the liability, including penalty and interest (if any), on the date that such claim becomes an Allowed Claim. Any unpaid

federal tax liability arising after the petition date shall be paid in full with all applicable penalties and interest (if any) at such time that such amounts become due and owing.

**PP. Provision related to Microsoft Corporation and its wholly owned subsidiary Nuance Communications, Inc. (collectively, "Microsoft").**

157. Notwithstanding anything to the contrary in Article VI.A of the Plan or the inclusion of such agreements on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Licensing Agreements (as defined in that certain *Limited Objection of Microsoft to Notice of (A) Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, (B) Cure Amounts, if any, and (C) Related Procedures in Connection Therewith* [Docket No. 1028]) shall not be deemed assumed as of the Effective Date. The Debtors and Microsoft shall work in good faith to agree upon a cure amount within thirty (30) days following entry of this Confirmation Order during which time Debtors and Microsoft shall comply with the terms and conditions of the Licensing Agreements. Upon reaching such agreement related to a cure amount, the Debtors shall file a notice of assumption related to the Licensing Agreements. In the event the Debtors and Microsoft are unable to agree upon a cure amount within thirty (30) days following entry of this Confirmation Order, Microsoft's rights to object to assumption of the Licensing Agreements and any proposed cure amounts are fully reserved and the Debtors' rights to reject the Licensing Agreements are fully reserved.

**QQ. Patient Care Ombudsman.**

158. As of the date of entry of this Confirmation Order, the Patient Care Ombudsman shall be discharged from any and all statutory duties. The Patient Care Ombudsman and his counsel, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo P.C. and Rimon P.C., shall submit final applications for compensation within twenty one (21) days of the entry of this Confirmation Order.

**RR. Conditions to Effective Date.**

159. The Plan shall not become effective unless and until the conditions set forth in Article X.A of the Plan have been satisfied or waived pursuant to Article X.B of the Plan.

**SS. Post-Confirmation Modification of the Plan.**

160. The Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code.

**TT. No Stay of Confirmation Order.**

161. Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or any other Bankruptcy Rule to the contrary, there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry. This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence immediately upon entry of this Confirmation Order.

DATED: September 30, 2024

Elizabeth D. Katz

Hon. Elizabeth D. Katz
United States Bankruptcy Judge